## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE TIMOTHY M. REIF

| | |
|---|---|
| EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş. | |
| Plaintiff, | |
| v. | **22-cv-00349** |
| UNITED STATES INTERNATIONAL TRADE COMMISSION, | |
| Defendant. | |

## MOTION FOR RECONSIDERATION

Plaintiff Ereğli Demir ve Çelik Fabrikaları T.A.Ş. (Erdemir), by and through its counsel, submits this Motion For Reconsideration of the Court's Order granting permissive intervention to Cleveland-Cliffs Inc., Nucor Corporation, Steel Dynamics, Inc. ("SDI"), and SSAB Enterprises, LLC ("SSAB") (collectively, "Domestic Interested Parties" or "DIPs").

There are significant reasons why this Court should reconsider granting DIPs motions to intervene.  Erdemir did not have an opportunity to oppose DIPs motion for leave to file a reply, and DIPs were granted intervention before Erdemir could file a motion for leave to file a surreply – something that fundamental fairness would have supported.  But in DIPs motions and in their reply, they failed to carry their burden to demonstrate entitlement to intervene under the legal requirements for intervention of right or permissive intervention.  To assert their right, DIPs blurred standards, omitted material facts of cases, and misrepresented the holdings of cases.  Because DIPs have not carried their burden to demonstrate legal entitlement to intervention of right, or to this Court's exercise of discretion to grant permissive intervention, this Court should revoke its order granting intervention and deny DIPs intervention in this case.

I.   **ERDEMIR DID NOT HAVE AN OPPORTUNITY TO OPPOSE THE MOTION FOR LEAVE TO FILE A REPLY, OR FILE A MOTION FOR LEAVE TO FILE A SURREPLY FROM THE RECORD**

This Court should reconsider its decision to grant the Domestic Interested Parties' motion for leave because Erdemir was not provided an opportunity to file an opposition to DIPs' motion for leave to file a reply within the time contemplated by the Rule 7(d) of the Rules of this Court. Upon reconsideration, this Court should rescind its grant of intervention to DIPs and deny DIPs motions.

DIPs filed their motions to intervene, and Erdemir opposed each motion separately to address distinct arguments in each.  *See* ECF 15, SDI & SSAB's *Partial Consent Motion to Intervene as Defendant-Intervenors*; ECF 16, Cleveland-Cliff's *Partial Consent Motion to Intervene*; ECF 22 Nucor's *Partial Consent Motion to Intervene.  See* ECF 31, Erdemir's *Opposition To Motion To Intervene Of Cleveland-Cliffs Inc.*; ECF 32, Erdemir's *Opposition To Motion To Intervene Of Steel Dynamics, Inc., and SSAB Enterprises, LLC*; ECF 33, Erdemir's *Opposition To Motion To Intervene Of Nucor Corporation*.

Erdemir's arguments established, regarding intervention of right under Rule 24(a)(2), that DIPs failed to demonstrate legally protectable interests, failed to demonstrate that this action could have a direct and immediate effect, and failed to demonstrate that any interests they could claim would not be adequately protected by the Commission.  Erdemir also established, regarding permissive intervention under Rule 24(b), that DIPs could not be adversely affected or aggrieved by any outcome of this action, and that DIPs failed to demonstrate that their participation would not cause undue delay or prejudice to the original parties to the action.  *Id.* In contrast to DIPs summary motions that claimed entitlement to intervene without any depth of factual discussion or legal analysis, Erdemir's analysis carefully addressed and rebutted almost

every sentence of argument submitted by DIPs.  DIPs are not entitled to intervention of right

under Rule 24(a)(2) or to permissive intervention under Rule 24(b)

On February 27, 2023, nearly two weeks after Erdemir filed its oppositions to DIPs'

motions to intervene, DIPs filed a motion for leave to reply to Erdemir's oppositions ("DIPs

Mot."), and appended an 18-page proposed reply.  *See* ECF 37, DIPs Mot.  The basis for DIPs

motion was its claim that, "Plaintiff misstates factual elements of Domestic Interested Parties'

motion to intervene, misapplies the appropriate legal standards with respect to intervention, and

mischaracterizes the significant interests maintained by Domestic Interested Parties that can only

be protected through intervention in this proceeding."  *Id.* at 1.  DIPs sought to "address the

{alleged} factual and legal flaws in Plaintiff's oppositions to the motions filed by Domestic

Interested Parties."  *Id.* at 2.

But it is among the most basic procedural rules that a non-dispositive motion includes the

motion and a response, with no reply or surreply.  USCIT R. 7(d).  A party filing a non-

dispositive motion must present its entire case in its motion.  That counsel filed summary

motions rather than motions carefully setting forth each element needed to qualify for

intervention of right or permissive intervention should not have been grounds for granting leave

to file a reply.

Further, the fact that DIPs had sufficient opportunity to address all legal and factual

issues would have been reason enough to deny the motion for leave to reply.  *See Saha Thai

Steel Pipe Co. v. United States*, 661 F. Supp. 1198, 1201, 11 CIT 257, 259 n.5 (1987) (denying a

motion for leave to file a reply to a non-dispositive motion because "Defendant has already had

sufficient opportunity to respond to the legal issues").  Indeed, DIPs Reply does "not raise any

issue that could not have been or was not already addressed in its Motion{s}" to intervene.  *See*

*LG Elecs., Inc. v. United States ITC*, 37 CIT 1589, 1591-92 (2013) (*citing Crummey v. Social Sec. Admin.*, 794 F.Supp.2d 46, 62-64 (D.D.C. 2011) and *Saha Thai*, 661 F. Supp. at 1201, 11 CIT at 259 n.5.

Although Rule 7 of this Court's rules grants 21 days to respond to a non-dispositive motion, such that Erdemir's response to DIPs motion for leave to file a reply would be due by March 20, 2023; and despite counsel for Erdemir phoning the Court on February 27, 2023, to state its intention to file an opposition to DIPs motion; this Court granted DIPs motion on March 1, 2023. *See* ECF 38 *Order*. Further, despite DIPs filing their motion for leave to file 12 days after Erdemir's response in opposition to the last of DIPs motions, Erdemir did not have a similar amount of time to file a motion for leave to file a surreply. Instead, DIPs motions to intervene were granted on March 8, 2023, without the significant arguments raised by the parties being addressed, and without identifying whether intervention of right under Rule 24(a)(2) or permissive intervention under Rule 24(b) was granted. *See* ECF 40-42.

