### UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

|  |  |
|---|---|
| EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş, | ) ) ) |
| *Plaintiff,* | ) ) |
| *v.* | ) ) |
| UNITED STATES INTERNATIONAL TRADE COMMISSION, | ) ) ) |
| *Defendant,* | )   Court No. 22-00349 ) |
| *and* | ) ) |
| CLEVELAND-CLIFFS INC., NUCOR CORPORATION, STEEL DYNAMICS, INC., and SSAB ENTERPRISES, LLC, | ) ) ) ) |
| *Defendant-Intervenors.* | ) ) |

## DEFENDANT-INTERVENORS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

*/s/ Jeffrey D. Gerrish*
Roger B. Schagrin, Esq.
Jeffrey D. Gerrish, Esq.
Saad Y. Chalchal, Esq.*

**SCHAGRIN ASSOCIATES**
900 7th Street, NW, Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel to Steel Dynamics, Inc.
and SSAB Enterprises, LLC*

*/s/ Alan H. Price*
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Theodore P. Brackemyre, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

*/s/ Stephen P. Vaughn*
Stephen P. Vaughn, Esq.
Neal Reynolds, Esq.
Barbara Medrado, Esq.

**KING & SPALDING LLP**
1700 Pennsylvania Ave., NW
Washington, DC 20006
(202) 737-0500

*Counsel to Cleveland-Cliffs Inc.*

Dated: July 31, 2023

---

* Only admitted in New York and New Jersey. Practice limited to matters before federal courts and agencies.

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 2

II.    BACKGROUND ...................................................................................... 4

    A.  The Original Investigations of Imports of Hot-Rolled Steel Flat Products from Turkey .................................................................................................. 4

    B.  Çolakoğlu and Erdemir's Appeal of Commerce's Final Determination of Sales at Less Than Fair Value ......................................................................... 7

    C.  The Commission's Denial of Erdemir's Request to Institute a Proceeding to Reconsider the Final Determination of Material Injury .......................................... 9

III.   ARGUMENT ....................................................................................... 13

    A.  Standard of Review .......................................................................... 13

       1.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction ..... 13

       2.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted ................................................................... 15

    B.  This Court Does Not Possess Jurisdiction Under 28 U.S.C. § 1581(i) Because Jurisdiction Under 28 U.S.C. § 1581(c) Could Have Been Available ................. 16

    C.  Erdemir's Amended Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted ................................................. 22

IV.    CONCLUSION ................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*A&D Auto Sales, Inc. v. United States*,
   748 F.3d 1142 (Fed. Cir. 2014) .................................................................16

*Am. Air Parcel Forwarding Co. v. United States*,
   718 F.2d 1546 (Fed. Cir. 1983) .................................................................21

*Arunachalam v. Int'l Business Machines Corp.*,
   759 Fed. Appx. 927 (Fed. Cir. 2019) .......................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................14–15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................14–15

*Califano v. Sanders*,
   430 U.S. 99 (1977).....................................................................................21

*Confederación Asociaciones Agricolas del Estado de Sinaloa, A.C. v. United States*,
   459 F. Supp. 3d 1354 (Ct. Int'l Trade 2020) ............................................16

*Conley v. Gibson*,
   355 U.S. 41 (1957).....................................................................................15

*DaimlerChrysler Corp. v. United States*,
   442 F.3d 1313 (Fed. Cir. 2006).................................................................13

*Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*,
   435 F. Supp. 3d 1378 (Ct. Int'l Trade 2020) ..............................................7

*Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*,
   415 F. Supp. 3d 1216 (Ct. Int'l Trade 2019) ..............................................7

*Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*,
   357 F. Supp. 3d 1325 (Ct. Int'l Trade 2018) .........................................7–8

*Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*,
   308 F. Supp. 3d 1297 (Ct. Int'l Trade 2018) ..............................................8

*Erwin Hymer Grp. N. Am. v. United States*,
   930 F.3d 1370 (Fed. Cir. 2019).............................................................14–15

*Hartford Fire Ins. Co. v. United States*,
  544 F.3d 1289 (Fed. Cir. 2008)...........................................................................14, 17

*Int'l Custom Prods., Inc. v. United States*,
  467 F.3d 1324 (Fed. Cir. 2006) ..................................................................................17

*JCM, Ltd. v. United States*,
  210 F.3d 1357 (Fed. Cir. 2000) ..................................................................................21

*King Iron Bridge & Mfg. Co. v. Otoe Cty.*,
  120 U.S. 225 (1887)....................................................................................................13

*Norsk Hydro Can., Inc. v. United States*,
  472 F.3d 1347 (Fed. Cir. 2006).............................................................................14, 18

*Ponder v. United States*,
  117 F.3d 549 (Fed. Cir. 1997) ....................................................................................15

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017) ....................................................................................16

*Shinyei Corp. of Am. v. United States*,
  355 F.3d 1297 (Fed. Cir. 2004) ..................................................................................21

*Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States*,
  672 F.3d 1021 (Fed. Cir. 2012)...................................................................................15

*Sunpreme Inc. v. United States*,
  892 F.3d 1186 (Fed. Cir. 2018)...........................................................................14, 18, 21

*Tokyo Kikai Seisakusho Ltd. v. United States*,
  529 F.3d 1352 (Fed. Cir. 2008)...................................................................................24

*Trauma Serv. Grp. v. United States*,
  104 F.3d 1321 (Fed. Cir. 1997) ..................................................................................15

*Trujillo v. Gen. Elec. Co.*,
  621 F.2d 1084 (10th Cir. 1980) ..................................................................................24

*Vietnam Finewood Co. v. United States*,
  466 F. Supp. 3d 1273 (Ct. Int'l Trade 2020) .............................................................21

*Wanxiang Am. Corp. v. United States*,
  12 F.4th 1369 (Fed. Cir. 2021).....................................................................................21

**Statutes**

19 U.S.C. § 1516a ....................................................................................................14, 17

19 U.S.C. § 1516a(a)(2)(A)(i)(II) ....................................................................................18

19 U.S.C. § 1516a(a)(2)(B)(i) ...............................................................................14, 17–18

19 U.S.C. § 1517 ....................................................................................................14, 17

19 U.S.C. § 1677(35)(C) .............................................................................................22–25

28 U.S.C. § 1581 ...........................................................................................3, 13–14, 17

28 U.S.C. § 1581(c) ................................................................................................. *passim*

28 U.S.C. § 1581(i) ................................................................................................. *passim*

28 U.S.C. § 1581(i)(1)(B) ...............................................................................................3

28 U.S.C. § 1581(i)(1)(D) ...............................................................................................3

**Federal Register Notices**

*Amended Final Determination and Termination of the Investigation of Sales at Less Than*
*Fair Value: Certain Oil Country Tubular Goods from Saudi Arabia,*
    79 Fed. Reg. 49,051 (Dep't Commerce Aug. 19, 2014) ...........................................20

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the*
*Netherlands, Turkey, and the United Kingdom; Institution of Antidumping and*
*Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations,*
    80 Fed. Reg. 50,028 (Int'l Trade Comm'n Aug. 18, 2015) ....................................4–5

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of*
*Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Initiation of*
*Less-Than-Fair-Value Investigations,*
    80 Fed. Reg. 54,261 (Dep't Commerce Sept. 9, 2015) ..............................................5

