## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE TIMOTHY M. REIF

| | |
|---|---|
| EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş.<br><br>                Plaintiff,<br><br>v.<br><br>UNITED STATES INTERNATIONAL TRADE COMMISSION,<br><br>                Defendant<br><br>     *and*<br><br>CLEVELAND-CLIFFS INC., NUCOR CORPORATION, STEEL DYNAMICS, INC., and SSAB ENTERPRISES, LLC,<br><br>                Defendant-Intervenors. | **22-cv-00349** |

## OPPOSITION TO MOTION TO DISMISS
## OF DEFENDANT-INTERVENORS

       Plaintiff Ereğli Demir ve Çelik Fabrikaları T.A.Ş. (Erdemir), by and through its counsel, opposes the Motion To Dismiss submitted by defendant-intervenors, Nucor Corporation, Cleveland-Cliffs, Inc., Steel Dynamics, Inc., and SSAB Enterprises, LLC ("domestic interested parties" or "DIPs").  This Court should deny the motion because Erdemir has properly brought this case under this Court's residual jurisdiction, 28 U.S.C. § 1581(i)(1)(B) and (D).  Further, Erdemir's complaint raises a claim upon which relief may be granted.

## BACKGROUND

       The bottom line in this appeal is that, had Commerce lawfully calculated the antidumping duty (AD) margin of Çolakoğlu Dis Ticaret A.Ş. in the AD investigation, Çolakoğlu's margin would have been zero, Çolakoğlu imports would have been excluded from the Commission's

negligibility analysis, subject imports from Turkiye.[1]  would have been found negligible and thus

non-injurious, and there would not be an AD duty order on hot-rolled steel from Turkiye.  These

facts are indisputable because the parallel events happened in the countervailing duty (CVD)

investigation.  Commerce found in the investigation that Çolakoğlu was not subsidized, the

Commission consequently excluded Çolakoğlu's imports from its negligibility analysis, found

subject CVD imports from Turkiye negligible and thus non-injurious, and terminated the CVD

investigation.  Amended Complaint ¶¶11, 13.  No CVD order issued on hot-rolled steel from

Turkiye.

But the actual AD timeline was different from the CVD timeline.  After Commerce found

Çolakoğlu had an above-*de minimis* AD margin, the Commission included Çolakoğlu's import

volume in its negligibility analysis and consequently found subject AD imports from Turkiye

non-negligible.  Amended Complaint ¶¶12, 14.  At this point, the Commission cumulated all AD

imports from Turkiye with imports from six other countries and found that the cumulated

imports caused material injury to the U.S. hot-rolled steel (HRS) industry.[2]  Amended

---

[1] The U.S. State Department has recognized the request of the Turkish embassy to spell the country's name "Turkiye," and uses this spelling in formal diplomatic and bilateral contexts, and in public communications.  *Press Briefing*, Dep't of State (Jan. 5, 2023) https://www.state.gov/briefings/department-press-briefing-january-5-2023/.

[2] Defendant-Intervenor incorrectly asserts that in the sunset review the Commission "determined that revocation of the antidumping duty order on hot-rolled steel flat products from Turkey would be likely to lead to continuation or recurrence of material injury."  DIPs Mot. at 3 n.1, 13.  The Commission made no such finding.  Similar to the investigation, the Commission found in the sunset review that revocation of *six* antidumping duty orders on *cumulated imports* of HRS from Australia, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom would lead to a continuation or recurrence of material injury.  *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Continuation of Antidumping Duty Orders (Australia, Japan, Korea, the Netherlands, Turkey, and United Kingdom) and Countervailing Duty Order (Korea) and Revocation of Antidumping and Countervailing Duty Orders (Brazil)*, 87 Fed. Reg. 78,642 (Dep't Commerce Dec. 22, 2022).

Complaint ¶¶14-15.  Accordingly, an AD order on HRS from Turkiye issued.  Amended

Complaint ¶15.  But two years later, this Court found that Commerce did not lawfully calculate

Çolakoğlu's AD margin.  Amended Complaint ¶17.  On remand, Çolakoğlu's AD margin was

recalculated to zero, and this correct AD margin meant Çolakoğlu was excluded from the order

as if its AD margin had been lawfully calculated in the investigation.  Amended Complaint ¶¶17-

18.

The recalculation of Çolakoğlu's AD margin to zero meant that the factual underpinnings

of the Commission's negligibility determination in the AD investigation were invalid.  Amended

Complaint ¶19.  Further, given uncontested facts about the effect of removing Çolakoğlu's

import volume from consideration in the negligibility analysis – that it would have led to a

finding of negligibility precluding issuance of an AD order – the Commission's final injury

determination is inaccurate and providing relief to DIPs was not justified. Amended

Complaint ¶20

Thus, the recalculation of Çolakoğlu's AD margin to zero raised the question of whether

and how the Commission should consider the effect of that recalculation.  While other

mechanisms for review of changes after an order is in place exist, such as changed circumstances

reviews (CCRs) and sunset reviews, the circumstances of the recalculation of Çolakoğlu's AD

margin to zero affect the validity of the original investigation.  Amended Complaint ¶¶21-28.

The Commission has previously stated, when choosing reconsideration over a CCR, that

"reconsideration {is} a more appropriate procedure for review of the original investigation."  *See*

*Elkem Metals Co. v. United States*, 26 CIT 234, 236, 193 F. Supp. 2d 1314, 1317 (2002).