This Court should reconsider its grant of intervention to DIPs in light of arguments presented by Erdemir in this Motion for Reconsideration, rescind the grants of intervention, and deny DIPs motions to intervene.

## II.   DOMESTIC INTERESTED PARTIES' REPLY FAILED TO REBUT ANY OF ERDEMIR'S ARGUMENTS DEMONSTRATING WHY DIPS DO NOT QUALIFY FOR INTERVENTION OF RIGHT UNDER RULE 24(a)(2) OF THIS COURT'S RULES

Although Erdemir did not have an opportunity to oppose DIPs motion for leave to file a reply, or to seek leave of the Court to file a surreply, the Court should reconsider granting DIPs motions to intervene because DIPs do not establish in their motions or their Reply how they are entitled to intervention of right under Rule 24(a)(2) of this Court's Rules. To qualify for intervention of right, a movant must establish four elements:

(1) a timely motion,

(2) a legally protectable interest in the property at issue,

(3) an interest that is "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment," and

(4) that the movant's interest will not be adequately protected by the Commission.

*See GreenFirst Forest Prods. v. United States*, 577 F. Supp. 3d 1349, 1353-54 (Ct. Int'l Trade 2022) (*quoting Wolfsen Land & Cattle*, 695 F.3d at 1315). "Failure to satisfy any one of these requirements defeats the movant's right to intervene under CIT Rule 24(a)(2)." *Seneca Foods Corp. v. United States*, Slip Op. 22-149, 2022 Ct. Intl. Trade LEXIS 148 at *7 (Dec 21, 2022) (*citing Vivitar Corp. v. United States*, 7 CIT 165, 167, 585 F. Supp. 1415, 1417 (1984)). DIPs do not dispute this standard. DIPs should not be granted intervention of right under Rule 24(a)(2) because DIPs failed to satisfy the second, third, and fourth elements of the standard – each failing providing an independent basis for denying intervention of right.[1]

### A. DIPs Did Not Participate In Any Underlying Reconsideration Proceeding

DIPs continue to misrepresent whether they participated in an underlying reconsideration proceeding. But DIPs concede, "there was no formal reconsideration proceeding." DIPs Reply at 17. DIPs assert that Erdemir submitted several requests for reconsideration in 2021 and 2022, and claim they consistently opposed Erdemir's requests. DIPs refer only to participation in a changed-circumstances-review proceeding and a five-year (sunset) review proceeding. DIPs

---

[1] Erdemir notes that ECF39, ECF39DIPs Reply contests Erdemir's argument that intervention of right under Rule 24(a)(2) seems only applicable to EAPA actions, the Court need not decide that issue here. *See Opposition to Motion to Intervene of Nucor Corporation*, ECF33 at 2-5. Even if Rule 24(a)(2) could apply to this action, DIPs fail to satisfy all of the required elements for intervention of right under Rule 24(a)(2). Thus, regardless of applicability, this Court could not grant intervention of right to DIPs.

Reply at 2-3.  DIPs did not.  DIPs confuse arguments about reconsideration raised in that separate proceeding with participation in a reconsideration proceeding when they argue that they "participated fully in the underlying proceedings."  DIPs Reply at 2. DIPs did not file an opposition to Erdemir's request for reconsideration and did not mention reconsideration in comments submitted in the CCR.  DIPs sole arguments regarding reconsideration were filed in the sunset review almost two years after Erdemir's request.

The timeline establishes that Erdemir requested reconsideration on May 18, 2020.  ECF 14, ECF14, Amended Complaint ¶21.  This request was spurred by the Court of International Trade affirming Commerce's remand redetermination on appeal from the less than fair value investigation ("antidumping investigation" or "AD investigation"), about a month earlier on April 13, 2020.  *See* ECF14, Amended Complaint ¶¶17-18; *Eregli Demir ve Çelik Fabrikalari T.A.S. v. United States*, 435 F. Supp. 3d 1378 (Ct. Int'l Trade 2020).  In that remand redetermination, Commerce changed methodologies from one that was found unlawful to a lawful methodology, and found Turkish imports from Çolakoğlu Dis Ticaret A.Ş. not to be dumped.  *See id.* ¶¶18-19.  As a result, Çolakoğlu was retroactively excluded from the AD Order on hot-rolled steel from Turkey.  *See id.*

In the original investigation, Commerce had found Çolakoğlu not subsidized in the countervailing duty investigation.  *See* ECF14, Amended Complaint ¶11.  The consequence of Commerce's finding was Çolakoğlu's import volume was not included in the final-phase injury investigation conducted by the Commission.  *Id.* at ¶13.  Without Çolakoğlu import volume, imports from Turkey were negligible and deemed non-injurious.  *Id.*  Thus, the CVD investigation was terminated.  *Id.*

Had Commerce used a lawful methodology in the AD investigation, Çolakoğlu's import volume would not have been included in the Commission's final phase injury investigation. Just like the CVD investigation, Turkish imports would have been found negligible and non-injurious, and the AD investigation would have been terminated. *See* ECF14, Amended Complaint ¶¶18-20. It was only because Commerce used an unlawful methodology that Turkish imports were not found negligible and an AD order entered. Erdemir filed its reconsideration request on the principle that the outcome of the investigation should not be different just because Commerce used an unlawful methodology. *See id.* ¶¶20-21.

DIPs did not file an opposition to Erdemir's May 18, 2020 request for reconsideration, and the Commission did not respond in any way to Erdemir's request. *See* ECF14, Amended Complaint ¶ 22. Erdemir formally followed-up on its request for reconsideration with a July 22, 2020 letter supporting its earlier request. *Id.* ¶23. Neither he Commission nor DIPs responded to this follow-up letter either. The only action the Commission took on Erdemir's reconsideration request and follow-up in 2020 was more than two years later when it denied the request for reconsideration at the end of November 2022. *See id.* ¶¶30-32; *Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding and the United Kingdom*, 87 Fed. Reg. 73,331 (Int'l Trade Comm'n Nov. 29, 2022) ("*Request Denial*").