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the*
*Netherlands, Turkey, and the United Kingdom: Determinations,*
    80 Fed. Reg. 58,787 (Int'l Trade Comm'n Sept. 30, 2015) ......................................5

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the*
*Netherlands, Turkey, and the United Kingdom,*
    81 Fed. Reg. 66,996 (Int'l Trade Comm'n Sept. 29, 2016) ......................................6

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders,*
     81 Fed. Reg. 67,962 (Dep't Commerce Oct. 3, 2016) .................................................................. 7

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Continuation of Antidumping Duty Orders (Australia, Japan, Korea, the Netherlands, Turkey, and United Kingdom) and Countervailing Duty Order (Korea) and Revocation of Antidumping and Countervailing duty Orders (Brazil),*
     87 Fed. Reg. 78,642 (Dep't Commerce Dec. 22, 2022) ............................................................. 13

*Certain Hot-Rolled Steel Flat Products from Brazil, the Republic of Korea, and Turkey: Initiation of Countervailing Duty Investigations,*
     80 Fed. Reg. 54,267 (Dep't Commerce Sept. 9, 2015) .............................................................. 5

*Certain Hot-Rolled Steel Flat Products from the Republic of Turkey: Final Determination of Sales at Less Than Fair Value,*
     81 Fed. Reg. 53,428 (Dep't Commerce Aug. 12, 2016) .............................................................. 6

*Certain Hot-Rolled Steel Flat Products from Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017–18 and 2018–19 Antidumping Duty Administrative Reviews, in Part,*
     85 Fed. Reg. 29,399 (Dep't Commerce May 15, 2020) .............................................................. 8

*Certain Oil Country Tubular Goods from India, Korea, the Philippines, Taiwan, Thailand, Turkey, Ukraine, and Vietnam,*
     79 Fed. Reg. 53,080 (Int'l Trade Comm'n Sept. 5, 2014) ........................................................ 20

*Certain Oil Country Tubular Goods from Saudi Arabia; Termination of Investigation,*
     79 Fed. Reg. 51,192 (Int'l Trade Comm'n Aug. 27, 2014) ....................................................... 20

*Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products from the Republic of Turkey: Final Affirmative Determination,*
     81 Fed. Reg. 53,433 (Dep't Commerce Aug. 12, 2016) .............................................................. 5

*Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year Reviews,*
     86 Fed. Reg. 49,057 (Int'l Trade Comm'n Sept. 1, 2021) ........................................................ 10

*Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom,*
     87 Fed. Reg. 74,167 (Int'l Trade Comm'n Dec. 2, 2022) ......................................................... 13

*Hot-Rolled Steel Flat Products from Turkey; Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731-TA-1296 (Final); Hot-rolled Steel Flat Products from Turkey*,
  87 Fed. Reg. 73,331 (Int'l Trade Comm'n Nov. 29, 2022) ...............................11–12, 19, 24–25

*Hot-Rolled Steel Flat Products from Turkey; Request for Comments Regarding the Institution of a Section 751(b) Review Concerning the Commission's Affirmative Determination*,
  86 Fed. Reg. 68,512 (Int'l Trade Comm'n Dec. 2, 2021)..........................................................10

*Initiation of Five-Year (Sunset) Reviews*,
  86 Fed. Reg. 48,983 (Dep't Commerce Sept. 1, 2021)...............................................................10

**Other Authorities**

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*,
  Inv. Nos. 701-TA-545–547 and 731-TA-1291–1297 (Final), USITC Pub. 4638 (Sept. 2016) .......................................................................................................................6, 23

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*,
  Inv. Nos. 701-TA-545–547 and 731-TA-1291–1297 (Preliminary), USITC Pub. 4570 (Oct. 2015) ................................................................................................................................5

*Certain Oil Country Tubular Goods from India, Korea, the Philippines, Taiwan, Thailand, Turkey, Ukraine, and Vietnam*,
  Inv. Nos. 701-TA-499–500 and 731-TA-1215–1217 and 1219–1223 (Final), USITC Pub. 4489 (Sept. 2014)...................................................................................................20

*Certain Polyester Staple Fiber from Korea and Taiwan*,
  Inv. Nos. 731-TA-825–826 (Review), USITC Pub. 3843 (Mar. 2006).....................................24

*Ferrosilicon from Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela*,
  Inv. Nos. 303-TA-23, 731-TA-566–570 and 731-TA-641 and Inv. Nos. 751-TA-21–27 (Reconsideration), USITC Pub. 3218 (Aug. 1999)...................................................................24

*Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*,
  Inv. Nos. 701-TA-545–546 and 731-TA-1291–1297 (Review) and 731-TA-808 (Fourth Review), USITC Pub. 5380 (Nov. 2022)...................................................................................11

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act,
  H.R. Rep. No. 103-316, vol. 1 (1994)................................................................................22, 25

Uruguay Round Agreements Act,
   Pub. L. No. 103-465, 108 Stat. 4809 (1994)...............................................................................22

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| _____ )<br>EREĞLİ DEMİR VE ÇELİK FABRİKALARI )<br>T.A.Ş, )<br> )<br>    *Plaintiff,* )<br> )<br>  *v.* )<br> )<br>UNITED STATES INTERNATIONAL )<br>TRADE COMMISSION, )<br> )<br>    *Defendant,* )<br> )<br>  *and* )<br> )<br>CLEVELAND-CLIFFS INC., NUCOR )<br>CORPORATION, STEEL DYNAMICS, INC., )<br>and SSAB ENTERPRISES, LLC, )<br> )<br>   *Defendant-Intervenors.* )<br>_____ ) | Court No. 22-00349 |

**DEFENDANT-INTERVENORS' MOTION TO DISMISS FOR**
**LACK OF SUBJECT MATTER JURISDICTION AND FAILURE**
**TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of this Court, Defendant-Intervenors

Cleveland-Cliffs Inc. ("Cleveland Cliffs"), Nucor Corporation ("Nucor"), Steel Dynamics, Inc.

("SDI"), and SSAB Enterprises, LLC ("SSAB") (collectively, "Defendant-Intervenors")

respectfully submit this motion to dismiss the above-captioned action commenced by Plaintiff

Ereğli Demir ve Çelik Fabrikalari T.A.Ş. ("Erdemir") for lack of subject matter jurisdiction and

for failure to state a claim upon which relief can be granted. For the reasons stated below, this

action should be dismissed with prejudice.

I.      **INTRODUCTION AND SUMMARY OF ARGUMENT**

In 2016, an antidumping duty order on imports of hot-rolled steel flat products from the Republic of Turkey ("Turkey") was issued to provide relief to the domestic industry after an investigation in which the U.S. International Trade Commission ("Commission") determined that the domestic industry was materially injured by reason of imports of hot-rolled steel flat products from Turkey found by the U.S. Department of Commerce ("Commerce") to be sold at less than fair value. Four years later, Erdemir requested the Commission to institute a reconsideration proceeding or a changed circumstances review to revisit the negligibility analysis it conducted in the original investigation. Erdemir sought reconsideration under the theory that the Commission's affirmative determination of material injury in the antidumping duty investigation was rendered erroneous after judicial review of Commerce's affirmative final determination of sales at less than fair value ultimately resulted in a zero percent dumping margin for Turkish producer Çolakoğlu Dis Ticaret A.Ş. ("Çolakoğlu") and the exclusion of merchandise produced and exported by Çolakoğlu from the antidumping duty order. According to Erdemir, Çolakoğlu's zero percent dumping margin means that the Commission would have terminated the antidumping duty investigation with respect to imports from Turkey on negligibility grounds and that there would be no antidumping duty order on imports from Turkey.