Despite Erdemir's attempts to get the Commission to reconsider its original negligibility

decision in light of invalidated factual underpinnings – requesting a reconsideration, a CCR, and

examination of the issue in a sunset review – the Commission rejected all three attempts.  The Commission found that reconsideration was not appropriate because there were no extraordinary circumstances, that a CCR does not reexamine negligibility and would be duplicative of the sunset review; and that the Commission need not address the issue in the sunset review because it had addressed the issue in its decision about reconsideration and a CCR.  Amended Complaint ¶¶29-35.

Erdemir asked the Commission to reconsider the negligibility decision of the original investigation that – in light of Colakoglu's exclusion – had invalidated factual underpinnings because they included Colakoglu's non-subject import volume.  Amended Complaint ¶¶20-28. The Commission denied Erdemir's request, asserting that, in light of "the presumption of finality and correctness that underlies past action by the Commission, the Commission has chosen to exercise its authority to reconsider only when 'extraordinary circumstances' are present." Amended Complaint ¶¶30-32; *see Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731–TA–1296 (Final), Hot-Rolled Steel Flat Products From Turkey*, 87 Fed. Reg. 73,331, 73,332-73,333 (Int'l Trade Comm'n Nov. 29, 2022) ("*Reconsideration Denial*"). The Commission provided an example of extraordinary circumstances, "when a fraud has been perpetrated on the tribunal in its initial proceeding," *id.*, and found that "the recalculation of the dumping margin by Commerce with respect to hot-rolled steel flat products from Turkey," did not qualify as extraordinary circumstances – "consistent with the Statement of Administrative Action accompanying the Uruguay Rounds Agreements Act."  *Id.*; Amended Complaint ¶31.

The Commission also found that Erdemir had a "path" to challenge negligibility decision in light of Colakoglu's exclusion from the AD order, but "Erdemir did not appeal the Commission's final affirmative material injury determination which would have provided it with the opportunity to preserve its rights for further reconsideration of the merits based on the outcome of Commerce's appeal." *Id.*, 87 Fed. Reg. at 73,333; Amended Complaint ¶31.

Erdemir appealed all three decisions, filing separate appeals because each arises under different jurisdictional provisions. *See Ereğli Demir Ve Çelik Fabrikalari T.A.Ş. v. United States*, Ct. No. 22-349 (reconsideration); *Ereğli Demir Ve Çelik Fabrikalari T.A.Ş. v. United States*, Ct. No. 22-350 (CCR); *Ereğli Demir Ve Çelik Fabrikalari T.A.Ş. v. United States*, Ct. No. 22-349 (sunset). Appeal of a Commission decision not to initiate a CCR is listed under 19 U.S.C. § 1516a(a)(1)(B), and thus must be brought under 28 U.S.C. § 1581(c), which states that "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A or 517 of the Tariff Act of 1930 {(19 U.S.C. § 1516a or 1517)}." Appeal of a sunset review is listed under 19 U.S.C. § 1516a(a)(2)(B)(iii), and thus also must be brought under 28 U.S.C. § 1581(c). A Commission decision not to initiate a reconsideration is not listed anywhere in 19 U.S.C. § 1516a, and thus cannot be brought under 28 U.S.C. § 1581(c). Erdemir accordingly asserted jurisdiction under 28 U.S.C. § 1581(i)(1)(B) and (D). Amended Complaint ¶3.

Erdemir filed its complaint with a single claim that the Commission wrongfully declined to exercise its authority to reconsider the negligibility decision in light of Colakoglu's exclusion from the AD order:

> The Commission has the authority to reconsider and correct errors
> in the AD negligibility determination in the original investigation,
> and wrongfully declined to reconsider the negligibility decision of
> its original investigation in light of the retroactive exclusion of

> Çolakoğlu from the AD order.  The Commission's rejection of
> Erdemir's requests for reconsideration was agency action
> unlawfully withheld; was arbitrary, capricious, an abuse of
> discretion, or otherwise not in accordance with law; and otherwise
> not lawful under 5 U.S.C. § 706.

Amended Complaint ¶38.

DIPs sole argument for dismissal on jurisdictional grounds is that Erdemir could have

brought its appeal under 28 U.S.C. § 1581(c), thus jurisdiction under 28 U.S.C. § 1581(i) is not

available.  DIPs Mot., ECF 53 at 16-22.  DIPs, in their motion to dismiss, argue that the true

nature of Erdmir's appeal is a challenge to the original injury determination, and that jurisdiction

under 28 U.S.C. § 1581(c) could have been available and would have been adequate to challenge

the Commission's original negligibility decision if Erdemir had appealed the Commission's

original injury determination in 2016 along with DIPs, persuaded the court to stay the proceeding

for 5+ years until the concurrently-filed 2016 appeal of Commerce's AD final determination

reached its final conclusion after all appeals.  *See* DIPs Mot., ECF 53  at 18*; compare Nucor*

*Corp. v. United States*, 296 F. Supp. 3d 1276, 1280 (Ct. Int.'l Trade 2018) (complaint filed in

November 2016), *with Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 308 F. Supp. 3d

1297, 1305 (Ct. Int'l Trade 2018) (appeal instituted in October 2016); Amended Complaint ¶26

(noting that DIPs appeal to the Federal Circuit had been dismissed in September 2021).  DIPs

argue that Erdemir could have obtained a stay of an appeal of the Commission's decision that

AD imports *were not negligible*, but do not mention that DIPs were seeking to prosecute their

appeal of the Commission's decision that CVD imports from Turkiye *were negligible*.  *See* DIPs

Mot., ECF 53 at 18*; Nucor*, 296 F. Supp. 3d at 1280-81 (describing DIPs appeal of the

Commission's negligibility finding for subject imports from Turkiye in the CVD investigation).