### 1. The Changed Circumstances Review Is A Separate And Distinct Proceeding

A little over a year after filing the July 22, 2020 follow-up letter, Erdemir filed a request for a changed circumstances review (CCR) on September 10, 2021, requesting that the Commission consider the changed circumstances presented by the exclusion of Çolakoğlu from the AD order. *See* ECF14, Amended Complaint ¶26.

In contrast a reconsideration proceeding, the Commission CCR proceedings are governed by statutory and regulatory provisions requiring certain actions by the Commission.  Immediate action is required "{u}pon the receipt of a properly filed and sufficient request" for CCR under 19 U.S.C. § 1675(b) and 19 C.F.R. § 207.45(a); the Commission must "publish a notice of having received such a request in the Federal Register inviting public comment on the question of whether the Commission should institute a review investigation."  19 C.F.R. § 207.45(b). Parties must be given at least 30 days to comment, *id.*, and the Commission must determine whether to institute the CCR within 45 days after the close of the comment period. 19 C.F.R. § 207.45(c)

The Commission published notice of receipt of Erdemir's CCR request and invited comment on whether to initiate a CCR.  *See* ECF14, Amended Complaint ¶27; *Hot-Rolled Steel Flat Products From Turkey; Request for Comments Regarding the Institution of a Section 751(b) Review Concerning the Commission's Affirmative Determination*, 86 Fed. Reg. 68,512, 68,513 (Int'l Trade Comm'n Dec. 2, 2021) ("*Request for Comments*").  Notably, the *Request for Comments* only requested comments on whether to institute a CCR, it did not request comments on whether the Commission should institute a reconsideration proceeding.  *Id.*

Erdemir and DIPs filed comments in response to the Commissions invitation.  *See* ECF14, Amended Complaint ¶28; *Request for Comments* 86 Fed. Reg. at 68,513.  Erdemir's comments demonstrated why a CCR was warranted.  *See id.*  Further, per the Commission's specific request, Erdemir argued that the sunset review was not a suitable proceeding in which to address what should happen in light of Çolakoğlu exclusion from the order.  *See id.*  Erdemir also pointed the Commission to its earlier request for reconsideration and suggested that a reconsideration proceeding was preferrable to a CCR.

In DIPs filings in response to the invitation to institute CCR argued that Erdemir did not satisfy the requirements for a CCR and argued that a CCR would be duplicative of the pending sunset review.  *See id.*; DIPs Reply at 3.  DIPs claim to have addressed reconsideration arguments in their response to the invitation to comment on whether to initiate a CRR, stating "{i}n response to the Commission's request for comments, Domestic Interested Parties submitted comments addressing Erdemir's requests for a changed circumstances review and its alternative request for a reconsideration of the Order." DIPs Reply at 3.  But DIPs comments did not mention, much less contain any argument regarding Erdemir's request for consideration.

The Commission denied Erdemir's request for CCR at the end of November 2022 in a notice that addressed both the CCR request and the request for reconsideration.  *Request Denial*, 87 Fed. Reg. 73,331.  The Commission acknowledged the CCR filings in the CCR section of the *Request Denial*.  *See* ECF14, Amended Complaint ¶28; *Request Denial*, 87 Fed. Reg. at 73,332.  The Commission addressed Erdemir's reconsideration request separately, based upon a separate rationale.  *See id.* ¶¶28, 32.

## 2.   The Sunset Review Is A Separate And Distinct Proceeding

In September 2021, the Commission published notice of institution of the five-year (sunset) review of the AD and CVD orders on hot-rolled steel.  *See* ECF14, Amended Complaint ¶25; *Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year Reviews*, 86 Fed. Reg. 49,057 (Int'l Trade Comm'n Sep. 1, 2021).  DIPs fully participated in this review.  *See* ECF14, Amended Complaint ¶¶25,33-35; *Hot-Rolled Steel From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, 87 Fed. Reg. 74,167 (Int'l Trade Comm'n Dec. 2, 2022) ("*Sunset Final*"), and, *Hot-Rolled Steel From Australia, Brazil, Japan,*

*Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review), USITC Pub. 5380 (Nov. 2022) ("*Sunset Publication*"); DIPs Reply at 3.  Among arguments presented in the sunset review, Erdemir suggested that the Commission could address reconsideration issues in the sunset review, a CCR review, or a reconsideration proceeding.  *See* ECF14, Amended Complaint ¶34.

For the first time, and two years after Erdemir's request for reconsideration, DIPs addressed Erdemir's request for reconsideration in the September 2022 hearing in the sunset review and in post-hearing briefing.  The Commission acknowledged in the sunset review the arguments raised by parties relating to a CCR or reconsideration proceeding, but specifically stated that it was not addressing those arguments in the sunset review, "explaining that the Erdemir raised the arguments in '*proceedings* outside of these {sunset} reviews and the Commission has addressed them there.'"  *Id.* (*quoting Sunset Publication*, at 48 & n.298 (emphasis added)).

### 3.  DIPs Did Not File Any Submissions In A Reconsideration Proceeding

While it is undisputed that DIPs participated by filing argument and information in the sunset review and in response to the invitation to comment on institution of a CCR, it is equally undisputed is that DIPs did not file any submission in response to Erdemir's May 18, 2020 request for reconsideration.  As DIPs concede, "there was no formal reconsideration proceeding."  DIPs Reply at 17.

DIPs claim that Erdemir "made its request for reconsideration multiple times, to which Domestic Interested Parties responded repeatedly."  DIPs Reply at 2, 17.  But this is factually incorrect.  Erdemir submitted a single request for reconsideration on May 18, 2020.  *See* ECF 14,

ECF14, Amended Complaint.  Erdemir supplemented that request on July 22, 2020.  And Erdemir pointed to the request for reconsideration in its comments in response to the invitation to comment on whether to institute the CCR and in its briefing in the sunset review.  Erdemir's arguments in the CCR and sunset review were not requests for reconsideration, but pointed to its May 18, 2020 request as a better forum for addressing the issue.

Despite DIPs claim that they "have demonstrated a clear interest in responding to Erdemir's requests for reconsideration," DIPs Reply at 17, DIPs did not file an opposition to Erdemir's request for reconsideration as domestic interested parties have to other similar requests.  *See, e.g., Consol. Fibers Inc. v. United States*, Ct. No. 1:06-cv-00018, *Motion to Intervene as of Right*, ECF 13 at 3 (citing opposition submitted to the Commission by proposed-intervenors in response to the plaintiff's request for reconsideration).  And DIPs did not present any argument about Erdemir's request for reconsideration in its submission in the CCR proceeding.  The only arguments DIPs raised about reconsideration were in the sunset review, more than two years after Erdemir submitted its request for reconsideration.  Amended Complaint ¶34.