The Commission denied Erdemir's request for the reasons set forth in a notice published in the *Federal Register*. The Commission also declined to revisit the negligibility analysis as part of the then ongoing sunset review of the antidumping duty order. Erdemir filed this appeal to contest the decision to deny its request to institute a proceeding to reconsider the finding that the

volume of dumped imports from Turkey during the period of investigation was not negligible.[1]

In its amended complaint, Erdemir alleges that the Commission's denial of Erdemir's request to

institute a reconsideration proceeding is agency action unlawfully withheld, arbitrary and

capricious, an abuse of discretion, or otherwise not in accordance with law. Erdemir seeks a

decision from this Court holding that the Commission's denial was unlawful and ordering a

remand with instructions to conduct a reconsideration proceeding. Erdemir's amended complaint

invokes this Court's residual jurisdiction under 28 U.S.C. § 1581(i)(1)(B) and (i)(1)(D) as well

as certain provisions of the Administrative Procedure Act.

     As demonstrated below, this action should be dismissed pursuant to Rule 12(b)(1) for

lack of subject matter jurisdiction. Jurisdiction under 28 U.S.C. § 1581(i) is available only when

jurisdiction under subsections (a) through (h) of 28 U.S.C. § 1581 either are unavailable or are

available but the remedy is manifestly inadequate. Erdemir could have pursued the remedy it

seeks (*i.e.*, reexamination of the Commission's negligibility analysis excluding exports produced

by Çolakoğlu from the total volume of dumped imports from Turkey) by timely appealing the

Commission's affirmative final determination of material injury in the original investigation

under 28 U.S.C. § 1581(c) and staying that appeal pending a final court decision in the parallel

appeal of Commerce's dumping margins. Because Erdemir could have followed the prescribed

jurisdictional path under 28 U.S.C. § 1581(c) and the remedy would not have been manifestly

---

[1] Erdemir separately filed two other actions under 28 U.S.C. § 1581(c) to contest the
Commission's decision not to institute a changed circumstances review and the Commission's
determination in the sunset review that revocation of the antidumping duty order on Turkey
would be likely to lead to continuation or recurrence of material injury within a reasonably
foreseeable time. *See Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*, Court No. 22-
00350 (appeal of the Commission's denial of Erdemir's changed circumstances review request);
*Ereğli Demir ve Çelik Fabrikalari T.A.Ş.*, Court No. 22-00351 (appeal of the Commission's
affirmative final determination with respect to Turkey in the sunset review).

inadequate, jurisdiction under 28 U.S.C. § 1581(i) is precluded. Erdemir's reliance on the Administrative Procedure Act is also misplaced because it is not a jurisdictional statute and cannot confer this Court with subject matter jurisdiction over this action.

Alternatively, even if the Court concludes that jurisdiction exists under 28 U.S.C. § 1581(i), Erdemir's complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Commission's negligibility analysis in the original investigation was in accordance with law because the Commission followed the statute's instructions and relied on the most recent dumping margins published in Commerce's final determination. The Commission's finding of non-negligibility (and its material injury determination) became final when no party sought judicial review under 28 U.S.C. § 1581(c) within the statutorily prescribed period. Even though four years later Çolakoğlu was excluded from the antidumping duty order as a result of litigation, the law is clear that under these factual circumstances the Commission did not have the authority to reconsider its original material injury determination, including its finding that the volume of dumped imports from Turkey was not negligible. Therefore, even when construing the factual allegations in the amended complaint in a light most favorable to the plaintiff, Erdemir has failed to raise a plausible claim of entitlement to relief from the Commission's decision not to institute a reconsideration proceeding. As a result, this action should be dismissed.

## II.   **BACKGROUND**

### A.   **The Original Investigations of Imports of Hot-Rolled Steel Flat Products from Turkey**

In 2015, Commerce initiated and the Commission instituted investigations in response to petitions filed on behalf of the domestic industry requesting the imposition of antidumping and countervailing duties on imports of hot-rolled steel flat products from various countries

4

(including Turkey). *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 80 Fed. Reg. 50,028 (Int'l Trade Comm'n Aug. 18, 2015); *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Initiation of Less-Than-Fair-Value Investigations*, 80 Fed. Reg. 54,261 (Dep't Commerce Sept. 9, 2015); *Certain Hot-Rolled Steel Flat Products from Brazil, the Republic of Korea, and Turkey: Initiation of Countervailing Duty Investigations*, 80 Fed. Reg. 54,267 (Dep't Commerce Sept. 9, 2015). The Commission made an affirmative preliminary determination that there was a reasonable indication that an industry in the United States was materially injured by reason of imports of hot-rolled steel flat products from the subject countries. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom: Determinations*, 80 Fed. Reg. 58,787 (Int'l Trade Comm'n Sept. 30, 2015). As part of that determination, the Commission preliminarily found that the volume of imports of hot-rolled steel flat products from Turkey during the period of investigation was not negligible. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545–547 and 731-TA-1291–1297 (Preliminary), USITC Pub. 4570 (Oct. 2015) at 14.

On August 12, 2016, Commerce published its affirmative final countervailing duty determination for Turkey. *See Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products from the Republic of Turkey: Final Affirmative Determination*, 81 Fed. Reg. 53,433 (Dep't Commerce Aug. 12, 2016). While Commerce found that Çolakoğlu received a *de minimis* level of countervailable subsidies, it made an affirmative determination because it

calculated a 6.01 percent net countervailable subsidy rate for Erdemir. *Id.* at 53,434. All other Turkish producers and exporters were assigned Erdemir's 6.01 percent countervailable subsidy rate. *Id.* On the same date, Commerce published its affirmative final determination of sales at less than fair value for Turkey with final dumping margins of 7.15 percent for Çolakoğlu, 3.66 percent for Erdemir, and 6.67 percent for all other producers or exporters. *See Certain Hot-Rolled Steel Flat Products from the Republic of Turkey: Final Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 53,428, 53,429 (Dep't Commerce Aug. 12, 2016) ("*Final Determination of Sales at Less Than Fair Value*").

On September 29, 2016, the Commission published its affirmative final determination that an industry in the United States was materially injured by reason of imports of hot-rolled steel flat products from the subject countries. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66,996 (Int'l Trade Comm'n Sept. 29, 2016). With respect to Turkey, the Commission explained that "imports from Turkey that are subject to the antidumping duty investigation are different from those subject to the countervailing duty investigation" because Çolakoğlu's final net countervailable subsidy rate was *de minimis* and must therefore be excluded from the Commission's analysis for the countervailing duty investigation. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545–547 and 731-TA-1291–1297 (Final), USITC Pub. 4638 (Sept. 2016) ("USITC Pub. 4638") at 13. Although the volume of imports subject to the antidumping duty investigation exceeded the negligibility threshold, the volume of imports subject to the countervailing duty investigation excluded exports produced by Çolakoğlu and fell below the negligibility threshold. *Id.* The Commission additionally found that there was not a potential that

unfairly subsidized imports from Turkey would imminently exceed the negligibility threshold. *Id.* at 13–14. Consequently, the Commission's affirmative final determination of material injury applied only to dumped imports from Turkey, and the companion countervailing duty investigation was terminated because of the negligible volume of unfairly subsidized imports from Turkey.