DIPs also argue that this Court should dismiss Erdemir's complaint for failure to state a

claim upon which relief may be granted, claiming that Erdemir asserts an error in the original

negligibility decision, "Erdemir alleges that the *Commission committed an error in the original investigation* when it found that dumped imports from Turkiye were not negligible because, nearly four years later, Commerce amended its final determination as a result of litigation and excluded Çolakoğlu from the antidumping duty order."  DIPs Mot., ECF 53 at 22 (emphasis added).  On this basis, DIPs argue that Çolakoğlu's exclusion from the AD order did not make the finding in the original investigation erroneous: "Çolakoğlu's exclusion from the antidumping duty order did not render the Commission's negligibility analysis and finding of non-negligibility in the original investigation erroneous."  *Id.*

## ARGUMENT

DIPs confuse an attack on the original negligibility decision with what Erdemir seeks here:  a reconsideration of the original negligibility decision in light of facts not known at the time of the original investigation.  Erdemir does not argue that the Commission's decision was erroneous when made.  Erdemir points to subsequent events:  (1) this Court finding Commerce's calculation of Çolakoğlu's AD margin unlawful, (2) the lawful recalculation of the margin to zero on remand, and (3) the consequent exclusion of Çolakoğlu from the AD order.  Erdemir argues that these subsequent events rendered invalid the factual underpinnings of original negligibility decision.  Erdemir further argues that these subsequent events qualify as extraordinary circumstances warranting a reconsideration of that negligibility decision without the invalid factual underpinnings.

The Commission's decision recognizes Erdemir's arguments but finds that subsequent events establishing the invalidity of the factual underpinnings of the negligibility decision do not qualify as extraordinary circumstances.  *Reconsideration Denial*, 87 Fed. Reg. at 73,332-73,333. The Commission decision about extraordinary circumstances was based upon its assessment that

this case does not involve fraud, and provides a reference to a page in the SAA where it claims, "Congress specifically contemplated subsequent changes to the antidumping duty margins and instructed that such changes would not be a basis to reconsider the Commission's impact analysis and a single statutory provision." *Id.* at 73,332.

Jurisdiction is proper under 28 U.S.C. § 1581(i) because jurisdiction is not available under any other subjection of section 1581; alternatively, jurisdiction under another subjection would be manifestly inadequate.  Further, Erdemir articulated a claim upon which relief may be granted.  Accordingly, this Court should deny DIPs motion to dismiss.

## I.      Jurisdiction Under 28 U.S.C. § 1581(i) Is Proper For Erdemir's Valid Claim

Jurisdiction under 28 U.S.C. § 1581(i) is proper for Erdemir's valid claim because jurisdiction was not available under any other subsection of section 1581.  Even had jurisdiction been available under another subsection of section 1581, jurisdiction under that subsection would have been manifestly inadequate.

Judicial principles related to section 1581(i) are clear:  "when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Ford Motor Co. v. United States*, 688 F.3d 1319, 1323 (Fed. Cir. 2012) (*quoting Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987) (emphasis added)).  The analysis involves two questions:  (1) "whether jurisdiction under a subsection other than §1581(i) was available," and (2) "if jurisdiction was available under a different subsection of § 1581, … whether the remedy provided under that subsection is 'manifestly inadequate.'" *Id.*

**A.  Jurisdiction Is Proper Under 28 U.S.C. § 1581(i)**

Jurisdiction in this case is proper under 28 U.S.C. § 1581(i) because jurisdiction is not and could not have been available under any other subjection of section 1581.  To determine whether jurisdiction under "another subsection could have been available, '{the Court looks} to the "true nature of the action.""" *Suntec Indus. Co. v. United States*, 857 F.3d 1363, 1367 (Fed. Cir. 2017 (*quoting Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1360 (Fed. Cir. 2016) (*quoting Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1293 (Fed. Cir. 2008))).

Determining "{t}he true nature of a particular action will depend upon the attendant facts asserted in the pleadings." *Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1360 (Fed Cir. 2016) (*citing Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006); *Williams v. Sec'y of Navy*, 787 F.2d 552, 557-58 (Fed. Cir. 1986) (explaining that "the substance of the pleadings define a suit")).  With this analysis, the Court must "discern the particular agency action that is the source of the alleged harm {to} identify which subsection of § 1581 provides the appropriate vehicle for judicial review." *Id.* (*citing National Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1555 (Fed. Cir. 1988)).