DIPs did not respond "repeatedly" to what DIPs describe as "Erdemir {making} its request for reconsideration multiple times."  DIPs Reply at 17.  DIPs responded in writing only once.  *Id.*  Thus, this Court should reject DIPs assertion that "to the maximum extent possible, {DIPs} have demonstrated a clear interest in responding to Erdemir's requests for reconsideration."  *Id.*   DIPs late-expressed interest in responding to Erdemir's request for reconsideration, raised for the first time more than two years after Erdemir filed its request for review, does not equal participation in a reconsideration proceeding, nor does it equate to a legally protected interest or cause DIPs to be adversely affected or aggrieved.

### B.  DIPs Failed To Establish A Legally Protectable Interest

DIPs failed to carry their burden to establish a legally protectable interest.  To the extent intervention of right is available in this case under Rule 24(a)(2), if a proposed intervenor fails to establish a legally protectable interest, its motion for intereovention must fail.  *See GreenFirst*, 577 F. Supp. 3d at 1353-54 (*quoting Wolfsen*, 695 F.3d at 1315); *Seneca Foods*, Slip Op. 22-149, 2022 Ct. Intl. Trade LEXIS 148 at *7 ("Failure to satisfy any one of these requirements defeats the movant's right to intervene under CIT Rule 24(a)(2)." (*Citing Vivitar*, 7 CIT at 167, 585 F. Supp. at 1417)).  Mere interest in opposing Erdemir's request for a reconsideration proceeding does not establish that DIPs have a legally protectable interest in this action.  Further, DIPs do not raise any new interest in their Reply, and fail explain how the interests they claim could be affected by this case.

DIPs claim that "{a}n adverse outcome in this case could jeopardize the import relief provided by the Order that {DIPs} petitioned for," but then contradict their own claim by clarifying that it is only "{t}ermination of the Order" that could "have significant and tangible commercial effects for these companies."  DIPs Reply at 4.  The Order is not at risk in this action, only the Commission's denial of Erdemir's request for a reconsideration proceeding.

This Court in *GreenFirst* identified this crucial distinction.  The court there explained that GreenFirst's action was limited to challenging Commerce's decision not to conduct the changed circumstances review, with the only relief GreenFirst could gain being a remand for Commerce to conduct the review.  *GreenFirst Forest Prods.*, 577 F. Supp. 3d at 1354.  Fatal to proposed-intervenor that was that it "fail{ed} to reconcile its purported interest in {that} action with what GreenFirst seeks."  *Id.*  GreenFirst was not attacking the countervailing duty order itself, it was only challenging Commerce's refusal to initiate the changed circumstances review.  *Id.*

12

As in *GreenFirst*, DIPs do "not have legally protectable interest in this action because this action is limited to the question of whether {the Commission} arbitrarily or capriciously decided not to conduct a {reconsideration proceeding}." *See GreenFirst*, 577 F. Supp. 3d at 1354; ECF 14, Amended Complaint at ¶38. "Indeed, {Erdemir's status of being currently subject to the AD Order} will remain unchanged regardless of the outcome of this action." *GreenFirst*, 577 F. Supp. 3d at 1355.

Further, although DIPs assert that they "claim an interest relating to the property or transaction at issue," they never identify the property or transaction that is the subject of the action. *See* DIPs Reply at 14. This is the precise question that caused Erdemir to argue that intervention under Rule 24(a)(2) does not seem available for actions other than EAPA actions. *See* ECF 33, Opp. To Mot. To Intervene Of Nucor Corp., at 2-5. The first clause of USCIT R.24(a)(2) specifically relates to "an action described in section 517(g) of the Tariff Act of 1930," that is, EAPA actions. The second clause relates to a claim of "interest in the property or transaction that is the subject of the action." USCIT R. 24(b). The language of the rule makes sense only if it relates to the first clause, limiting intervention under Rule 24(b) to EAPA cases.

Erdemir provided an exhaustive analysis of cases addressing intervention under USCIT R.24(a)(2) in its responses to Nucor's motion to intervene. ECF 33, Opp. To Mot. To Intervene Of Nucor Corp., at 6-7. No opinion directly addresses the EAPA question, but the Court has denied intervention under USCIT R.24(a)(2) in all cases except one EAPA case and one non-EAPA case. The non-EAPA case was an appeal from the denial of a protest of CBP's decision not to exclude merchandise. *Luxury Int'l, Inc. v. United States*, 23 C.I.T. 694, 69 F. Supp. 2d 1364 (1999). In *Luxury Int'l*, the intervenor had an actual stake because it posted a $150,000 security to maintain the exclusion and had an intellectual property interest in the transactions at

13

issue.  *Id.*  While *Luxury Int'l* was not an EAPA case, the Court assumed, but did not analyze, the

applicability of intervention of right under the second clause of USCIT R.24(b).  Accordingly,

there is nothing in that decision that can be relied upon to establish a more expanded availability

of intervention of right under Rule 24(a)(2).

DIPs wrongly claims that "the Court has previously granted motions to intervene based

on Rule 24(a)(2) where the underlying proceeding did not implicate the EAPA statute."  DIPs

Reply at 14 (*citing Consol. Fibers, Inc. v. United States*, Ct. No. 06-00018, ECF Nos. 4, 13, and

16; *Motion Sys. Corp. v. United States*, Ct. No. 03-00146, ECF Nos. 16 and 24).  DIPs omit

distinguishing facts in circumstances of *Consol. Fibers Inc. v. United States*, Ct. No. 1:06-cv-

00018.  DIPs omit relevant facts related to each of these cases.

In *Motion Sys.*, the intervenor filed its motion to intervene for intervention of right under

Rule 24(a)(2) and alternatively for permissive intervention under Rule 24(b).  *Motion Sys.*, Ct.