Because both Commerce and the Commission made affirmative final determinations in the antidumping duty investigation, Commerce published the antidumping duty order on imports of hot-rolled steel flat products from Turkey on October 3, 2016. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81 Fed. Reg. 67,962 (Dep't Commerce Oct. 3, 2016). After Commerce corrected certain ministerial errors, the revised final dumping margins were 6.77 percent for Çolakoğlu, 4.15 percent for Erdemir, and 6.41 percent for all other producers or exporters. *Id.* at 67,965.

   **B.    Çolakoğlu and Erdemir's Appeal of Commerce's Final Determination of Sales at Less Than Fair Value**

Following publication of the antidumping duty order, Çolakoğlu and Erdemir appealed Commerce's final determination that imports of hot-rolled steel flat products from Turkey were sold in the United States at less than fair value during the period of investigation. Çolakoğlu and Erdemir successfully contested certain aspects of the final dumping margin calculations, and this Court entered judgment sustaining Commerce's third remand redetermination on April 13, 2020. *See Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*, 435 F. Supp. 3d 1378 (Ct. Int'l Trade 2020); *see also Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*, 415 F. Supp. 3d

1216 (Ct. Int'l Trade 2019); *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*, 357 F.

Supp. 3d 1325 (Ct. Int'l Trade 2018); *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*,

308 F. Supp. 3d 1297 (Ct. Int'l Trade 2018).

On May 15, 2020, Commerce published an amended final determination to comply with

the Court's final judgment, and the recalculated weighted-average dumping margins were zero

percent for Çolakoğlu, 2.73 percent for Erdemir, and 2.73 percent for all other producers or

exporters. *See Certain Hot-Rolled Steel Flat Products from Turkey: Notice of Court Decision*

*Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value*

*Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order;*

*Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017–18*

*and 2018–19 Antidumping Duty Administrative Reviews, in Part*, 85 Fed. Reg. 29,399, 29,400

(Dep't Commerce May 15, 2020). Because Çolakoğlu's dumping margin was reduced to zero as

a result of the litigation, the antidumping duty order was partially revoked to exclude

merchandise produced and exported by Çolakoğlu. *Id.* The Government and domestic interested

parties each appealed the Court's final judgment to the U.S. Court of Appeals for the Federal

Circuit ("Federal Circuit"), but the appeals were voluntarily dismissed in December 2020 and

June 2021. *See* Notice of Appeal, *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*, Ct.

No. 16-00218, ECF No. 156 (Ct. Int'l Trade June 10, 2020); Notice of Appeal, *Ereğli Demir ve*

*Çelik Fabrikalari T.A.Ş. v. United States*, Ct. No. 16-00218, ECF No. 157 (Ct. Int'l Trade June

12, 2020); Mandate Order of Dismissal, *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United*

*States*, Appeal No. 20-1999, ECF No. 38 (Fed. Circuit Dec. 18, 2020); Mandate Order of

Dismissal, *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*, Appeal No. 2020-2003,

ECF No. 36 (Fed. Cir. June 4, 2021), docketed in Ct. No. 16-00218, ECF No. 161 (Ct. Int'l

Trade June 4, 2021).

    While Erdemir and Çolakoğlu were successful in their appeal of Commerce's final

determination of sales at less than fair value, none of the Turkish respondents sought judicial

review of the Commission's final material injury determination.

### C.    The Commission's Denial of Erdemir's Request to Institute a Proceeding to Reconsider the Final Determination of Material Injury

    After Commerce excluded Çolakoğlu from the antidumping duty order on hot-rolled steel

from Turkey, Erdemir requested reconsideration of the Commission's original material injury

determination. In a letter dated May 18, 2020, Erdemir requested that the Commission reopen the

original investigation and reconsider its affirmative material injury determination in light of

Çolakoğlu's exclusion from the antidumping duty order. *See* Letter from Erdemir to the

Commission, Request for Reconsideration, P.R. 1 (May 18, 2020).[2] Erdemir also stated that the

Commission could consider Çolakoğlu's exclusion from the antidumping duty order as a

changed circumstance and treat Erdemir's letter as a request for a changed circumstances review.

*Id.* at 6. In a second letter dated July 22, 2020, Erdemir renewed its request for reconsideration

and informed the Commission that appeals of the amended dumping margins were docketed at

the Federal Circuit. *See* Letter from Erdemir to the Commission, Letter in Support of Request for

Reconsideration, P.R. 2 (July 22, 2020).[3] Erdemir argued that the Commission should institute a

---

[2] Erdemir's amended complaint references and, therefore, incorporates by reference its first request for reconsideration in May 2020, though the amended complaint incorrectly states that the request was made in May 2021. *See* Erdemir's Am. Compl. ¶21, ECF No. 14 (Jan. 24, 2023).

[3] Erdemir's amended complaint also references and, therefore, incorporates by reference its renewed request for reconsideration in July 2020, though the amended complaint incorrectly states that it was made in July 2021. *See* Erdemir's Am. Compl. ¶23, ECF No. 14 (Jan. 24, 2023).

reconsideration proceeding even though appeals were pending at the Federal Circuit at the time. *Id.* at 2–3. The Federal Circuit appeals relating to Commerce's antidumping duty investigation were not finally resolved until June 4, 2021.

On September 1, 2021, Commerce initiated and the Commission instituted the first sunset review of the antidumping and countervailing duty orders on hot-rolled steel flat products from multiple countries (including the antidumping duty order on imports from Turkey). *See Initiation of Five-Year (Sunset) Reviews*, 86 Fed. Reg. 48,983 (Dep't Commerce Sept. 1, 2021); *Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year Reviews*, 86 Fed. Reg. 49,057 (Int'l Trade Comm'n Sept. 1, 2021). Shortly thereafter, on September 10, 2021, Erdemir formally requested that the Commission institute a changed circumstances review to revisit its affirmative final determination of material injury in the original investigation based on its claim that "Commerce's recalculation of Çolakoğlu's antidumping duty margin to zero percent and its exclusion from the antidumping duty order as a result of judicial review constitute significantly changed circumstances from those in existence at the time of the original investigation because the facts underlying the Commission's negligibility determination completely changed." *Hot-Rolled Steel Flat Products from Turkey; Request for Comments Regarding the Institution of a Section 751(b) Review Concerning the Commission's Affirmative Determination*, 86 Fed. Reg. 68,512, 68,513 (Int'l Trade Comm'n Dec. 2, 2021). In accordance with its regulations at 19 C.F.R. § 207.45(b), the Commission published a notice in the *Federal Register* requesting comments on "whether the alleged changed circumstances … are sufficient to warrant institution of a review" and "the degree to which any changed circumstances proceeding concerning hot-

rolled steel flat products from Turkey can be conducted in conjunction with the five-year review of the antidumping duty order on the same subject merchandise ….." *Id.*

 In response to its request for comments, the Commission received a joint submission from Cleveland-Cliffs, Nucor, SDI, SSAB, and United States Steel Corporation that opposed instituting a changed circumstances review. *See Hot-Rolled Steel Flat Products from Turkey; Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731-TA-1296 (Final); Hot-rolled Steel Flat Products from Turkey*, 87 Fed. Reg. 73,331 (Int'l Trade Comm'n Nov. 29, 2022) ("*Denial of Request for CCR and Reconsideration Proceeding*"). The Commission also received separate submissions from the Turkish government and Erdemir in support of instituting a changed circumstances review. *Id.* The Commission denied Erdemir's request for a changed circumstances review because such a review "would be duplicative of the full five-year review" and "does not provide an opportunity for the Commission to reconsider and amend its original injury determination." *Id.* at 73,332.