The true nature of Erdemir's action is a challenge to the Commissions refusal to initiate a reconsideration proceeding to reconsider the negligibility determination in relation to subject imports from Turkiye *in light of* the successful appeal of Çolakoğlu.  Complaint ¶¶17-21, 37-38. The Federal Circuit has explained that "'an agency does have an obligation to make corrections when it has been relying on erroneous factual assumptions.'" *Alberta Gas Chems., Ltd. v. Celanese Corp.*, 650 F.2d 9, 13 (2d Cir. 1981) (*quoting Greene County Planning Board v. Federal Power Commission*, 559 F.2d 1227, 1233 (2d Cir. 1976), *cert. denied*, 434 U.S. 1086, 98 S. Ct. 1280, 55 L. Ed. 2d 791 (1978)).  Indeed, "reconsideration is often the sole means of

correcting errors of procedure or substance." *Id.* (*quoting Bookman v. United States*, 197 Ct. Cl. 108, 453 F.2d 1263, 1265 (Ct.Cl.1972)).  Further, "{i}t is well established that, when an administrative agency denies a party's petition which seeks to 'reopen{ a case} on the basis of new evidence or changed circumstances,' that decision is reviewable on appeal, and 'abuse of discretion is the standard.'" *Home Prods. Int'l, Inc. v. United States*, 633 F.3d 1369, 1377 (Fed. Cir. 2011) (*quoting Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284, 107 S. Ct. 2360, 96 L. Ed. 2d 222 (1987)).

A Commission decision not to initiate a reconsideration is not listed anywhere in 19 U.S.C. § 1516a, and thus cannot be brought under 28 U.S.C. § 1581(c).  This claim is different from challenges to a decision not to initiate a CCR or to a sunset review determination, both of which are listed under 19 U.S.C. § 1516a(a)(1)(B) (CCR) and 19 U.S.C. § 1516a(a)(2)(B)(iii) (sunset review), and thus can only be brought under 28 U.S.C. § 1581(c).

That the true nature of Erdemir's claim is a challenge to the reconsideration decision (and ultimately about reconsideration of the negligibility decision) and not a challenge to the Commission's negligibility decision in the original investigation is clear given that Erdemir could not have raised such a claim appealing the final injury determination.  Negligibility is purely a numbers question in relation to present material injury, and involves some analysis in relation to threat of material injury.  *See* 19 U.S.C. § 1677(24)(a)(i); *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731-TA-1291-1297 (Final), USITC Pub. 4638 (Sept. 2016), at 1 & n.2, 3, 12-14.  For CVD imports, excluding Çolakoğlu's imports, subject CVD imports fell from 7.4 of total imports to "below the three percent negligibility threshold for the present material injury analysis."  *Id.* at 13.  Further, the Commission found that "increasing

capacity utilization, and strong home-market orientation, demonstrate that any sustained increase in the percentage of subsidized subject imports from Turkey relative to all imports is unlikely." *Id.* at 14.

None of these facts existed for AD imports because Çolakoğlu's imports were included in the negligibility decision.  The Commission found that "imports from Turkey that are subject to the antidumping duty investigation are different from those subject to the countervailing duty investigation."  *Id.* at 12.  For AD imports, the analysis was clear that subject imports from Turkiye were above negligible levels:  "Hot-rolled steel imports from Turkey that are subject to the antidumping duty investigation were 7.4 percent of total imports during this period and therefore were above negligible levels."  *Id.*

Erdemir had no claim against the Commission's original negligibility decision in the AD investigation.  The factual record of the injury investigation could not support a non-frivolous argument that the Commission should have found subject AD imports from Turkiye negligible. Even the argument about Çolakoğlu's AD margin changing could only be speculative in 2016, with at least the five years of the AD appeal (if not longer given that the appeal to the Federal Circuit was cut short), before an argument about Çolakoğlu's AD imports would change from purely speculative.

DIPs would like Erdemir's action to be a challenge to the original investigation that had to be brought under 28 U.S.C. § 1581(c).  DIPs Mot., ECF 53  at 18.  But a challenge to the negligibility decision in the original investigation never existed and could never exist because it would have to rely upon a speculative result of a separate appeal of a separate administrative action with a separate administrative record.  DIPs make their claim pointing to words used by Erdemir such as "hindsight," "*ab initio*," and "should have."  *Id.*  These words were simply

Erdemir's reference to what would have happened had Commerce used lawful calculation methods to calculate Çolakoğlu AD margin in the original investigation. *See, e.g.,* Amended Complaint ¶20 ("but for Commerce's initial unlawful decisions, the volume of subject imports considered by the Commission *would have been* below the negligibility threshold for the AD injury investigation, just as they had been for the CVD injury investigation:  there *would be* no AD order on hot-rolled steel flat products from Turkey" (emphases added)).  DIPs argument relies on mischaracterization of Erdemir's complaint, ignoring the "attendant facts asserted in" and "substance of the pleadings." *Hutchison*, 827 F.3d at 1360 (*citing Norsk Hydro*, 472 F.3d at 1355; *Williams*, 787 F.2d at 557-58.

**B.  Jurisdiction Under 28 U.S.C. § 1581(c) Was Not Available Or Could Only Have Been Manifestly Inadequate**

To the extent this Court finds that jurisdiction under 28 U.S.C. § 1581(c) could have been available, jurisdiction under section 1581(c) could only have been manifestly inadequate.