No. 03-00146, ECF 16, Consent Mot. To Intervene As Of Right Or, Alternatively, Seeking

Permissive Intervention.  The motion to intervene was a consent motion, but did not identify

whether the parties consented to intervention of right or permissive intervention, or both.  *Id.*

And the court simply granted "the Consent Motion of CCL Industrial Motor Limited ('CIM') to

intervene in this action," without providing any analysis or identifying whether intervention was

granted of right or permissively. *Motion Sys.*, Ct. No. 03-00146, ECF 24.

In *Consol. Fibers*, intervenors (petitioners) also sought intervention of right under USCIT

R.24(a)(2) or permissive intervention under USCIT R.24(b), in a challenge to the denial of a

request for reconsideration on the basis of alleged material misrepresentations and omissions by

petitioners in the underlying investigation regarding criminal price fixing by petitioners.  *See*

*Consol. Fibers Inc. v. United States*, Ct. No. 1:06-cv-00018, *Motion to Intervene as of Right*,

ECF 13 at 1.  DIPs omit that – unlike DIPs here – petitioners there filed a response before the

Commission in opposition to the underlying request for reconsideration.  *See id* at 3.  Further,

DIPs misrepresent the outcome, claiming that the court in *Consol. Fibers* "granted {a} motion{}

to intervene based on Rule 24(a)(2)."  *See* DIPs Reply at 14.  The Court's order there was

ambiguous on its face:

> Upon consideration of the Motion to Intervene as of Right
> *or, alternatively, by Permission*, filed by applicants for intervention,
> DAK Fibers, LLC. Invista, S.a.r.L. and Wellman, Inc., it is hereby
> ORDERED that the Motion to Intervene is GRANTED.

*See Consol. Fibers Inc. v. United States*, Ct. No. 1:06-cv-00018, ECF 16, Order (emphasis

added).

While the Court's order did not state whether it was granting intervention under Rule

24(a)(2) or under intervenor's alternative argument for permissive intervention under Rule 24(b),

however, it is unlikely that the Court there granted intervention of right under Rule 24(a)(2)

because the motion to intervene was filed on March 29, 2006, more than 30 days after the

Complaint in *Consol. Fibers* was served on January 18, 2006.  *Id.*; *see Seneca Foods*, Slip Op.

22-149, 2022 Ct. Intl. Trade LEXIS 148 at *7 ("Failure to satisfy any one of these requirements

defeats the movant's right to intervene under CIT Rule 24(a)(2)." (*Citing Vivitar*, 7 CIT at 167,

585 F. Supp. at 1417)).

Finally, DIPs omit that there was no opposition to permissive intervention in *Consol.*

*Fibers*.  *See Consol. Fibers Inc. v. United States*, Ct. No. 1:06-cv-00018, *Motion to Intervene as*

*of Right*, ECF 13 at 8.  The Defendant there consented, and while the Plaintiff opposed

intervention of right, the Plaintiff did not oppose permissive intervention.  *Id.*  Because the

motion was untimely for intervention of right, and there was no opposition to permissive

intervention, the only possible conclusion is that the Court granted permissive intervention

because it was unopposed.  Accordingly, *Motion Sys.* and *Consol. Fibers* do not support DIPs arguments.

### C.  DIPs Failed To Establish How This Action Could Have A Direct And Immediate Effect

DIPs Reply does not establish how this Court's decision regarding the issue raised in this action could have a direct and immediate effect on DIPs interests, and thus DIPs are not entitled to intervention of right.  *See GreenFirst*, 577 F. Supp. 3d at 1353-54 (*quoting Wolfsen*, 695 F.3d at 1315)); *Seneca Foods*, Slip Op. 22-149, 2022 Ct. Intl. Trade LEXIS 148 at *7 ("Failure to satisfy any one of these requirements defeats the movant's right to intervene under CIT Rule 24(a)(2)." (*Citing Vivitar*, 7 CIT at 167, 585 F. Supp. at 1417)).  Just as DIPs blur the definition of what participation in the underlying proceeding is, DIPs also blur the "direct and immediate" standard, which requires that a movant have an interest "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment."  *GreenFirst*, 577 F. Supp. 3d at 1353-54 (*quoting Wolfsen*, 695 F.3d at 1315).  DIPs claim "a 'direct and immediate' *interest* that *could be* harmed by the results of this proceeding." DIPs Reply at 16 (emphasis added).  DIPs mistake both the standard and the possibility of harm from this proceeding.

DIPs claim to a "'direct and immediate *interest*' that *could be* harmed," DIPs Reply at 16 (emphasis added), is not "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment."  *See GreenFirst*, 577 F. Supp. 3d at 1353-54 (*quoting Wolfsen*, 695 F.3d at 1315).  DIPs also claim that they could lose the opportunity to argue that the Court does not have subject matter to hear Erdemir's claim or to address Erdemir's substantive arguments.  DIPs Reply at 16.  And DIPs claim that they would

lose the opportunity to argue that the Commission does not have the authority to conduct a reconsideration proceeding under the circumstances of this case. *Id.* DIPs exaggerate.

This action is solely about whether the rationale presented by the Commission in its refusal to initiate a reconsideration proceeding is legally sufficient. The only possible outcomes of this action are (1) the Commission refusal is affirmed, or (2) the Commission determines it should initiate a reconsideration proceeding and, upon affirmance by this Court, conducts the proceeding. Either way, the AD order will remain in effect and Erdemir (and all Turkish hot-rolled steel producers subject to the order) will continue under their current status as subject to the antidumping duty order. No outcome of this case can remove any protection DIPs claim to be entitled to, nor can any outcome of this case prevent DIPs from raising in a remand proceeding before the Commission whatever argument they desire to raise.

To the extent DIPs fear is based upon a speculative claim they could be excluded from a remand proceeding, their fear is misplaced. DIPs Reply at 9-10 & n2. DIPs cites inapposite cases to assert that it might be shut out of a reconsideration proceeding. But these cases involved remands from this Court after the Commission had already conducted a full investigation, the final injury determination had been appealed to this Court, and the Court remanded aspects of the final injury determinations to the Commission for reconsideration. *Drill Pipe and Drill Collars from China*, 78 Fed. Reg. 59,972 (Int'l Trade Comm'n Sept. 30, 2013); *Polyethylene Terephthalate Resin from Brazil, Indonesia, Korea, Pakistan, and Taiwan*, 85 Fed. Reg. 41,624 (Int'l Trade Comm'n July 10, 2020); *Polytetrafluoroethylene Resin From China and India*, 85 Fed. Reg. 38,157 (Int'l Trade Comm'n June 25, 2020); *Softwood Lumber from Canada*, 84 Fed. Reg. 51,175 (Int'l Trade Comm'n Sept. 27, 2019). These cases do not provide the precedent DIPs claim. Erdemir prevailing in this action could not result in termination of the Order, as

DIPs imply.  DIPs Reply at 9.  Erdemir prevailing would result in the institution of a

reconsideration proceeding where DIPs could participate and raise all their arguments, and the

Commissions can enjoy its right to address questions of its authority in the first place.  To the

extent there are any concerns that the Commission may not permit DIPs to participate (which is

highly unlikely), the Court may also order the Commission to allow participation by any

interested party.