 The Commission also noted that Erdemir's comments submitted in January 2022 in favor of instituting a changed circumstances review included an alternative request that the Commission institute a reconsideration proceeding. *Id.* In addition, Erdemir reiterated its request for a reconsideration proceeding within the context of the then ongoing sunset review in written submissions and at the public hearing held on September 15, 2022. *See Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545–546 and 731-TA-1291–1297 (Review) and 731-TA-808 (Fourth Review), USITC Pub. 5380 (Nov. 2022) at 26 n.132 and 48 n.298. The Commission considered Erdemir's alternative request and decided not to reconsider its negligibility analysis and finding of non-

negligibility with respect to the original antidumping duty investigation of hot-rolled steel flat products from Turkey. *See Denial of Request for CCR and Reconsideration Proceeding*, 87 Fed. Reg. 73,332–73,333.

In denying the request for reconsideration, the Commission explained that its reconsideration authority is reserved for "extraordinary circumstances" when, for example, reconsideration is necessary to protect the integrity of its proceedings from fraud. *Id.* at 73,332. Here, the Commission found "no evidence of fraud or other facts that suggest extraordinary circumstances" and did not find that "the recalculation of the dumping margin by Commerce with respect to hot-rolled steel flat products from Turkey warrants reconsideration …." *Id.* To further support its denial of Erdemir's request, the Commission explicitly referenced legislative history "in which Congress specifically contemplated subsequent changes to the antidumping duty margins and instructed that such changes would not be a basis to reconsider the Commission's impact analysis." *Id.* The Commission also made it clear that appealing the Commission's affirmative material injury determination in the original investigation was the "path for Erdemir to avail itself to preserve its rights to obtain a reexamination of the Commission's original determination in light of the subsequent successful appeal of Commerce's final original determination that resulted in a *de minimis* dumping margin for Colakoglu and exclusion of imports from Colakoglu from the scope of Commerce's final affirmative antidumping duty determination." *Id.* at 73,333. But Erdemir did not appeal the Commission's affirmative final material injury determination, even though "{t}he potential impact on Erdemir at the time that Erdemir and Çolakoğlu appealed Commerce's final antidumping duty determination was known to Erdemir at that time, and in fact, Erdemir joined Cola{k}oglu in appealing Commerce's original determination." *Id.* Therefore, the Commission decided that

"{t}he interests of the finality of the agency's decision are paramount under the circumstances presented," and it denied Erdemir's request for reconsideration. *Id.*

On December 2, 2022, after denying Erdemir's request for reconsideration, the Commission completed its first sunset review and determined that revocation of the antidumping duty order on hot-rolled steel flat products from Turkey would be likely to lead to continuation or recurrence of material injury. *See Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, 87 Fed. Reg. 74,167 (Int'l Trade Comm'n Dec. 2, 2022). Thereafter, Commerce published a notice of continuation of the antidumping duty order. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Continuation of Antidumping Duty Orders (Australia, Japan, Korea, the Netherlands, Turkey, and United Kingdom) and Countervailing Duty Order (Korea) and Revocation of Antidumping and Countervailing Duty Orders (Brazil)*, 87 Fed. Reg. 78,642 (Dep't Commerce Dec. 22, 2022).

## III.   ARGUMENT

### A.   Standard of Review

#### 1.   Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

This Court, like all federal courts, is one of limited jurisdiction and is "presumed to be 'without jurisdiction' unless 'the contrary appears affirmatively from the record.'" *DaimlerChrysler Corp. v. United States*, 442 F.3d 1313, 1318 (Fed. Cir. 2006) (quoting *King Iron Bridge & Mfg. Co. v. Otoe Cty.*, 120 U.S. 225, 226 (1887)). In particular, this Court is empowered to hear civil cases brought against the United States only pursuant to the specific grants of exclusive jurisdiction enumerated under 28 U.S.C. § 1581. Relevant to this case are subsections (c) and (i) under 28 U.S.C. § 1581.

Section 1581(c) grants the Court jurisdiction to review antidumping and countervailing duty determinations delineated in 19 U.S.C. §§ 1516a and 1517, including final determinations by Commerce and the Commission in antidumping duty investigations. *See* 19 U.S.C. § 1516a(a)(2)(B)(i). Section 1581(i) grants the Court residual jurisdiction and "may not be invoked when jurisdiction under another subsection of § 1581 is or *could have been available*, unless the remedy provided under that other subsection would be manifestly inadequate." *Erwin Hymer Grp. N. Am. v. United States*, 930 F.3d 1370, 1374–75 (Fed. Cir. 2019) (emphasis in original; internal quotations and citation omitted). The Federal Circuit has made clear that "mere allegations of financial harm do not render a remedy established by Congress manifestly inadequate." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193 (Fed. Cir. 2018) (citation omitted). Rather, the predicate steps "must be an 'exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain.'" *Id.* at 1193–94 (quoting *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1295 (Fed. Cir. 2008)).

The party invoking the Court's jurisdiction bears the burden of establishing subject matter jurisdiction. *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006). Where, as here, the plaintiff asserts jurisdiction under 28 U.S.C. § 1581(i), it "bears the burden of showing that another subsection is either unavailable or manifestly inadequate." *Erwin Hymer*, 930 F.3d at 1375 (citation omitted). The Court's jurisdiction may not be expanded by creative pleading. *Sunpreme Inc.*, 892 F.3d at 1193 (quoting *Norsk Hydro*, 472 F.3d at 1355). Instead, the Court must "look to the true nature of the action … in determining jurisdiction of the appeal." *Id.* The scope of jurisdiction under 28 U.S.C. § 1581(i) is "strictly limited" to prevent plaintiffs from using the Court's residual jurisdiction as a vehicle to circumvent the other specific

14

grants of jurisdiction with their own statutorily prescribed paths that litigants must follow when seeking judicial review. *Erwin Hymer*, 930 F.3d at 1374. When jurisdiction is challenged pursuant to Rule 12(b)(1), "only uncontroverted factual allegations {in the complaint} are accepted as true" and "a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings …." *Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012) (cleaned up).

### 2. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

A motion to dismiss an action pursuant to Rule 12(b)(6) is "granted if the court, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, concludes that those allegations 'could not raise a claim of entitlement to relief.'" *Arunachalam v. Int'l Business Machines Corp.*, 759 Fed. Appx. 927, 931 (Fed. Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). For a complaint to survive a motion to dismiss, it "must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). A claim has facial plausibility when it "raise[s] a right to relief above a speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted). Dismissal is appropriate "when it is beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Ponder v. United States*, 117 F.3d 549, 552 (Fed. Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) and citing *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997)).