The scenario DIPs present to claim that an adequate remedy could have been available under 28 U.S.C. § 1581(c), was not possible.  DIPs claim that "{t}he true nature of Erdemir's action is a challenge to the Commission's negligibility analysis and finding of non-ngligibility in the original antidumping duty investigation of hot-rolled steel flat products from Turkey."  DIPs Mot., ECF 53 at 18.  Accordingly, DIPs claim that "that Erdemir could have pursued the relief it seeks in this action by timely appealing the Commission's original material injury determination under 28 U.S.C. § 1581(c)."  DIPs Mot., ECF 53 at 18.  DIPs scenario is not finished here, as a necessary part of its scenario, DIPs explain that this "appeal could then have been stayed pending the outcome of Erdemir and Çolakoğlu's appeal of Commerce's final dumping margins."  DIPs Mot., ECF 53 at 18.  DIPs then disclose that the Court would not have any ability to provide relief for Erdemir without the stay:  "Following the appeal of Commerce's final dumping

margins, *the Court would then have had the ability* to treat Çolakoğlu's zero percent dumping

margin and exclusion from the antidumping duty order resulting from that appeal as an

intervening event and remand the matter to the Commission for reconsideration."  DIPs Mot.,

ECF 53 at 18.

       Erdemir could not have been successful in any such appeal.  First, Erdemir would not

have had standing because its appeal would have been moot from the start.  "The mootness

doctrine applies when 'events have so transpired that the {court's} decision will neither presently

affect the parties' rights nor have a more-than-speculative chance of affecting them in the

future.'" *Jem D Int'l (Mich.) Inc. USA v. United States*, 470 F. Supp. 3d 1374, 1380 (Ct. Int'l

Trade 2020) (*quoting Clarke v. United States*, 915 F.2d 699, 701, 286 U.S. App. D.C. 256 (D.C.

Cir. 1990) (en banc) (citation omitted)).  Under DIPs scenario, at the time Erdemir would have

filed an appeal, the court had only a "speculative chance of affecting" Erdemir's rights.  *Id.*

Erdemir had no possibility of any change without the outcome of a separate appeal.  It was not

until five years later, after DIPs abandoned their appeal that the speculative turned out to be in

Erdemir's favor.

       In prior cases, this Court has remanded an appeal of the Commission's final injury

determination – despite the Commission's interest in finality – to reconsider issues in light of

final court decisions in parallel appeals, but these have been coincidental occurrences, and based

upon this Court's authority to "order any other form of relief that is appropriate in a civil action."

28 USCS § 2643(c)(1); *see, e.g.*, *Usinor Industeel, S.A. v. United States*, 26 CIT 1402, 1407

(2002) (finding that sunset review was based upon incorrect data after unique circumstances of a

Federal Circuit opinion issued during the *Usinor* appeal that changed the scope of the

investigation and remanding for reconsideration of decisions affected by change in data after the

change in scope) (*citing Borlem S.A. Empreedimentos Industrias v. United States*, 913 F.2d 933, 939 (Fed. Cir. 1990) (finding Court of International Trade has the authority to order ITC, on remand, to reconsider a prior determination where such decision was based on erroneous data)). These rare and coincidental cases do not indicate that jurisdiction under section 1581(c) would not be manifestly inadequate.

Further, even if the appeal were not moot out of the gates, a stay would not have been appropriate, and would not have been granted. DIPs conceded, without a stay, this Court could not have had any ability to provide relief to Erdemir, thus jurisdiction under section 1581(c) would have been manifestly inadequate. A stay in the scenario DIPs presented was not possible for several reasons. First, the landmark Supreme Court decision stated that a stay until an appellate court rules exceeds "the limits of a fair discretion." ("the limits of a fair discretion are exceeded in so far as the stay is to continue in effect after the decision by the District Court in the suit against the Bond and Share Company, and until the determination by this court of any appeal therefrom"). *Landis v. N. Am. Co*., 299 U.S. 248, 256, 57 S. Ct. 163, 81 L. Ed. 153 (1936); *Cherokee Nation v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997). There, the Supreme Court complained that the stay had already been in force for a year, and "fix{ed} the uttermost limit as the date of the first decision in the suit." *Id.*, 299 U.S. at 257. Here, the stay would have had to be in place for a minimum of five years, and could have been longer had DIPs not abandoned their appeal. *See* Amended Complaint ¶26.

Even if a five-plus-year-long stay could have been possible, the factual circumstances would not allow it. The Court's analysis on a motion to stay looks to whether it promotes judicial economy and whether it relies on speculative claims. *Nexteel Co., Ltd. v. United States*, 556 F. Supp. 3d 1376, 1379 (Ct. Int'l Trade) (citing cases). Further, the Court "must 'balance

[the] interests favoring a stay' against the opposing interests," with "the court's 'paramount obligation to exercise jurisdiction timely in cases properly before it." *Groves v. McDonough*, 34 F. 4th 1074, 1080 (Fed. Cir. 2022) (*citing Cherokee Nation*, 124 F.3d at 1416) (emphasis added); (the court must "weigh the competing interests and maintain an even balance, giving due consideration to the interests of the litigants, the court, and the public." *Diamond Sawblades Manufacturers' Coalition v. United States*, 34 CIT 406 (2010) (*citing Tak Fat Trading Co. v. United States*, 24 CIT l376, 1377 (2000)) (quotations omitted)); *see also* USCIT R. 1 (stating, the USCIT Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

When explaining the necessary scenario for Erdemir under section 1581(c), DIPs omitted that it would have had a competing interest for speedy determination, in direct opposition to Erdemir's need for a five-plus-year stay.  DIPs appealed the Commission's decision in the original HRS injury investigation that subject CVD imports from Turkiye were negligible. *Nucor*, 296 F. Supp. 3d at 1280.  DIPs sought to reverse the negligibility decision in the CVD injury investigation to bring imports of HRS from Turkiye under an AD order.  *Id.*  DIPs now conveniently argue that Erdemir could have obtained a stay of an appeal of the Commission's decision that AD imports *were not negligible*, necessarily implying that DIPs would not have opposed the motion while seeking to prosecute their appeal of the Commission's decision that CVD imports from Turkiye *were negligible*.  *See* DIPs Mot., ECF 53 at 18*; Nucor*, 296 F. Supp. 3d at 1280-81 (describing DIPs appeal of the Commission's negligibility finding for subject imports from Turkiye in the CVD investigation).  When weighing the competing interests, the necessary length of the stay, and the Court's obligation to provide "speedy" determination in the proceeding, DIPs' scenario falls apart.