Accordingly, no result of this action will be "of such a direct and immediate character

that the intervenor will either gain or lose by the direct legal operation and effect of the

judgment."  *GreenFirst*, 577 F. Supp. 3d at 1353-54 (*quoting Wolfsen*, 695 F.3d at 1315).  Thus,

DIPs claim to intervention of right must fail.  *Seneca Foods*, Slip Op. 22-149, 2022 Ct. Intl.

Trade LEXIS 148 at *7 ("Failure to satisfy any one of these requirements defeats the movant's

right to intervene under CIT Rule 24(a)(2)." (*Citing Vivitar*, 7 CIT at 167, 585 F. Supp. at

1417)).

### D.  DIPs Failed To Establish Why The Commission Would Not Adequately Protect Their Interests

DIPs failed to carry their burden to establish why the Commission would not adequately

protect their interests in the issue before this Court.  *GreenFirst*, 577 F. Supp. 3d at 1353-54

(*quoting Wolfsen*, 695 F.3d at 1315).  DIPs claim the Commission cannot adequately protect its

interests, but ignore the issue in this case:  whether the Commission's stated rationale is

insufficient, as a matter of law, to deny Erdemir's request for reconsideration.  The

Commission's full interest is to prevail in convincing the court that its rationale is sufficient.  To

the extent there are other rationales that may also be sufficient to reject Erdemir's request for

reconsideration, any such other rationale is not a question before this Court.  "It is well-

established that an agency's action must be upheld, if at all, on the basis articulated by the agency

itself." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). Because this Court may only uphold the Commission's decision on the basis articulated by the Commission, there is no other perspective or interest that could properly be before this Court. Thus, DIPs could not raise different legal defenses as they are irrelevant to the Court's decision here.

Further, regarding the specific issue before this Court in this action, DIPs and the Commission have the same ultimate objective: denying a reconsideration proceeding. The Federal Circuit has adopted the framework of other circuit courts for analyzing whether a proposed intervenor's interests are adequately represented, focusing on the "ultimate objective" of the parties:

> "The most important factor in assessing the adequacy of representation is how the interest compares with the interests of existing parties. If an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises. To rebut the presumption, an applicant must make a 'compelling showing' of inadequacy of representation."

*Wolfsen Land & Cattle*, 695 F.3d at 1316 (*quoting Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (*quoting League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997); *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003))). DIPs have not attempted to demonstrate how the Commission has a different ultimate objective, much less provided a compelling showing of the inadequacy of the Commission's ability to represent DIPs interests regarding the ultimate objective.

Accordingly, DIPs have failed to carry their burden to show that their interests will not be adequately represented. *GreenFirst*, 577 F. Supp. 3d at 1353-54 (*quoting Wolfsen*, 695 F.3d at 1315). DIPs claim to intervention of right must rejected because DIPs fail to establish a legally protectable interest, a direct and immediate effect, or inadequate representation, each of which,

by itself, defeats DIPs motion.  *Seneca Foods*, Slip Op. 22-149, 2022 Ct. Intl. Trade LEXIS 148

at *7 ("Failure to satisfy any one of these requirements defeats the movant's right to intervene

under CIT Rule 24(a)(2)." (*Citing Vivitar*, 7 CIT at 167, 585 F. Supp. at 1417)).

### III.    DOMESTIC INTERESTED PARTIES' REPLY FAILED TO REBUT ANY OF ERDEMIR'S ARGUMENTS DEMONSTRATING WHY DIPs DO NOT QUALIFY FOR PERMISSIVE INTERVENTION UNDER RULE 24(b) OF THIS COURT'S RULES

This Court should also reconsider granting intervention because DIPs also failed to

establish how they qualify for permissive intervention.  DIPs claim that having a claim or

defense in common is, by itself, sufficient for permissive intervention under Rule 24(b)(1)(B).

DIPs Reply at 5-8.  They further argue that they would be adversely affected or aggrieved, and

that intervention would not unduly delay or prejudice the original parties.  DIPs Reply at 8-12.

But these claims fail to acknowledge the connection between common claims and defenses and

being adversely affected or aggrieved.  DIPs further fail to assert any sufficient argument

regarding delay and prejudice to carry their burden of production.

### A.  A Common Claim Or Defense Is Insufficient Without Establishing That A Party Would Be Adversely Affected Or Aggrieved And That There Would Be No Undue Delay Or Prejudice

DIPs wrongly assert that having a common claim or defense, by itself, is sufficient for

permissive intervention.  DIPs Reply at 5-6.  DIPs assert, "the Court may permit Domestic

Interested Parties to intervene in this appeal because they have 'a claim or defense that shares

with the main action a common question of law or fact,' as established in Rule 24(b)(1)(B)."

DIPs Reply at 6.  This statement is incomplete.  This Court requires that a party with a common

claim or defense must also be adversely affected or aggrieved.  In *GreenFirst*, this Court

explained that the proposed intervenor "fails to adequately demonstrate that it shares a defense to

GreenFirst's claims *because it does not sufficiently allege that it will be adversely affected or*

*aggrieved by a decision in this action*." *GreenFirst Forest*, 577 F. Supp. 3d at 1357 (emphasis

added). Thus, although DIPs claim that they "have *also* satisfied the requirement for permissive

intervention under Rule 24(b)(1)(A) and 28 U.S.C. 2631(j)," DIPs Reply at 6, DIPs failed to

connect the adversely-affected-or-aggrieved requirement with the common-claim-or-defense.

Because DIPs cannot demonstrate that it could be adversely affected or aggrieved by this action,

as established below, DIPs do not qualify for permissive intervention.