Although a complaint need not plead detailed facts, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545;

*see also Iqbal*, 556 U.S. at 662 ("[T]he pleading standard Rule 8 … demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). The complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Determining whether the factual pleading standard has been met is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court considers the allegations in the complaint as well as documents "'incorporated by reference or integral to the claim, items subject to judicial notice, {and} matters of public record.'" *Confederación Asociaciones Agricolas del Estado de Sinaloa, A.C. v. United States*, 459 F. Supp. 3d 1354, 1361 (Ct. Int'l Trade 2020) (quoting *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014)). The Court "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (cleaned up).

### B.   This Court Does Not Possess Jurisdiction Under 28 U.S.C. § 1581(i) Because Jurisdiction Under 28 U.S.C. § 1581(c) Could Have Been Available

Erdemir seeks judicial review of the Commission's denial of its request to institute a reconsideration proceeding in which the Commission would revisit certain aspects of the original material injury determination in light of Çolakoğlu's zero percent dumping margin and exclusion from the antidumping duty order. *See* Erdemir's Am. Compl. ¶1, ECF No. 14 (Jan. 24, 2023). It alleges that "{t}he Commission has the authority to reconsider and correct errors in the negligibility determination in the original investigation" and that the Commission "wrongfully declined to reconsider the negligibility decision of its original investigation in light of the retroactive exclusion of Çolakoğlu from the order." *Id.* ¶38. According to Erdemir, "but for

Commerce's initial unlawful decisions, the volume of subject imports considered by the Commission would have been below the negligibility threshold for the AD injury investigation, just as they had been for the CVD injury investigation" and "there would be no AD order on hot-rolled steel flat products from Turkey." *Id.* ¶19. Erdemir asserts that this Court possesses jurisdiction under 28 U.S.C. § 1581(i)(1)(B) and (i)(1)(D) as well as certain provisions of the Administrative Procedure Act. As demonstrated below, Erdemir cannot resort to jurisdiction under 28 U.S.C. § 1581(i) because an adequate remedy could have been available under 28 U.S.C. § 1581(c). In addition, the Administrative Procedure Act does not otherwise confer this Court with jurisdiction.

It is well-settled that, "to prevent circumvention of the administrative processes crafted by Congress, jurisdiction under subsection 1581(i) may not be invoked if jurisdiction under another subsection of 1581 is or could have been available, unless the other subsection is shown to be manifestly inadequate." *Hartford Fire Ins. Co.*, 544 F.3d at 1292 (citing *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006)). Erdemir has not met its burden of proving that the relief under another subsection of 28 U.S.C. § 1581 is not or could not have been available. Nor has Erdemir demonstrated that the remedy available under another subsection of 28 U.S.C. § 1581 is manifestly inadequate. As stated above, 28 U.S.C. § 1581(c) grants the Court jurisdiction to review antidumping and countervailing duty determinations delineated in 19 U.S.C. §§ 1516a and 1517, including the Commission's affirmative final determination in an antidumping duty investigation. *See* 19 U.S.C. § 1516a(a)(2)(B)(i). Erdemir alleges that "{t}he decision by the Commission not to conduct a reconsideration proceeding is not listed under 19 U.S.C. §§ 1516a or 1517, and thus jurisdiction here does not arise under 28 U.S.C. § 1581(c)." Erdemir's Am. Compl. ¶3. Erdemir's reading of the jurisdictional statute is

wrong and would inappropriately expand this Court's residual jurisdiction under 28 U.S.C. § 1581(i).

The Court must "look to the true nature of the action" to determine whether jurisdiction exists. *Sunpreme Inc.*, 892 F.3d at 1193 (quoting *Norsk Hydro*, 472 F.3d at 1355). Throughout its amended complaint, Erdemir alleges that, in hindsight, the antidumping duty order should be revoked *ab initio* because the Commission should have excluded exports produced by Çolakoğlu as part of the volume of dumped imports from Turkey and the antidumping duty investigation should have been terminated on negligibility grounds. *See, e.g.*, Erdemir's Am. Compl. at 1–3 and ¶¶ 19–20. The true nature of Erdemir's action is a challenge to the Commission's negligibility analysis and finding of non-negligibility in the original antidumping duty investigation of hot-rolled steel flat products from Turkey.

All interested parties that participated in the original investigations had the opportunity to commence an action under 28 U.S.C. § 1581(c) and seek judicial review of the Commission's affirmative final material injury determination and any factual findings or legal conclusions upon which that determination was based. *See* 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i). This means that Erdemir could have pursued the relief it seeks in this action by timely appealing the Commission's original material injury determination under 28 U.S.C. § 1581(c). That appeal could then have been stayed pending the outcome of Erdemir and Çolakoğlu's appeal of Commerce's final dumping margins. Following the appeal of Commerce's final dumping margins, the Court would then have had the ability to treat Çolakoğlu's zero percent dumping margin and exclusion from the antidumping duty order resulting from that appeal as an intervening event and remand the matter to the Commission for reconsideration. Filing a parallel appeal of the Commission's material injury determination would have prevented that

determination and the finding of non-negligibility from becoming final. Even with the

knowledge that a successful appeal of Commerce's final dumping margins could result in a

negligible volume of dumped imports, none of the Turkish respondents appealed the

Commission's final material injury determination to preserve any claim of relief from the

Commission's negligibility analysis and finding of non-negligibility. Consequently, that

determination became final and conclusive on all parties over six years ago when the time to file

an appeal expired (*i.e.*, thirty days after the publication date of the antidumping duty order).

In denying Erdemir's request for reconsideration, the Commission observed that Erdemir

should have followed the statutorily prescribed path under 28 U.S.C. § 1581(c) and stated the

following:

> There was a path for Erdemir to avail itself to preserve its rights to obtain a
> reexamination of the Commission's original determination in light of the
> subsequent successful appeal of Commerce's final original determination that
> resulted in a de minimis dumping margin for Colakoglu and exclusion of imports
> from Colakoglu from the scope of Commerce's final affirmative antidumping
> duty determination. The potential impact on Erdemir at the time that Erdemir and
> Colakoglu appealed Commerce's final antidumping duty determination was
> known to Erdemir at that time, and in fact, Erdemir joined Cola{k}oglu in
> appealing Commerce's original determination. Erdemir did not appeal the
> Commission's final affirmative material injury determination which would have
> provided it with the opportunity to preserve its rights for further reconsideration
> of the merits based on the outcome of Commerce's appeal…. The interests of the
> finality of the agency's decision are paramount under the circumstances presented
> and, absent extraordinary circumstances, we decline the request to revisit the final
> original determination.

*Denial of Request for CCR and Reconsideration Proceeding*, 87 Fed. Reg. at 73,333. As noted

by the Commission, Erdemir was required to appeal the Commission's final material injury

determination to preserve the possibility for reconsideration in a remand proceeding based on the

outcome in the separate appeal of Commerce's final dumping determination.