Further, although DIPs cite a single case where parties consented to a stay, the circumstances of that example are inapposite.  There, the domestic interested party, United State Steel Corporation (USSC), appealed the Commission's negligibility decision, which was based upon Commerce's calculation to zero of one of the mandatory respondent's, but USSC's case could not succeed unless the separate appeal of Commerce's decision concluded finding that those mandatory respondent's rate was above *de minimis*.  *See United States Steel Corp. v. United States*, Consol. Ct. No. 14-00232, ECF 24, Consent Mot. for Stay (Nov. 24, 2014). USSC filed a consent motion – with both the Commission and the defendant-intervenor, Saudi Arabian pipe company consenting to the motion for stay.  *Id.*  The Saudi company had no urgency because no order had issued, and it was not subject to AD duties.  The Court there granted the consent motion for stay without an opinion.  *See id.*, ECF 25, Order (Nov. 25, 2014). The separate appeal did not work out for USSC.  *See* Consequently, USSC voluntarily dismissed the appeal.  *See Boomerang Tube LLC v. United States*, 856 F.3d 908 (Fed. Cir. 2017); *United States Steel Corp. v. United States*, Consol. Ct. No. 14-00232, ECF 36, Notice of Disimissal (Dec. 14, 2017). DIPs cannot conveniently argue here that they would have consented to a stay, contrary to their interests at the time.  Not only would opposing the stay allowed DIPs a speedy resolution of their appeal, but it would also have defeated Erdemir's appeal.  Moreover, the law would have been on DIPs side.

Contrary to DIPs inapposite example, contested motions for stay been rejected by the Court of International Trade.  *LG Elecs., Inc. v. United States ITC*, 38 C.I.T. 103 (2014) (denying request to sever negligibility claim against the ITC until another judge could decide whether substantive claims in appeals of companion AD and CVD cases would render margins *de minimis* and, consequently, import volume negligible).  Thus, even had jurisdiction under section

1581(c) been available, it would have been manifestly inadequate.  Moreover, with jurisdiction

under section 1581(c) manifestly inadequate, one of the Commission's justifications for denying

Erdemir's request for reconsideration – that Erdemir had a "path" to challenge negligibility but

"Erdemir did not appeal the Commission's final affirmative material injury determination which

would have provided it with the opportunity to preserve its rights for further reconsideration of

the merits based on the outcome of Commerce's appeal" – cannot not provide support for its

decision.  *Id.*, 87 Fed. Reg. at 73,333.

## II.     Erdemir Has Stated A Claim Upon Which Relief May Be Granted

This Court may provide relief for the claim asserted by Erdemir.  Erdemir has

complained that, despite a proper request for reconsideration supported by uncontested operative

facts, the Commission unlawfully "declined to reconsider the negligibility decision of its original

investigation in light of the retroactive exclusion of Çolakoğlu from the AD order."  Count I,

Complaint ¶38.  This action thus raises the question of whether the Commission's rejection of

Erdemir's request should be reversed because it "was agency action unlawfully withheld; was

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; and

otherwise not lawful."  *Id.*  The relief this Court may provide upon finding the Commission's

refusal to conduct a reconsideration is a remand with instructions for the Commission to conduct

the reconsideration.

DIPs concede that the Commission has the inherent authority to reconsider its decisions.

DIPs Mot., ECF 53 at 24.  The Commission also affirms its authority to reconsider its decisions,

not only in instances of fraud, but also when there are "other facts suggesting extraordinary

circumstances."  Commission Statement, ECF 54 at 1.  But the Commission stated that "the

recalculation of the dumping margin by Commerce with respect to hot-rolled steel flat products

from Turkey," did not qualify as extraordinary circumstances – "consistent with the Statement of Administrative Action accompanying the Uruguay Rounds Agreements Act." *Id.* (*citing* SAA at 851, 1994 U.S.S.C.A. at 4184); Amended Complaint ¶31.  The Commission stated, "Congress specifically contemplated subsequent changes to the antidumping duty margins and instructed that such changes would not be a basis to reconsider the Commission's impact analysis.  *Id.* DIPs use this argument to support their motion to dismiss for failure to state a claim upon which relief may be granted.  DIPs Mot. at 22-26.  DIPs and the Commission ignore, however, operative language in the SAA, which establishes that the opposite is true.