### B. DIPs Failed To Establish That They Were Adversely Affected or Aggrieved

DIPs failed to carry their burden to establish that they could be adversely affected or

aggrieved by any outcome in this action. Before this Court can exercise its discretion to grant

permissive intervention, a proposed intervenor must establish that it "would be adversely

affected or aggrieved by a decision in a civil action pending in the Court of International Trade."

28 U.S.C. § 2631(j). DIPs only assert a general interest in continuance of the antidumping duty

order on hot-rolled steel from Turkey. This action, however, cannot change the status of the AD

order or Erdemir's status of being subject to the order. Accordingly, this Court should rescind its

grant of intervention to DIPs.

Although DIPs claim that "adversely affected or aggrieved" is interpreted broadly, and

the Court's practice is to grant permissive intervention in cases brought under 28 U.S.C. §

1581(i)DIPs Reply at 6-8, each case must be evaluated on its own merits with each movant

required to carry the burden to establish the right it asserts under the applicable laws and factual

circumstances of each case. Cases cited by DIPs arguing generally that "this Court regularly

allows parties to intervene in cases brought under 28 U.S.C. § 1581(i)" are unavailing. DIPs

Reply at 7.

As described above, in *Consol. Fibers*, the Court granted permissive intervention based upon defendant's consent and plaintiff's decision not to oppose permissive intervention. *See* section II.B, *supra*. Similarly, in *Canadian Wheat Bd.* and *Sunpreme* the plaintiffs consented to permissive intervention, and defendant (United States) provided limited consent to intervene, limited only because defendant was unsure of the proposed-intervenor's standing or the court's jurisdiction. *See Canadian Wheat Bd. v. United States*, 33 CIT 1204, 1211-12, 637 F. Supp. 2d 1329, 1338-39 (2009) (finding proposed intervenors had standing to intervene); *Sunpreme Inc. v. United States*, 145 F. Supp. 3d 1271, 1277-78 (Ct. Int'l Trade 2016) (finding jurisdiction under 28 U.S.C. § 1581(i)) (Ct. No. 15-00315, ECF 21 *Memorandum and Order*, at 1, 3). *See also Halo Elecs., Inc. v. Pulse Elecs., Inc*., 857 F.3d 1347, 1350 n.1 (a court may take judicial notice of public dockets).

In *Ontario Forest*, the court granted permissive intervention based upon the specific facts there. The domestic interested party there ("Coalition") sought to intervene in an action in mandamus where the plaintiff sought to compel "the United States Trade Representative ('USTR') to appoint a member to an Extraordinary Challenge Committee – a reviewing authority in the North American Free Trade Agreement binational review system." *Ont. Forest Indus. Assoc. v. United States*, 30 CIT 1117, 444 F. Supp. 2d 1309,1311 (2006). The Coalition was the petitioner and fully participated in the underlying CVD investigation and fully participated in the NAFTA binational panel proceeding. *Id.* After the NAFTA binational panel affirmed a finding that subsidies were *de minimis*, and thus that the CVD investigation should have been terminated and all deposits of CVD duties returned, the United States appealed the decision to an Extraordinary Challenge Committee (ECC). *Id.* at 1316. The appeal was suspended before either the United States or Canada had appointed an ECC member, however, because the United

State and Canada jointly determined to delay ECC proceedings in favor of a negotiated

settlement.  *Id.* at 1317.  The Ontario Forest Industry Association sought to compel the ECC

proceeding despite the U.S.-Canada negotiations.  *Id.*  Thus, the outcome of the case would

affect ongoing negotiations between the United States and Canada, and thus could adversely

affect or aggrieve the interests of the domestic interested parties.  In contrast, here, the only

possible outcomes of this action are (1) the outcome DIPs favor or (2) a proceeding that allows

DIPs to participate and fully protect their rights.  There is no possibility that the rights DIPs

claim can be *adversely* affected or aggrieved.

Further, the Court in *Ontario Forest* evaluated much more than the timing of the

Coalition's motion to intervene.  The Court evaluated the timing of the Coalitions motion to

dismiss, the arguments raised, and the research provided.  *Id.* at 1323.  DIPs here filed

recognized that they filed inadequate motions; sought leave to submit additional briefing, but

failed to add meaningfully to their previous arguments; and provided inapposite research.  DIPs

participation will only add undue delay and prejudice.

Although DIPs cry that Erdemir is attempting an "end run" around the law and engaging

in "little more than appellate gamesmanship," DIPs Reply at 7, these aspersions fail to remedy

their own failure to focus their arguments on the specific issues raised in this action and the

standards applicable to their request.  Moreover, DIPs fail to recognize the difference between a

reconsideration, a CCR, and a sunset review, calling the potential remedies available in different

proceedings "a distinction without a difference."  DIPs Reply at 4 ("Plaintiff's claim that it 'does

not seek revocation of an order' but rather 'retroactive termination of the investigation' is a

distinction without a difference.").  The distinction is important and makes clear why Erdemir

seek a reconsideration proceeding.

A revocation of the order (which is a possible outcome pursuant to a CCR or sunset review) may be effective only prospectively, thus Erdemir would lose cash deposits on unliquidated entries that entered since the investigation.  In contrast, a reconsideration proceeding could result in retroactive termination of the investigation, freeing those cash deposits to be refunded to Erdemir.  *See* ECF31, Opposition to Motion to Intervene of Cleveland-Cliffs Inc., at 5.  While this difference may be meaningless to DIPs, it is meaningful to Erdemir.

Further, an appeal of a request for reconsideration, arising under 28 U.S.C. 1581(i) and the Administrative Procedures Act has different standards and a different record to go along with the different remedy.   DIPs may call it an "end run" or "appellate gamesmanship," but only to the extent they don't appreciate, or do not want to acknowledge the differences between a reconsideration, a CCR, and a sunset review.  DIPs see any eventual end of the antidumping duty order on hot-rolled steel from Turkey as "depriv{ing} {DIPs} of the trade relief they have benefitted from since the Order was put in place."  DIPs Reply at 4.  Erdemir sees it as the proper end to relief DIPs were never entitled to in the first place.  This action is simply about whether the Commission wrongfully denied Erdemir the opportunity to raise the issue in a reconsideration proceeding.