Indeed, interested parties have followed the statutorily prescribed path described above in other cases with similar facts. For example, in the 2013–2014 antidumping investigations of oil country tubular goods, Commerce issued a negative final dumping determination for Saudi Arabia that resulted in the Commission terminating its investigation of Saudi Arabia and, in turn, finding that imports from the Philippines and Thailand were negligible. *See Amended Final Determination and Termination of the Investigation of Sales at Less Than Fair Value: Certain Oil Country Tubular Goods from Saudi Arabia*, 79 Fed. Reg. 49,051 (Dep't Commerce Aug. 19, 2014); *Certain Oil Country Tubular Goods from Saudi Arabia; Termination of Investigation*, 79 Fed. Reg. 51,192 (Int'l Trade Comm'n Aug. 27, 2014); *Certain Oil Country Tubular Goods from India, Korea, the Philippines, Taiwan, Thailand, Turkey, Ukraine, and Vietnam*, 79 Fed. Reg. 53,080 (Int'l Trade Comm'n Sept. 5, 2014); *Certain Oil Country Tubular Goods from India, Korea, the Philippines, Taiwan, Thailand, Turkey, Ukraine, and Vietnam*, Inv. Nos. 701-TA-499–500 and 731-TA-1215–1217 and 1219–1223 (Final), USITC Pub. 4489 (Sept. 2014) at 5, 15–19. In that case, domestic producers followed the statutorily prescribed path and brought actions under 28 U.S.C. § 1581(c) to challenge the determinations by both Commerce and the Commission, including the finding of negligibility, and then moved – with the consent of the Commission – to stay the appeals of the Commission determinations pending the Commerce appeal. The Court granted the motions to stay. *See United States Steel Corp. v. United States*, Consol. Ct. No. 14-00232, ECF Nos. 25 and 26 (motion for stay and order granting stay in appeal of the Commission's termination of the Saudi Arabia investigation); *United States Steel Corp. v. United States*, Consol. Ct. No. 14-00237, ECF Nos. 35 and 36 (motion for stay and order granting stay in appeal of the Commission's final negative injury determination for the Philippines and Thailand); *see also Boomerang Tube LLC v. United States*, Ct. No. 14-00196

(appeal of Commerce's final negative dumping determination for Saudi Arabia); Domestic

Interested Parties' Post-Hearing Brief, P.R. 22 (Sept. 27, 2022) at 8 and Exhibits 22–25

(discussing stay of litigation concerning the Commission's determination in oil country tubular

goods case). This example shows that adequate relief under 28 U.S.C. § 1581(c) could have been

available for Erdemir, but it failed to pursue that relief by following the path prescribed by

Congress. Erdemir "may not simply 'elect to proceed under [§] 1581(i) without having first

availed himself of the remedy provided by [§] 1581(c).'" *Wanxiang Am. Corp. v. United States*,

12 F.4th 1369, 1374 (Fed. Cir. 2021) (citing *Sunpreme Inc.*, 892 F.3d at 1193, which quotes *JCM,*

*Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000)).

  Finally, Erdemir alleges that "{t}his Court has subject-matter jurisdiction over this matter

under … the Administrative Procedure Act …." Erdemir's Am. Compl. ¶3. However, binding

precedent has established the fundamental principle that "the {Administrative Procedure Act} is

not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions."

*Califano v. Sanders*, 430 U.S. 99, 105 (1977); *see also Am. Air Parcel Forwarding Co. v. United*

*States*, 718 F.2d 1546, 1552 (Fed. Cir. 1983) (providing that the Administrative Procedure Act

"does not give an independent basis for finding jurisdiction in the Court of International Trade").

The Court must have its own independent statutory basis for jurisdiction. *See Shinyei Corp. of*

*Am. v. United States*, 355 F.3d 1297, 1304 (Fed. Cir. 2004); *see also Vietnam Finewood Co. v.*

*United States*, 466 F. Supp. 3d 1273, 1284 n.13 (Ct. Int'l Trade 2020). Erdemir's reliance on the

Administrative Procedure Act is misplaced as it is not a jurisdictional statute and cannot confer

the Court with subject matter jurisdiction over this action.

  In sum, Erdemir has not properly invoked this Court's residual jurisdiction under 28

U.S.C. § 1581(i) because jurisdiction under § 1581(c) could have been available and the remedy

would not have been manifestly inadequate. This action should therefore be dismissed for lack of subject matter jurisdiction.

### C.      Erdemir's Amended Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

Alternatively, even if the Court finds that it has jurisdiction over this action, Erdemir's amended complaint should be dismissed because it fails to state a claim upon which relief can be granted. Erdemir alleges that the Commission committed an error in the original investigation when it found that dumped imports from Turkey were not negligible because, nearly four years later, Commerce amended its final determination as a result of litigation and excluded Çolakoğlu from the antidumping duty order. *See* Erdemir's Am. Compl. at 1–3 and ¶¶14–15, 17–20. The sole count in the amended complaint alleges that "{t}he Commission has the authority to reconsider and correct errors in the {antidumping duty} negligibility determination in the original investigation" and that the Commission "wrongfully declined to reconsider the negligibility decision of its original investigation in light of the retroactive exclusion of Çolakoğlu from the {antidumping duty} order." *Id.* ¶38. Erdemir claims that the Commission's decision not to institute a reconsideration proceeding is agency action unlawfully withheld, arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. *Id.* Even when construing the factual allegations in the amended complaint in a light most favorable to the plaintiff, Erdemir has failed to raise a plausible claim of entitlement to relief.

Despite Erdemir's allegations to the contrary, Çolakoğlu's exclusion from the antidumping duty order did not render the Commission's negligibility analysis and finding of non-negligibility in the original investigation erroneous. As part of the Uruguay Round Agreements Act ("URAA"), Congress amended the antidumping duty law by adding 19 U.S.C. § 1677(35)(C). *See* Uruguay Round Agreements Act, Pub. L. No. 103-465 § 229, 108 Stat. 4809

(1994); Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, vol. 1, at 850–851, *reprinted in* 1994 U.S.C.C.A.N. 4040, 4184 ("SAA"). Section 1677(35)(C) unequivocally states that, in the final determination of an antidumping duty investigation, "{t}he magnitude of the margin of dumping used by the Commission shall be … the dumping margin or margins most recently published by {Commerce} prior to the closing of the Commission's administrative record{.}"

In its final determination, Commerce found that imports of hot-rolled steel flat products from Turkey were sold in the United States at less than fair value, and all of the published dumping margins were above *de minimis* (including the dumping margin for Çolakoğlu). *Final Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. at 53,429. The Commission then followed the statute's instructions in 19 U.S.C. § 1677(35)(C). Pursuant to Section 1677(35)(C), it relied on the most recent dumping margins published in Commerce's final determination and included all imports of hot-rolled steel flat products from Turkey in the negligibility analysis in the antidumping duty investigation. *See* USITC Pub. 4638 at 13. The plain language of the statute directed the Commission to consider the total volume of imports from Turkey in its negligibility analysis. And the Commission's finding that the volume of dumped imports from Turkey was not negligible became final and conclusive when no interested party sought judicial review of the material injury determination under 28 U.S.C. § 1581(c) within the statutorily prescribed time period (*i.e.*, thirty days after the publication date of the antidumping duty order). Çolakoğlu's exclusion from the antidumping duty order occurred four years *after* the Commission's investigatory record closed and thus does not have any bearing on the negligibility analysis that the Commission undertook during the original investigation. The factual allegations in the amended complaint do not plausibly show any error in the original

investigation's negligibility analysis or that any alleged error can be attributed to wrongful agency action.