Congress intended that the Commission reconsider its original injury determination when Commerce on appeal from the investigation recalculates margins to *de minimis* or zero. Congressional intent is plain in the language of the *Statement of Administrative Action accompanying the Uruguay Rounds Agreements Act,* H.R. Doc. No. 103-316, vol.1, at 851 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4184.  There Congress explained an exception to the general rule that injury determinations are final in circumstances where Commerce recalculates margins on appeal, if such reconsideration "is warranted."  *Id.*, 19 U.S.C.C.A.N. at 4184.  Congress stated, "The Commission, however, may conduct a changed circumstances review of its determination pursuant to Section 751(b) on the basis of recalculations by Commerce of the dumping margin in the original investigation if the party seeking such review establishes that it is warranted."  The entire section of the SAA reads as follows:

> For {non-staggered} investigations for which cumulation is appropriate, the Commission is to use the most recent dumping margin issued by Commerce at the time the Commission closes its record.  This precludes challenges to a Commission determination on the basis that Commerce later modifies the original dumping margins.

> *Changes in the original margin could occur due to* further
> proceedings in staggered investigation, corrections of ministerial
> errors, reconsiderations of a determination, or *judicial remand*.
> Absent this provision, Commission determinations could be
> subject to repeated request for reconsideration or judicial remands.
> The finality of injury determinations would be seriously
> compromised if the Commission were required to amend or revisit
> its determination each time the administering authority modified its
> dumping margin. *The Commission, however, may conduct a
> changed circumstances review of its determination pursuant to
> Section 751(b) on the basis of recalculations by Commerce of the
> dumping margin in the original investigation if the party seeking
> such review establishes that it is warranted.* Changes in dumping
> margins in administrative reviews should not form the basis for a
> changed circumstances review.

*SAA*, H.R. Doc. No. 103-316 at 851, 1994 U.S.C.C.A.N. at 4184 (emphasis added).

The SAA uses the word "recalculations" to indicate timing. A recalculation is something
that happens after the original calculation, for example, "corrections of ministerial errors,
reconsiderations of a determination, or judicial remand." *SAA*, H.R. Doc. No. 103-316 at 851,
1994 U.S.C.C.A.N. at 4184. The SAA also clarifies that this "recalculation" is tied only to the
original investigation and not to any subsequent administrative review, "Changes in dumping
margins in administrative reviews should not form the basis for a changed circumstances
review."

DIPs provide only a partial quotation of the SAA to support their motion. DIPs Mot. at
25. But the SAA does not provide any such support. The next paragraph of the SAA plainly
describes the circumstances arising here and identifies them as proper grounds for the
Commission to reconsider its prior decision. The initial relevant portion of the SAA explains
that Congress, through the SAA, "precludes challenges to a Commission determination on the
basis that Commerce later modifies the original dumping margins," and explains that such later
mofidication of original dumping margins "could occur due to … judicial remand." *SAA*, H.R.
Doc. No. 103-316 at 851, 1994 U.S.C.C.A.N. at 4184. As an explicit exception, however, the

*SAA* approves the Commission's reconsideration of its determination "on the basis of recalculations by Commerce of the dumping margin in the original investigation." *Id.*

While the SAA points to a CCR as the proper vehicle to address the circumstances of this case, this does not preclude the Commission from reconsidering the negligibility determination of the original investigation in a reconsideration proceeding for at least two reasons.  First, the CCR provisions do not eliminate the agency's inherent authority to reconsider its prior determinations.  Under the CCR provisions, the Commission is required to conduct a CCR whenever it receives a request for CCR that "shows changed circumstances sufficient to warrant a review." 19 U.S.C § 1675(b)(1).  The statutory language does not set CCRs as the exclusive vehicle for the Commission to address a change in circumstances.  The statute does set up a formal mechanism for parties to request a review of the changed circumstances.  For CCRs connected to Commission injury determinations, the statute provides additional guidelines for the Commission's reconsideration under formal CCR proceedings.

Second, although the SAA plainly sets the circumstances of this case as proper for reconsideration in a CCR context, the Commission argues in a parallel proceeding before this court that the Commission has no authority to conduct a CCR to address the circumstances here. *See Def. Mot. to Dismiss*, ECF38, *Ereğli Demir Ve çelik Fabrikalari T.A.Ş. v. United States*, CIT Ct. No. 22-350, at 17-20; *Def.-Ints. Mot. to Dismiss*, ECF39, *Ereğli Demir Ve çelik Fabrikalari T.A.Ş. v. United States*, CIT Ct. No. 22-350 at 2 (incorporating the Commission's arguments by reference).  Def-Ints and the Commission cannot have it both ways.  If they deny the CCR, they must accept that the circumstances underlying this case are proper grounds for reconsideration, as contemplated by the SAA.

20

Further, the fact that there may be a statutory vehicle for reconsideration does not eliminate the Commission's ability to forego the statutory mechanism in favor of reconsideration pursuant to its inherent authority.  *See Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc*., 839 F.3d 1382, 1385 (Fed. Cir. 2016) ("{A}dministrative agencies possess inherent authority to reconsider their decisions, subject to certain limitations, regardless of whether they possess explicit statutory authority to do so."  (*Quoting Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008)).  Indeed, in the example that the Commission provides to support its authority to reconsider its decision began as a CCR, but the Commission suspended the CCR in favor of reconsideration.  *See Elkem Metals*, 26 CIT at 235-36, 193 F. Supp. 2d at 1317-18.  There, the Commission explained that "reconsideration {is} a more appropriate procedure for review of the original investigation."  *See id.*