### C.  DIPs Failed To Establish That Their Participation Would Not Cause Undue Delay Or Prejudice To The Original Parties To The Action

DIPs did not add to their insufficient claim that mere early timing filing their motion to intervene was enough to satisfy their burden to demonstrate that their participation would not cause undue delay or prejudice to the original parties to the action.  DIPs' sole argument about delay and prejudice is that this case is at a "very early stage."  DIPs Reply at 10.  DIPs' single assertion is insufficient to carry its burden.

Under Rule 24(b)(3) of the Rules of this Court, and section 2631(j)(2), the Court must "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  This Court has previously explained that "{a}additional parties always add additional time, effort, and expense." *Neo Solar Power*, Slip Op. 16-60, 2016 Ct. Intl. Trade LEXIS 58 at *2-*3 (*citing Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F. Supp. 972, 973 (D. Mass. 1943)); *Severstal*, Slip Op. 18-41, 2018 Ct. Intl. Trade LEXIS 41 at *6 (same).

The mere fact that a motion to intervene has been filed early in the proceeding is not something that can or should be considered sufficient to add "time, effort, and expense," to any proceeding. *Neo Solar Power*, Slip Op. 16-60, 2016 Ct. Intl. Trade LEXIS 58 at *2-*3 (*citing Crosby*, 51 F. Supp. at 973); *Severstal*, Slip Op. 18-41, 2018 Ct. Intl. Trade LEXIS 41 at *6 (same).  If filing a motion to intervene at a very early stage in the proceeding were sufficient, any interested party filing its motion early in the proceeding would be allowed to intervene. *See Neo Solar Power*, Slip Op. 16-60, 2016 Ct. Intl. Trade LEXIS 58 at *5 ("other domestic producers could seek to intervene on similar grounds in support of similar tangential interests, which would only cause undue delay and prejudice to the present parties" (*citing Vivitar*, 7 CIT at 169, 585 F. Supp. at 1419 ("Because of the potential for a vast number of applications for intervention by persons in the position of {the moving party}, permitting intervention does not appear to be in the interest of judicial economy."); *Severstal*, Slip Op. 18-41, 2018 Ct. Intl. Trade LEXIS 41 at *5 (same, denying intervention under USCIT R.24(b)(1)(B).  Indeed, DIPs claim is that having a common claim or defense and submitting a motion to intervene early in the proceeding removes any discretion this Court has to deny permissive intervention.

But timely submission is its own element for consideration.  *See* USCIT R.24(b)(1) (setting forth the requirement that Court may exercise discretion regarding intervention only "{o}n timely motion"); USCIT R.24(b)(3) ("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."); *see also* DIPs Reply at 5.  Thus, the necessary precondition of timing of filing under Rule 24(b)(1) cannot, by itself, satisfy the concerns of undue delay or prejudice that must be considered under Rule 24(b)(3).  Without further discussion of all aspects of delay and undue prejudice – including delays during the proceeding, increased costs, required effort, and overall expense caused by the presence of DIPs in this case, the Court can only speculate that USSC's arguments would only be duplicative of the Commission's arguments, or irrelevant to the merits of this action, which weighs against intervention.  *Severstal*, Slip Op. 18-41, 2018 Ct. Intl. Trade LEXIS 41 at *6.  An

DIPs do not address delay during the proceeding or increased cost, effort, and expense caused by additional parties participating, seeking extension of time for briefing, and filing additional volumes of briefing.  (Here, four parties seek to intervene, and DIPs have been granted intervention.)  Indeed, DIPs have already been the source of unnecessary delay and prejudice by filing inadequate motions to intervene that required 18 additional pages in reply.  *See* DIPs Reply.  As demonstrated above, these 18 additional pages omit relevant information from cases making them inapposite, blur the facts of participation in response to Erdemir's request for reconsideration, and claim rights that do not reconcile with the action before this Court.  To the extent these filings are indicative of what is to come, the additional time, effort, and expense required to rebut similarly ungrounded arguments weighs heavily against intervention.

Further, to the extent DIPs have arguments different from the Commission's, they are not relevant to this action.  *See, Motor Vehicle*, 463 U.S. at 50 ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.").  And even if DIPs "'defense and that of the government are the same, this defense belongs, in essence, to the government, not {the movant}.'" *Severstal*, Slip Op. 18-41, 2018 Ct. Intl. Trade LEXIS 41 at *6 (*quoting Neo Solar*, Slip Op. 2016-60, 2016 WL 3390237, at *2).  DIPs involvement here can only be duplicative and unnecessary.

DIPs attempt to flip the burden of persuasion, arguing that "Plaintiff fails to provide the Court with any evidence or argument indicating that the intervention of {DIPs} will cause Plaintiff or any other party undue prejudice."  DIPs Reply at 11.  But it is not Erdemir's burden to establish that DIPs intervention would cause undue prejudice or delay.  DIPs must establish a sufficient case first, after which, if DIPs have, Erdemir would need to provide rebutting argument.  But DIPs failed to carry their burden because thought only to observe that the motion was filed early in the proceeding.  DIPs Reply at 10.

DIPs also incredibly accuse Erdemir of delay "{b}y challenging each motion to intervene filed by Domestic Interested Parties separately and at length."  DIPs Reply at 10.  DIPs would have preferred that Erdemir simply consent, or file a single response to the several different motions.  DIPs fail to acknowledge that, despite commonalities, each motion to intervene involved slightly different theories and grounds for intervention, each of which had to be addressed separately.  It certainly would have been easier had the parties filed identical motions.  But just as Erdemir does not begrudge DIPs right to argue for intervention, DIPs have no grounds to grouse about Erdemir exercising its right to oppose those motions on its belief that

27

DIPs are not entitled to intervention.  There is no "appellate gamesmanship," *see id*., just because DIPs believe that Erdemir simply should roll over and consent to intervention.

Accordingly, because DIPs arguments can only be duplicative or irrelevant, and thus lead to delay and its participation, this Court should deny permissive intervention.

Respectfully submitted,

David L. Simon, Esq.
Mark B. Lehnardt, Esq.

LAW OFFICES OF DAVID L. SIMON, PLLC
1025 Connecticut Avenue, NW, Suite 1000
Washington, DC 20036 USA
Tel. 202-481-9000
e-mail:  DLSimon@DLSimon.com

March 14, 2023

*Counsel to Ereğli Demir Ve Çelik Fabrikalari T.A.Ş.*