Furthermore, Erdemir's allegation that "{t}he Commission has the authority to reconsider and correct errors in the {antidumping duty} negligibility determination in the original investigation" (Erdemir's Am. Compl. ¶38) is belied by language in the statute and the legislative history that preclude the Commission from reconsidering its original material injury determination under the factual circumstances presented in this case. As a general matter, the courts have acknowledged that agencies have reconsideration authority because "{t}he power to reconsider is inherent in the power to decide." *Tokyo Kikai Seisakusho Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008) (citing *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980)). The Commission has rarely exercised its reconsideration authority, however. As the Commission has stated, "{i}n view of the presumption of finality and correctness that underlies past action by the Commission, the Commission has chosen to exercise its authority to reconsider only when 'extraordinary circumstances' are present," such as fraud or other facts that strike at the heart of the integrity of the proceeding. *Denial of Request for CCR and Reconsideration Proceeding*, 87 Fed. Reg. at 73,332.[4]

And even this reconsideration authority is not without limits. The Federal Circuit has made clear that "an agency obviously lacks power to reconsider where a statute forbids the

---

[4] *Compare Ferrosilicon from Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela*, Inv. Nos. 303-TA-23, 731-TA-566–570 and 731-TA-641 and Inv. Nos. 751-TA-21–27 (Reconsideration), USITC Pub. 3218 (Aug. 1999) at 6–8 (concluding that criminal convictions for price fixing constituted the type of "extraordinary circumstances" that "strike at the heart of the integrity of the administrative process" and warranted reconsideration) *with Certain Polyester Staple Fiber from Korea and Taiwan*, Inv. Nos. 731-TA-825–826 (Review), USITC Pub. 3843 (Mar. 2006) at 16–23 (concluding that criminal convictions for price fixing did not warrant institution of reconsideration proceeding because the criminal conduct did not undermine the integrity of the original investigations).

exercise of power." *Tokyo Kikai Seisakusho Ltd.*, 529 F.3d at 1361. As explained above, the URAA added 19 U.S.C. § 1677(35)(C) to the antidumping duty law to ensure that, in the final determination of an antidumping duty investigation, "{t}he magnitude of the margin of dumping used by the Commission shall be … the dumping margin or margins most recently published by {Commerce} prior to the closing of the Commission's administrative record{.}" In the SAA, which is the authoritative interpretation of the antidumping duty law, Congress stated in no uncertain terms that the purpose of adding 19 U.S.C. § 1677(35)(C) was to "preclude{} challenges to a Commission determination on the basis that Commerce later modifies the original dumping margin." SAA at 851, *reprinted in* 1994 U.S.C.C.A.N. at 4184. Congress went on to state the following to explain the intent behind the new statutory provision:

> Changes in the original margin could occur due to further proceedings in staggered investigations, corrections of ministerial errors, reconsideration of a determination, or judicial remand. Absent this provision, Commission determinations could be subject to repeated requests for reconsideration or judicial remands. The finality of injury determinations would be seriously compromised if the Commission were required to amend or revisit its determination each time the administrating authority modified its dumping margin.

SAA at 851, *reprinted in* 1994 U.S.C.C.A.N. at 4184.

The law could not be clearer. When Congress added 19 U.S.C. § 1677(35)(C), it directed the Commission to use the most recently published dumping margins prior to the closing of the Commission's investigatory record and stated that this provision was intended to preclude the Commission from reconsidering its determination whenever Commerce modifies the original dumping margins. Revised dumping margins should not disturb the finality of the Commission's original material injury determination. The Commission referenced the language from the SAA in its denial of Erdemir's reconsideration request, stating that "Congress specifically contemplated subsequent changes to the antidumping duty margins and instructed that such

changes would not be a basis to reconsider the Commission's impact analysis." *Denial of Request for CCR and Reconsideration Proceeding*, 87 Fed. Reg. at 73,332. The bottom line is that the Commission lacked the authority to grant Erdemir's request and reconsider its original material injury determination with respect to imports of hot-rolled steel flat products from Turkey in light of Çolakoğlu's revised dumping margin and exclusion from the antidumping duty order in 2020. Because the Commission lacked the authority to institute a reconsideration proceeding, Erdemir cannot raise a claim of entitlement to relief.

In sum, Erdemir's amended complaint fails to state a claim against the Commission that plausibly shows any agency wrongdoing or entitlement to the requested relief, *i.e.*, institution of a reconsideration proceeding to revisit the negligibility analysis from the original investigation. The Commission did not err in the original investigation when it found that dumped imports from Turkey were not negligible, that finding became final when no Turkish producer or exporter appealed the Commission's final determination, and the Commission is statutorily precluded from instituting a reconsideration proceeding under these factual circumstances. The Court should therefore dismiss this action for failure to state a claim upon which relief can be granted.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant-Intervenors respectfully request that the Court dismiss this action pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction or, alternatively, Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

\*       \*       \*

Respectfully submitted,

/s/ Jeffrey D. Gerrish                    /s/ Alan H. Price                    /s/ Stephen P. Vaughn
Roger B. Schagrin, Esq.         Alan H. Price, Esq.                  Stephen P. Vaughn, Esq.
Jeffrey D. Gerrish, Esq.          Christopher B. Weld, Esq.      Neal Reynolds, Esq.
Saad Y. Chalchal, Esq.*          Theodore P. Brackemyre, Esq.      Barbara Medrado, Esq.


**SCHAGRIN ASSOCIATES**       **WILEY REIN LLP**              **KING & SPALDING LLP**
900 7th Street, NW, Suite 500    2050 M Street, NW               1700 Pennsylvania Ave., NW
Washington, DC 20001              Washington, DC 20036          Washington, DC 20006
(202) 223-1700                         (202) 719-7000                    (202) 737-0500

*Counsel to Steel Dynamics, Inc.*    *Counsel to Nucor Corporation*    *Counsel to Cleveland-Cliffs Inc.*
*and SSAB Enterprises, LLC*

Dated:  July 31, 2023

---

* Only admitted in New York and New Jersey. Practice limited to matters before federal courts and agencies.

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing motion contains 7,781 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth in this Court's Chamber's Procedures. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the motion.

Dated: July 31, 2023

_____

Jeffrey D. Gerrish

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

|  |  |  |
|---|---|---|
| ──────────────────────────── ) | | |
| EREĞLI DEMIR VE ÇELIK FABRIKALARI ) T.A.Ş, ) | | |
| ) | | |
| *Plaintiff,* ) | | |
| ) | | |
| *v.* ) | | |
| ) | | |
| UNITED STATES INTERNATIONAL ) TRADE COMMISSION, ) | | |
| ) | Court No. 22-00349 | |
| *Defendant,* ) | | |
| ) | | |
| *and* ) | | |
| ) | | |
| CLEVELAND-CLIFFS INC., NUCOR ) CORPORATION, STEEL DYNAMICS, INC., ) and SSAB ENTERPRISES, LLC, ) | | |
| ) | | |
| *Defendant-Intervenors.* ) | | |
| ──────────────────────────── ) | | |

## ORDER

Upon consideration of the defendant-intervenors' motion to dismiss, all other pertinent papers filed and proceedings held in this action, and upon due deliberation, it is hereby

**ORDERED** that the motion is **GRANTED**; and it is further

**ORDERED** that the amended complaint filed in this action (ECF No. 14) is dismissed with prejudice.

**SO ORDERED**.

_____
Honorable Timothy M. Reif, Judge
U.S. Court of International Trade

Dated: _____, 2023
New York, New York