The courts have been clear that the Commission, like administrative agencies, has the "inherent authority to reconsider {its} own decisions."  *Elkem Metals Co. v. United States*, 193 F. Supp. 2d 1314, 1317 (Ct. Int'l Trade 2002) (*citing Trujillo v. Gen. Elec. Co*., 621 F.2d 1084, 1086 (10th Cir. 1980) ("Administrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider." (citation omitted))"; *Prieto v. United States*, 655 F. Supp. 1187, 1191 (D.D.C. 1987) ("{t}here can be no dispute that administrative agencies have inherent power to reconsider their own decisions" (citations omitted)); *see also Alberta Gas Chems., Ltd. v. Celanese Corp*., 650 F.2d 9, 12-14 (2d Cir. 1981) ("This universally accepted rule {that Federal Courts possess the authority to reconsider their final decisions} has been applied to proceedings before federal administrative agencies." (*citation omitted*)).").  The ITC may conduct a reconsideration proceeding whenever "new developments or newly discovered evidence {requires

reconsideration} in order to facilitate the orderly and just resolution," or "to correct {the agency's} own errors or otherwise appropriately … modify {the agency's} judgments." *Bookman v. United States*, 197 Ct. Cl. 108, 453 F.2d 1263, 1265 (Ct. Cl. 1972) ("It may be imperative for {agencies} to consider new developments or newly discovered evidence in order to facilitate the orderly and just resolution of conflict.... {Therefore,} 'every tribunal, judicial or administrative, has [the] power to correct its own errors or otherwise appropriately to modify its judgment[s]'" (citation omitted))).  The Commission's reconsideration could result in retroactive termination of the investigation or revocation of the AD order.

The Federal Circuit affirmed that the Commission could reconsider its original injury determination when a foreign producer's AD rate was recalculated to *de minimis* on appeal, causing the factual basis of the Commission's decision to become erroneous.  *Borlem S.A.-Empreedimentos Industriais v. United States*, 913 F.2d 933 (Fed. Cir. 1990).  In *Borlem*, the Federal Circuit and this Court recognized the Commission's authority and discretion to reconsider its injury decision in original investigations whenever the Commission becomes aware of an incorrect fact determination arising after its injury determination.  This Court has reaffirmed the applicability of principles announced in *Borlem*.  *See Elkem Metals*, 193 F. Supp. 2d at 1317; *Consol. Fibers*, 574 F. Supp. 2d at 1381 ("Amended margins found by Commerce on remand may warrant a remand to the Commission in a related appeal if the amended margins "may be determinative" and have been finalized i.e., reviewed by this Court or the U.S. Court of Appeals for the Federal Circuit" (*citing Usinor*, 27 CIT at 238-40 (citing *Borlem*, 913 F.2d at 939)).

A reconsideration is warranted here.  The circumstances here are not a simple recalculation of a margin that can fluctuate up and down and subject the Commission to endless

appeals.  Çolakoğlu's margin was recalculated to zero and Çolakoğlu was excluded from the AD

Order in the context where its exclusion would lead to negligible subject AD imports from

Turkiye.  *See HRS ITC Final*, USITC Pub. 4638 at 13-14.  Accordingly, Erdemir has raised a

claim upon which relief may be granted

## CONCLUSION

For the reasons set forth above, jurisdiction is proper under 28 U.S.C. § 1581(i) because

it could not have been available under 28 U.S.C. § 1581(c) or any other subsection of 28 U.S.C.

§ 1581, or jurisdiction under any other subsection would have been manifestly inadequate.

Further, Erdemir has stated a claim upon which relief may be granted because the Commission

has the inherent authority to reconsider its prior decisions, and the obligation to do so in this case

where its original decision is based upon invalidated factual underpinnings and Congress

intended that the Commission reconsider its decision under the circumstances of this appeal.

Accordingly, this Court should deny DIPs' motion to dismiss.

<div style="margin-left: 50%;">

Respectfully submitted,

David L. Simon, Esq.
Mark B. Lehnardt, Esq.

LAW OFFICES OF DAVID L. SIMON, PLLC
1025 Connecticut Avenue, NW, Suite 1000
Washington, DC 20036 USA
Tel. 202-481-9000
e-mail:  DLSimon@DLSimon.com

</div>

September 29, 2023                                  *Counsel to Ereğli Demir Ve Çelik*
                                                   *Fabrikalari T.A.Ş.*

## **CERTIFICATE OF COMPLIANCE**

1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The confidential version of this brief contains **7,104** words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, and the Table of Authorities).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.

/s/ Mark B. Lehnardt
Mark B. Lehnardt

Date: September 29, 2023

*Counsel to Ereğli Demir ve Çelik Fabrikalari T.A.Ş.*

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE TIMOTHY M. REIF

| | |
|---|---|
| EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş. | |
| Plaintiff, | |
| v. | **22-cv-00349** |
| UNITED STATES INTERNATIONAL TRADE COMMISSION, | |
| Defendant. | |

## ORDER

Upon consideration of the Motion To Dismiss filed by defendant-intervenors, Nucor Corporation, Cleveland-Cliffs, Inc., Steel Dynamics, Inc., and SSAB Enterprises, LLC, and all other papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that the Motion to Dismiss is denied, and it is further

ORDERED that Plaintiff shall filed its motion for judgment on the agency record and accompanying brief no later than 70 days after the date of this Order.

Dated: _____     _____
        New York, NY                                    JUDGE

1