# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

|  |  |  |
|---|---|---|
| EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| *v.* | ) ) | |
| UNITED STATES INTERNATIONAL TRADE COMMISSION, | ) ) ) ) | Court No. 22-00349 |
| *Defendant,* | ) ) | |
| *and* | ) ) | |
| CLEVELAND-CLIFFS INC., NUCOR CORPORATION, STEEL DYNAMICS, INC., and SSAB ENTERPRISES, LLC, | ) ) ) ) | |
| *Defendant-Intervenors.* | ) ) | |

## DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Roger B. Schagrin, Esq.
Jeffrey D. Gerrish, Esq.
Saad Y. Chalchal, Esq.*

**SCHAGRIN ASSOCIATES**
900 7th Street, NW, Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel to Steel Dynamics, Inc.
and SSAB Enterprises, LLC*

Alan H. Price, Esq.
Christopher B. Weld, Esq.
Theodore P. Brackemyre, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

Stephen P. Vaughn, Esq.
Neal Reynolds, Esq.
Barbara Medrado, Esq.

**KING & SPALDING LLP**
1700 Pennsylvania Ave., NW
Washington, DC 20006
(202) 737-0500

*Counsel to Cleveland-Cliffs Inc.*

Dated:  November 3, 2023

---

* Only admitted in New York and New Jersey. Practice limited to matters before federal courts and agencies.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .............................................................................................. iii

ARGUMENT .................................................................................................................. 2

I.   ERDEMIR HAS FAILED TO ESTABLISH THAT THE COURT POSSESSES
     JURISDICTION UNDER 28 U.S.C. § 1581(i) .......................................................... 3

     A.  The True Nature of This Action Is a Challenge to the Commission's
         Negligibility Analysis and Finding of Non-Negligibility in the Original
         Antidumping Duty Investigation ..................................................................... 3

     B.  Jurisdiction Under 28 U.S.C. § 1581(c) Could Have Been Available and the
         Remedy Provided Would Not Have Been Manifestly Inadequate .................. 6

         1.  Erdemir Could Have Followed the Statutorily Prescribed Path for
             Judicial Review Under 28 U.S.C. § 1581(c) to Pursue the Relief
             Sought in This Action .......................................................................... 6

         2.  Erdemir Has Not Shown that the Remedy Available Under 28 U.S.C.
             § 1581(c) Was Manifestly Inadequate ................................................ 11

         3.  By Not Timely Appealing the Commission's Original Injury
             Determination, Erdemir Has Lost the Possibility for Reconsideration
             of the Commission's Negligibility Analysis........................................ 17

II.  ERDEMIR HAS FAILED TO SHOW THAT THE AMENDED COMPLAINT
     STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED ....................... 18

CONCLUSION ............................................................................................................. 23

## **TABLE OF AUTHORITIES**

**Cases**

*ARP Materials, Inc. v. United States,*
   47 F.4th 1370 (Fed. Cir. 2022) ...............................................................................8–9, 17–18

*Borlem S.A.-Empreedimentos Industriais v. United States,*
   913 F.2d 933 (Fed. Cir. 1990)...................................................................................22

*Carbon Activated Corp. v. United States,*
   791 F.3d 1312 (Fed. Cir. 2015).................................................................................17–18

*Carbon Activated Corp. v. United States,*
   6 F. Supp. 3d 1378 (Ct. Int'l Trade 2014) ...............................................................17–18

*Cherokee Nation of Oklahoma v. United States,*
   124 F.3d 1413 (Fed. Cir. 1997).................................................................................12

*Consolidated Fibers, Inc. v. United States,*
   574 F. Supp. 2d 1371 (Ct. Int'l Trade 2008) ...........................................................22–23

*Diamond Sawblades Mfrs' Coalition v. United States,*
   Court No. 13-00168, 2015 WL 4978726 (Ct. Int'l Trade Aug. 20, 2015) ..............9–10

*DuPont Teijin Films v. United States,*
   Court No. 15-00048, 2015 WL 5024950 (Ct. Int'l Trade Aug. 26, 2015) ..............15–16

*Elkem Metals Co. v. United States,*
   193 F. Supp. 2d 1314 (Ct. Int'l Trade 2002) ...........................................................22

*Encon Indus., Inc. v. United States,*
   Court Nos. 94-04-00189 and 94-145, 1994 WL 520917 (Ct. Int'l Trade Sept. 19, 1994) .........10

*Erwin Hymer Grp. N. Am. v. United States,*
   930 F.3d 1370 (Fed. Cir. 2019).................................................................................4, 6, 8

*Hartford Fire Ins. Co. v. United States,*
   544 F.3d 1289 (Fed. Cir. 2008).................................................................................12

*Home Prods. Int'l, Inc. v. United States,*
   837 F. Supp. 2d 1294 (Ct. Int'l Trade 2012) ...........................................................19

*Hutchison Quality Furniture, Inc. v. United States,*
   827 F.3d 1355 (Fed. Cir. 2016).................................................................................5

*LG Electronics, Inc. v. U.S. Int'l Trade Comm'n,*
　　Consol. Court No. 13-00100, 2014 WL 260603 (Ct. Int'l Trade Jan. 23, 2014)................13–14

*LG Electronics, Inc. v. U.S. Int'l Trade Comm'n,*
　　37 C.I.T. 1589 (2013) .................................................................................................13–15

*Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.,*
　　839 F.3d 1382 (Fed. Cir. 2016)...................................................................................22

*Mitsubishi Polyester Film, Inc. v. United States,*
　　321 F. Supp. 3d 1298 (Ct. Int'l Trade 2018) ..............................................................16

*Murphy v. Smith,*
　　138 S. Ct. 784 (2018).................................................................................................21

*Norsk Hydro Can., Inc. v. United States,*
　　472 F.3d 1347 (Fed. Cir. 2006)...................................................................................6

*RHI Refractories Liaoning Co. v. United States,*
　　774 F. Supp. 2d 1280 (Ct. Int'l Trade 2011) ..............................................................12

*Sunpreme Inc. v. United States,*
　　892 F.3d 1186 (Fed. Cir. 2018)............................................................................4, 6, 12

*Tokyo Kikai Seisakusho Ltd. v. United States,*
　　529 F.3d 1352 (Fed. Cir. 2008)...................................................................................21

*United States v. Zannino,*
　　895 F.2d 1 (1st Cir. 1990)...........................................................................................19

**Statutes**

19 U.S.C. § 1516a ........................................................................................................6

19 U.S.C. § 1516a(a)(2)(A)(i)(II) ..................................................................................7

19 U.S.C. § 1516a(a)(2)(B)(i) ...................................................................................5, 7

19 U.S.C. § 1677(35)(C)...............................................................................................20

19 U.S.C. § 3512(d) .....................................................................................................20

28 U.S.C. § 1581 ......................................................................................................4, 6

28 U.S.C. § 1581(c) .............................................................................................*passim*

28 U.S.C. § 1581(i) ................................................................................................. *passim*

28 U.S.C. § 1581(i)(1)(B) ................................................................................................. 2

28 U.S.C. § 1581(i)(1)(D) ................................................................................................. 2

**Federal Register Notices**

*Hot-Rolled Steel Flat Products from Turkey; Denial of Request To Institute a Section
751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative
Determination in Investigation No. 731-TA-1296 (Final); Hot-rolled Steel Flat Products
from Turkey*,
    87 Fed. Reg. 73,331 (Int'l Trade Comm'n Nov. 29, 2022) ....................................... 8–9

**Other Authorities**

*Ferrosilicon from Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela*,
    Inv. Nos. 303-TA-23, 731-TA-566–570 and 731-TA-641 and Inv. Nos. 751-TA-21–27
    (Reconsideration), USITC Pub. 3218 (Aug. 1999) ................................................... 22

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act,
    H.R. Rep. No. 103-316, vol. 1 (1994) ............................................................... 19–23

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| _____ ) | |
| ERE**Ğ**LI DEMIR VE **Ç**ELIK FABRIKALARI ) T.A.**Ş**, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| *v.* ) | |
| ) | |
| UNITED STATES INTERNATIONAL ) TRADE COMMISSION, ) | |
| ) | Court No. 22-00349 |
| *Defendant,* ) | |
| ) | |
| *and* ) | |
| ) | |
| CLEVELAND-CLIFFS INC., NUCOR ) CORPORATION, STEEL DYNAMICS, INC., ) and SSAB ENTERPRISES, LLC, ) | |
| ) | |
| *Defendant-Intervenors.* ) | |
| _____ ) | |

**DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF MOTION**
**TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND**
**FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Defendant-Intervenors Cleveland-Cliffs Inc., Nucor Corporation, Steel Dynamics, Inc.,

and SSAB Enterprises, LLC (collectively, "Defendant-Intervenors") respectfully submit this

reply in support of their motion to dismiss the above-captioned action commenced by Plaintiff

Ere**ğ**li Demir ve **Ç**elik Fabrikalari T.A.**Ş**. ("Erdemir"). As demonstrated below, Erdemir's

response to the motion to dismiss fails to establish that this Court possesses jurisdiction under 28

U.S.C. § 1581(i) and fails to show that the amended complaint states a claim upon which relief

can be granted. The Court should therefore dismiss this action with prejudice.

## ARGUMENT

Erdemir filed this appeal under 28 U.S.C. § 1581(i)(1)(B) and (i)(1)(D) to contest the decision of the U.S. International Trade Commission ("Commission") to deny Erdemir's request to reconsider the Commission's negligibility analysis and finding of non-negligibility in the original antidumping duty investigation of hot-rolled steel flat products from Turkey.[1] *See* Erdemir's Am. Compl. ¶¶ 1–3. According to Erdemir, the exclusion of Turkish producer Çolakoğlu Dis Ticaret A.S. ("Çolakoğlu") from the antidumping duty order – which occurred nearly four years after the original investigation when the U.S. Department of Commerce ("Commerce") revised Çolakoğlu's final dumping margin from 6.77 percent to zero percent to comply with a judicial remand order – invalidated the factual underpinnings of the Commission's finding of non-negligibility because the Commission included Çolakoğlu's merchandise when it found that the volume of dumped imports from Turkey was not negligible. *See id.* at 1–2 and ¶¶ 14 and 19. Erdemir alleges that if the Commission were to reconduct the negligibility analysis and exclude exports produced by Çolakoğlu, the antidumping duty investigation with respect to Turkey would have been terminated on negligibility grounds and there would be no antidumping duty order on imports from Turkey. *See id.* The sole count in the amended complaint alleges that "{t}he Commission has the authority to reconsider and correct errors in the AD negligibility determination in the original investigation" and that the Commission "wrongfully declined to reconsider the negligibility decision of its original investigation in light of the retroactive exclusion of Çolakoğlu from the AD order." *Id.* ¶ 38.

---

[1] The factual background relevant to this appeal is set forth in greater detail in Defendant-Intervenors' motion to dismiss. *See* Def.-Intervenors' Mot. to Dismiss at 4–13, ECF No. 53 (July 31, 2023).

Defendant-Intervenors moved to dismiss this action pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction under 28 U.S.C. § 1581(i) because an adequate remedy could have been available under § 1581(c) if Erdemir had timely appealed the Commission's affirmative final determination of material injury and obtained a stay of that appeal pending a final court decision in the parallel appeal of Commerce's final dumping margins. *See* Def.-Intervenors' Mot. to Dismiss at 16–22, ECF No. 53 (July 31, 2023) ("Mot. to Dismiss"). Defendant-Intervenors' motion to dismiss also argued, in the alternative, that Erdemir's amended complaint should be dismissed pursuant to Rule 12(b)(6) because Erdemir's amended complaint fails to raise a plausible claim of entitlement to relief from the Commission's decision not to institute a reconsideration proceeding. *See id.* at 22–26. The Commission agrees with Defendant-Intervenors that this action should be dismissed. *See* Commission's Statement in Supp. of Def.-Intervenors' Mot. to Dismiss, ECF No. 54 (July 31, 2023).

As demonstrated below, Erdemir's response to Defendant-Intervenors' motion to dismiss fails to satisfy its burden of establishing that jurisdiction under 28 U.S.C. § 1581(c) was not available (or that the remedy available under that subsection would have been manifestly inadequate). It also fails to show that the amended complaint raises a plausible claim of entitlement to relief from the Commission's decision not to institute a reconsideration proceeding.

I.     **ERDEMIR HAS FAILED TO ESTABLISH THAT THE COURT POSSESSES JURISDICTION UNDER 28 U.S.C. § 1581(i)**

A.     **The True Nature of This Action Is a Challenge to the Commission's Negligibility Analysis and Finding of Non-Negligibility in the Original Antidumping Duty Investigation**

Erdemir's amended complaint characterizes this action as a challenge to "the Commission's unlawful decision not to conduct a reconsideration proceeding" and alleges that

3

28 U.S.C. § 1581(i) confers this Court with jurisdiction because this type of decision by the Commission is not listed among those that are reviewable under 28 U.S.C. § 1581(c) or any other subsection of § 1581. *See* Erdemir's Am. Compl. ¶ 3. However, as explained in Defendant-Intervenors' motion to dismiss, the Court must "look to the true nature of the action" to determine whether jurisdiction exists. Mot. to Dismiss at 18 (quoting *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193 (Fed. Cir. 2018)). Discerning the true nature of an action filed under the "strictly limited" scope of 28 U.S.C. § 1581(i) is critically important to prevent litigants from improperly using the Court's residual jurisdiction as a vehicle to circumvent the other specific grants of jurisdiction with their own statutorily prescribed paths for judicial review. *See Erwin Hymer Grp. N. Am. v. United States*, 930 F.3d 1370, 1374 (Fed. Cir. 2019).

The true nature of Erdemir's action is a challenge to the Commission's negligibility analysis and finding of non-negligibility in the original investigation, as is evident from Erdemir's allegations that the antidumping duty order should be revoked *ab initio* because the Commission should have excluded Çolakoğlu's merchandise as part of the volume of dumped imports from Turkey in the negligibility analysis and the result would have been termination of the antidumping duty investigation on negligibility grounds. *See* Erdemir's Am. Compl. at 1–3 and ¶¶ 19–20. Indeed, the reason that Erdemir seeks a reconsideration proceeding is to reverse the Commission's finding that the volume of dumped imports from Turkey was not negligible and retroactively terminate the antidumping duty investigation. *See id.* ¶ 29.

Erdemir agrees that looking to the true nature of the action will govern whether jurisdiction is or could have been available under any subsection of 28 U.S.C. § 1581 other than § 1581(i). *See* Erdemir's Am. Opp'n to Mot. to Dismiss at 9, ECF No. 56 Attachment 2 (Oct. 2, 2023) ("Erdemir's Resp."). It asserts, however, that "{t}he true nature of Erdemir's action is a

challenge to the Commissions {*sic*} refusal to initiate a reconsideration proceeding to reconsider the negligibility determination in relation to subject imports from Turkiye *in light of* the successful appeal of Çolakoğlu." *Id.* (emphasis in original and citing Erdemir's Am. Compl. ¶¶ 17–21 and 37–38). But this assertion is belied by the allegations in the amended complaint cited by Erdemir, which claim that the alleged harm is redressable if the Commission were to "correct errors in the AD negligibility determination in the original investigation." Erdemir's Am. Compl. ¶ 38.

What Erdemir ultimately seeks is a retroactive termination of the antidumping duty investigation and revocation of the order because, according to Erdemir, the factual underpinnings of the Commission's finding of non-negligibility in the original investigation were rendered invalid when Commerce revised Çolakoğlu's dumping margin from 6.77 percent to zero percent and excluded Çolakoğlu from the antidumping duty order. The source of the alleged harm is the inclusion of Çolakoğlu's merchandise as part of the volume of dumped imports from Turkey in the negligibility analysis. Thus, the true nature of Erdemir's action is a challenge to the Commission's negligibility analysis and finding of non-negligibility in the original investigation. *See Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1360–61 (Fed. Cir. 2016) (analyzing the source of the alleged harm and relief sought to discern the true nature of the action).

Judicial review of the Commission's affirmative final determination of material injury, including any factual findings or legal conclusions upon which that determination was based (*e.g.*, negligibility findings), falls squarely within 28 U.S.C. § 1581(c). *See* 19 U.S.C. § 1516a(a)(2)(B)(i) (listing "{f}inal affirmative determinations by … the Commission" in antidumping duty investigations among the types of reviewable determinations under 28 U.S.C.

§ 1581(c)). As further discussed below, the availability of an adequate remedy under 28 U.S.C.

§ 1581(c) precludes the Court from exercising jurisdiction over this action pursuant to 28 U.S.C.

§ 1581(i). The Court should reject Erdemir's attempts to expand the scope of 28 U.S.C. § 1581(i)

by creative pleading, *see Sunpreme Inc.*, 892 F.3d at 1193 (quoting *Norsk Hydro Can., Inc. v.*

*United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006)), and conclude that the true nature of this

action is a challenge to the Commission's negligibility analysis and finding of non-negligibility

in the original investigation.

> **B.** **Jurisdiction Under 28 U.S.C. § 1581(c) Could Have Been Available and the Remedy Provided Would Not Have Been Manifestly Inadequate**

Erdemir has not properly invoked this Court's residual jurisdiction under 28 U.S.C.

§ 1581(i). Jurisdiction under 28 U.S.C. § 1581(i) "may not be invoked when jurisdiction under

another subsection of § 1581 is or *could have been available*, unless the remedy provided under

that other subsection would be manifestly inadequate." *Erwin Hymer*, 930 F.3d at 1374–75. The

plaintiff asserting jurisdiction under 28 U.S.C. § 1581(i) "bears the burden of showing that

another subsection is either unavailable or manifestly inadequate." *Id.* at 1375 (citation omitted).

Erdemir has failed to satisfy its burden of demonstrating that jurisdiction under 28 U.S.C.

§ 1581(c) could not have been available or that the remedy available under § 1581(c) was

manifestly inadequate.

> **1.** **Erdemir Could Have Followed the Statutorily Prescribed Path for Judicial Review Under 28 U.S.C. § 1581(c) to Pursue the Relief Sought in This Action**

Erdemir alleges in its amended complaint that "{t}he decision by the Commission not to

conduct a reconsideration proceeding is not listed under 19 U.S.C. §§ 1516a or 1517, and thus

jurisdiction here does not arise under 28 U.S.C. § 1581(c)." Erdemir's Am. Compl. ¶ 3.

However, Erdemir's reading of the statute is fundamentally flawed because it is based on an

incorrect characterization of the true nature of this action. As explained above, the true nature of Erdemir's action is a challenge to the Commission's negligibility analysis and finding of non-negligibility in the original investigation. An affirmative final determination of material injury is listed in 19 U.S.C. § 1516a(a)(2)(B)(i) as a determination that is reviewable under 28 U.S.C. § 1581(c). Accordingly, Erdemir could have pursued the relief it seeks in this action by timely appealing the Commission's original injury determination under 28 U.S.C. § 1581(c).

Defendant-Intervenors' motion to dismiss provided a step-by-step walkthrough of the jurisdictional path that Erdemir was required to follow to pursue the relief that it now seeks in this action. *See* Mot. to Dismiss at 18–19. Specifically, Erdemir could have appealed the Commission's final determination in the original investigation within the statutorily prescribed period, which was within thirty days after October 3, 2016 (*i.e.*, the date of publication of the antidumping duty order). *See* 19 U.S.C. § 1516a(a)(2)(A)(i)(II). Filing an appeal of the Commission's final determination in the original investigation would have prevented that determination and the finding of non-negligibility from becoming final and conclusive on all parties. That appeal could have been stayed at Erdemir's request pending the outcome in Erdemir and Çolakoğlu's appeal of Commerce's final dumping margins. Once there was a final court decision in the parallel Commerce appeal, the Court presiding over the appeal of the Commission's final determination could have issued a remand order instructing the Commission to reconsider its negligibility analysis without including Çolakoğlu's merchandise as part of the volume of dumped imports from Turkey.

Erdemir did not follow the statutorily prescribed path for judicial review under 28 U.S.C. § 1581(c). Consequently, the Commission's injury determination (including the finding of non-negligibility with respect to Turkey) became final and conclusive on all parties seven years ago

when the time to file an appeal expired on November 2, 2016 (*i.e.*, thirty days after the publication of the antidumping duty order). In denying Erdemir's request for reconsideration, the Commission explained that "Erdemir did not appeal the Commission's final affirmative material injury determination which would have provided it with the opportunity to preserve its rights for further reconsideration of the merits based on the outcome of Commerce's appeal." *Hot-Rolled Steel Flat Products from Turkey; Denial of Request to Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731-TA-1296 (Final); Hot-Rolled Steel Flat Products from Turkey*, 87 Fed. Reg. 73,331, 73,333 (Int'l Trade Comm'n Nov. 29, 2022) ("*Denial of Request for CCR and Reconsideration Proceeding*").

Erdemir contends that following the steps outlined above for jurisdiction under 28 U.S.C. § 1581(c) was not an available option to pursue the relief sought in the instant action. *See* Erdemir's Resp. at 7–17. Erdemir's position is untenable and would inappropriately expand the scope of the Court's residual jurisdiction under 28 U.S.C. § 1581(i). Indeed, accepting Erdemir's position would excuse litigants of their failure to take timely action to preserve their rights by following the statutorily prescribed paths for judicial review and would grant litigants who slept on their rights a second bite at the apple. In other words, accepting Erdemir's position would go against binding precedent that prohibits using 28 U.S.C. § 1581(i) as a vehicle to circumvent the other specific grants of jurisdiction. *See Erwin Hymer*, 930 F.3d at 1374.

Erdemir repeatedly states that the request for reconsideration was made "in light of" Çolakoğlu's exclusion from the antidumping duty order, because Erdemir considers it important that Çolakoğlu's exclusion from the order was not known at the time of the original investigation. *See* Erdemir's Resp. at 7–11. The timing of Çolakoğlu's exclusion from the order

is irrelevant when deciding whether jurisdiction is or could have been available under any subsection other than 28 U.S.C. § 1581(i). *Cf. ARP Materials, Inc. v. United States*, 47 F.4th 1370, 1379 (Fed. Cir. 2022) ("That Customs' classification decisions became erroneous after USTR granted retroactive exclusions is irrelevant. The obligation to protest a Customs classification error does not turn on whether it was erroneous *ab initio* or became erroneous because of retroactive administrative action. It instead turns on whether Customs' classification of the importers' entries were protestable 'decisions' under 19 U.S.C. § 1514, and we hold that these classifications were such protestable 'decisions.'"). As a plaintiff in the litigation that resulted in Çolakoğlu's exclusion from the order, Erdemir had knowledge that a successful appeal of Commerce's final dumping margins could result in a negligible volume of dumped imports. Erdemir does not deny that it knew the implications of a successful appeal of Commerce's final dumping margins. The Commission also noted this fact, stating that "{t}he potential impact on Erdemir at the time that Erdemir and Colakoglu appealed Commerce's final antidumping duty determination was known to Erdemir at the time." *Denial of Request for CCR and Reconsideration Proceeding*, 87 Fed. Reg. at 73,333. Thus, Erdemir could have timely appealed the Commission's affirmative final determination of material injury under 28 U.S.C. § 1581(c) to preserve any claim of relief from the Commission's negligibility analysis and finding of non-negligibility.

Contrary to Erdemir's contentions, a timely appeal of the Commission's injury determination would not have been moot or frivolous merely because the possibility of obtaining relief would depend upon the outcome in a parallel appeal of Commerce's final dumping margins. *See* Erdemir's Resp. at 11; *see also id.* at 13 (arguing that any such claim "would have been moot from the start"). This Court has previously explained that "the lawfulness of an

agency determination may hinge upon the outcome of separate litigation." *Diamond Sawblades Mfrs' Coalition v. United States*, Court No. 13-00168, 2015 WL 4978726, at *9 (Ct. Int'l Trade Aug. 20, 2015). In *Encon Indus., Inc. v. United States*, the Court faced facts similar to those presented here and rejected the notion that a litigant cannot file an appeal with a claim that has a chance of success based on the outcome of a separate appeal, stating the following:

> Encon argues that it could not have brought its claim during the original litigation. Encon alleges that its claim arose only after publication of the amended order resulting in the exclusion of one company from the antidumping order and consequently elimination of its volume of imports from the volumes previously relied upon by ITC. Encon argues that before that time "there were no facts or evidence in existence that could have supported this claim." Pl.'s Resp. Br. to ITC's Rule 12(b)(1) Mot., at 7. This of course ignores the fact that parties can and do challenge ITC's actions on the basis of errors in the information furnished to it by Commerce. *See, e.g.*, *Borlem S.A. v. United States*, 13 CIT 535, 718 F. Supp. 41 (1989). It may be that in such cases the ITC litigation must be stayed in order for the plaintiff to have the maximum chance of success, but such stays have been granted. *See, e.g.*, *Hyundai Elecs. Indus. v. United States*, Ct. No. 93-06-00319 (complaint alleging volume error (July 8, 1993); stay order issued pending resolution of other action (Sept. 13, 1993)).

Court Nos. 94-04-00189 and 94-145, 1994 WL 520917, at *2 (Ct. Int'l Trade Sept. 19, 1994). It is thus a longstanding principle that a litigant may file an appeal in this Court to preserve their right to relief on a claim against a determination by the Commission that is dependent on a favorable outcome in a separate appeal of a determination by Commerce.

If Erdemir timely appealed the Commission's injury determination in the original investigation, a claim against the Commission's negligibility analysis and finding of non-negligibility would not have been speculative as Erdemir suggests. Erdemir's Resp. at 11 and 13. Erdemir itself asserts elsewhere in its brief that "{n}egligibility is purely a numbers question" and simply a matter of whether Çolakoğlu's merchandise should or should not have been included in the volume of dumped imports that the Commission considered in its negligibility analysis. *Id.* at 10–11.

More specifically, Erdemir states that in the parallel countervailing duty investigation, "Commerce found … that Çolakoğlu was not subsidized, the Commission consequently excluded Çolakoğlu's imports from its negligibility analysis, found subject CVD imports from Turkiye negligible and thus non-injurious, and terminated the CVD investigation." *Id.* at 2. Based on the outcome in the companion countervailing duty investigation, Erdemir says that the same chain of events would have occurred in the antidumping duty investigation if Commerce originally found that Çolakoğlu did not export subject merchandise at dumped prices during the period of investigation and the Commission excluded Çolakoğlu's merchandise from the volume of dumped imports from Turkey that was considered in the negligibility analysis. *Id.* at 1–2. Erdemir further states that it is "indisputable" that dumped imports from Turkey would have been negligible if the Commission did not include Çolakoğlu's merchandise in the negligibility analysis "because the parallel events happened in the countervailing duty … investigation." *Id.* at 2. According to Erdemir, the termination of the Commission's countervailing duty investigation on negligibility grounds made it clear how a decision favorable to the Turkish respondents in the parallel appeal of Commerce's final dumping margins (*i.e.*, a *de minimis* or zero percent dumping margin for Çolakoğlu) would have affected the Commission's antidumping duty investigation. Thus, contrary to Erdemir's assertions otherwise, a claim against the Commission's finding of non-negligibility in a timely appeal of the injury determination would not have been speculative such that the claim would have been considered nonjusticiable or frivolous.

### 2. Erdemir Has Not Shown that the Remedy Available Under 28 U.S.C. § 1581(c) Was Manifestly Inadequate

Erdemir argues that it could not possibly have availed itself of the remedy under 28 U.S.C. § 1581(c) because "{a} stay in the scenario DIPs presented was not possible" and

"without a stay … jurisdiction under section 1581(c) would have been manifestly inadequate." Erdemir's Resp. at 14. The burden lies with Erdemir to demonstrate that the available remedy under 28 U.S.C. § 1581(c) would have been manifestly inadequate, which requires a showing that pursuing the predicate steps for that available remedy would have been an "exercise in futility, or 'incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain.'" *Sunpreme Inc.*, 892 F.3d at 1193–94 (quoting *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1295 (Fed. Cir. 2008)). Erdemir has not satisfied its burden here. Deciding whether a case should be stayed lies "'within the sound discretion of the trial court.'" *RHI Refractories Liaoning Co. v. United States*, 774 F. Supp. 2d 1280, 1284 (Ct. Int'l Trade 2011) (quoting *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997)). Given the discretionary nature of a stay, Erdemir cannot say that the Court would not have granted a stay at Erdemir's request in a timely appeal of the Commission's injury determination. Timely filing an appeal of the Commission's injury determination and seeking a stay could have provided Erdemir with a remedy and that remedy was not "manifestly inadequate."

In fact, Erdemir's assertions regarding the availability of jurisdiction and the likelihood of obtaining a stay are refuted by actual appeals of Commission determinations that were timely filed under 28 U.S.C. § 1581(c) and then subsequently stayed pending the final court decision in a separately filed appeal of a Commerce determination. Defendant-Intervenors' motion to dismiss provided an example of a stay in appeals involving the 2013–2014 antidumping duty investigations of oil country tubular goods ("OCTG") from various countries. *See* Mot. to Dismiss at 20. Domestic producers followed the statutorily prescribed path and brought actions under 28 U.S.C. § 1581(c) to challenge determinations made by both Commerce and the

Commission (including the finding of negligibility with respect to the Philippines and Thailand after imports from Saudi Arabia were excluded from the analysis) and then obtained a stay in the appeal of the Commission's determination pending the final court decision in the parallel appeal of Commerce's negative final determination with respect to Saudi Arabia. *Id.*

Erdemir dismisses the example from the OCTG investigations as inapposite because the motion for a stay was filed with the consent of all parties in the appeal of the Commission's determination, the respondent from Saudi Arabia did not express concerns with the length of the stay because no antidumping duty order was issued, and the Court granted the stay without an opinion. *See* Erdemir's Resp. at 16. Erdemir divines that the situation would not have been the same and a request for a stay would have been denied had it pursued the available remedy under 28 U.S.C. § 1581(c). However, Erdemir's assumptions about how the Court *might* have ruled on a request for a stay fall far short of demonstrating that the remedy available under 28 U.S.C. § 1581(c) was manifestly inadequate.

Erdemir suggests that the Court would not have granted a stay if domestic producers participated in the appeal and opposed the request. *See id.* It bears repeating that Erdemir is in no position to assume how domestic producers would have responded and how the Court would have ruled on a request for a stay. Even if domestic producers opposed a stay, the Court would have been well within its discretion to decide that a stay was appropriate and to issue a stay order, notwithstanding that opposition. When the Court weighs the competing interests, opposition from any party in the litigation is only one of many considerations.

Erdemir's citation to *LG Electronics, Inc. v. U.S. Int'l Trade Comm'n* does not show otherwise. *See* Erdemir's Resp. at 16 (citing *LG Electronics, Inc. v. U.S. Int'l Trade Comm'n*, Consol. Court No. 13-00100, 2014 WL 260603 (Ct. Int'l Trade Jan. 23, 2014) (denying motion

to sever claim and stay severed claim)); *see also LG Electronics, Inc. v. U.S. Int'l Trade Comm'n*, 37 C.I.T. 1589 (2013) (denying motion to stay). In *LG Electronics*, the plaintiffs contested the Commission's affirmative final determination of material injury in the antidumping and countervailing duty investigations of large residential washers from Korea. The plaintiffs also appealed Commerce's final antidumping and countervailing duty determinations in two separate actions. The plaintiffs requested a stay of the appeal of the Commission's injury determination because it could have been affected by the outcome in the parallel appeals of Commerce's determinations. The Commission and the intervening domestic party opposed the stay.

While the Court denied the plaintiffs' request for a stay, it was not because the request was opposed by the Commission and the intervening domestic party. Instead, the Court denied the plaintiffs' request based on the speculative nature of the plaintiffs' claim in that it required a dramatic reduction in the dumping margins and subsidy rates for one or both of the Korean producers *and* assumed that the reduced dumping margins and subsidy rates would have affected the Commission's material injury determination. *LG Electronics*, 37 C.I.T. at 1590–93. The Court concluded that a stay was not appropriate because the plaintiffs "fail{ed} to show a clear non-speculative nexus between the possible outcome in the related Commerce Department Cases and the instant case." *Id.* at 1593. In other words, the possibility that the lawfulness of the Commission's *impact analysis* might be affected by the outcome of the separate appeals of Commerce's determinations was too speculative. The Commission is directed by statute to consider various economic factors in its impact analysis, and the rates determined by Commerce are only one of the many considerations in that analysis. *See* 19 U.S.C. § 1677(7)(B)–(C). Here, however, Erdemir wishes to contest the Commission's *negligibility analysis* and, as Erdemir

itself states, "{n}egligibility is purely a numbers question." Erdemir's Resp. at 10. Erdemir's

claim is not like the speculative claim in *LG Electronics* because, as discussed above, Erdemir

itself asserts that the Commission's negligibility analysis in the companion countervailing duty

investigation left no doubt that excluding Çolakoğlu's merchandise from the antidumping duty

investigation would also have resulted in a finding that the volume of dumped imports from

Turkey was negligible.

Regardless, there is at least one example of this Court granting a contested request for a

stay that is more recent than *LG Electronics* and more similar to the situation presented in this

appeal. Specifically, domestic producer DuPont Teijin Films brought an action under 28 U.S.C.

§ 1581(c) following the first sunset review of the antidumping duty orders on polyethylene

terephthalate ("PET") film from Brazil, China, and the United Arab Emirates to challenge the

Commission's determination that revocation of the order on imports from Brazil would not likely

lead to continuation or recurrence of material injury. *See DuPont Teijin Films v. United States*,

Court No. 15-00048, 2015 WL 5024950, at *1–3 (Ct. Int'l Trade Aug. 26, 2015). In reaching its

determination, the Commission did not cumulate imports from Brazil with those from China and

the United Arab Emirates, and that decision was based largely on a ruling from Commerce that

concluded the scope of the order did not cover certain products produced by Brazilian

manufacturer Terphane Ltda. *See id.* (explaining that Commerce's out-of-scope determination

underpinned the Commission's decision not to cumulate Brazilian imports and led to a negative

determination). Commerce's scope ruling was also appealed. *See id.* at 1. While the Commission

treated Terphane Ltda.'s merchandise as non-subject merchandise in its cumulation analysis, the

appeal of Commerce's scope ruling left open the possibility that Commerce's ruling could be

reversed and that Terphane Ltda.'s merchandise could be covered by the scope of the antidumping duty order.

DuPont Teijin Films requested a stay of the appeal of the Commission's final determination in the sunset review pending the outcome in the separate appeal of Commerce's scope ruling. *See id.* The Court weighed the competing interests, including opposition from intervenor Terphane Ltda., and determined that staying the appeal of the Commission's final determination in the sunset review was appropriate. The Court explained that "the validity of the Scope Ruling is central" to the claims raised by DuPont Teijin Films and staying the appeal "would best conserve the resources of the court and parties, as well as preclude the issuance of conflicting judgments." *Id.* at 5. Three years later, the appeal was voluntarily dismissed after the Court sustained Commerce's ruling that Terphane Ltda.'s merchandise was not covered by the scope of the order. *See* Voluntary Dismissal Order, *DuPont Teijin Films v. United States*, Court No. 15-00048, ECF No. 35 (Ct. Int'l Trade Sept. 5, 2018); *see also Mitsubishi Polyester Film, Inc. v. United States*, 321 F. Supp. 3d 1298 (Ct. Int'l Trade 2018). Like in *DuPont Teijin Films*, Erdemir's appeal challenges the Commission's injury determination on the basis of alleged errors in the information furnished to it by Commerce (*i.e.*, Çolakoğlu's final dumping margin) that caused the Commission to include Çolakoğlu's merchandise in its negligibility analysis.

In light of the examples of appeals relating to the OCTG investigations and the PET film sunset reviews, Erdemir cannot show that the Court uniformly denies even contested requests to stay appeals of determinations by the Commission when such determinations were made in reliance on determinations by Commerce that have also been appealed. Erdemir's unsupported assumption that the Court would have denied a request for a stay is not nearly enough to show that the remedy available under 28 U.S.C. § 1581(c) was manifestly inadequate.

**3.      By Not Timely Appealing the Commission's Original Injury Determination, Erdemir Has Lost the Possibility for Reconsideration of the Commission's Negligibility Analysis**

Finally, Erdemir complains that the Commission has denied each approach Erdemir has taken to undo the finding of non-negligibility (*i.e.*, requesting a reconsideration proceeding, requesting a changed circumstances review, and requesting reconsideration in the context of the sunset review). *See* Erdemir's Resp. at 3–4. Erdemir incorrectly accuses Defendant-Intervenors and the Commission of wanting it "both ways" and baldly asserts that the Commission was required to grant either the request for a changed circumstances review or the request for reconsideration.[2] *Id.* at 20. The Commission was under no such obligation and cannot be faulted for Erdemir's failure to follow the prescribed jurisdictional path under 28 U.S.C. § 1581(c). Erdemir has only itself to blame for hitting a dead end at this juncture, because it lost the possibility of relief by not timely appealing the Commission's final determination in the original investigation. The remedy that was available under 28 U.S.C. § 1581(c) is not inadequate simply because Erdemir slept on its rights and did not appeal the Commission's final determination in the original investigation within the statutorily prescribed period. *See ARP Materials*, 47 F.4th at

---

[2] This Court is presiding over another appeal filed by Erdemir, which was brought under 28 U.S.C. § 1581(c) to contest the Commission's decision not to institute a changed circumstances review. *See Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*, Court No. 22-00350. The Commission has moved to dismiss that appeal for lack of subject matter jurisdiction, arguing that Erdemir's complaint does not present a justiciable case or controversy as required by Article III of the Constitution because any claim for relief relating to the Commission's decision not to institute a changed circumstances review was rendered moot when the Commission decided to conduct a full sunset review of the antidumping duty order. *See* Def.'s Mot. to Dismiss and Supp. Mem. at 12–17, *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*, Court No. 22-00350, ECF No. 38 (Ct. Int'l Trade May 18, 2023). The Commission's motion to dismiss alternatively argues that the appeal should be dismissed for failure to state a claim upon which relief can be granted because the Commission's authority to institute and conduct changed circumstances reviews is prospective in nature and does not authorize the type of retroactive relief that Erdemir seeks. *See id.* at 17–20.

1379 (quoting *Carbon Activated Corp. v. United States*, 6 F. Supp. 3d 1378, 1380 (Ct. Int'l

Trade 2014), *aff'd*, 791 F.3d 1312 (Fed. Cir. 2015)).

\*    \*    \*

In sum, Erdemir has not properly invoked this Court's residual jurisdiction under 28

U.S.C. § 1581(i) because jurisdiction under § 1581(c) could have been available if Erdemir

timely appealed the Commission's final determination in the original investigation and the

remedy would not have been manifestly inadequate. This action should therefore be dismissed

for lack of subject matter jurisdiction.

## II.    ERDEMIR HAS FAILED TO SHOW THAT THE AMENDED COMPLAINT STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even if the Court concludes that Erdemir has satisfied its burden of demonstrating that

jurisdiction is proper under 28 U.S.C. § 1581(i), this action should still be dismissed because

Erdemir's amended complaint fails to state a claim upon which relief can be granted. As

Defendant-Intervenors explained in their motion to dismiss, the Commission did not err in the

original investigation when it found that dumped imports from Turkey were not negligible, the

finding of non-negligibility became final when no interested party timely appealed, and the

Commission is statutorily precluded from instituting a reconsideration proceeding on these facts.

*See* Mot. to Dismiss at 22–26. In response, Erdemir argues that the Court can provide the relief

requested in this action because the Commission's reconsideration authority extends to situations

where Commerce recalculates final dumping margins to *de minimis* or zero as a result of

litigation. *See* Erdemir's Resp. at 17–23. However, Erdemir is unable to point to anything in the

statutory text, the legislative history, or caselaw that supports its view that Congress intended

that the Commission reconsider its injury determinations under the circumstances presented here.

Quite the opposite, all the legal authorities make it clear that recalculated dumping margins

should not disturb the finality of the Commission's injury determinations and cannot serve as a basis for reconsideration.

The Commission's reconsideration authority is reserved for "extraordinary circumstances." *See* Mot. to Dismiss at 12 and 24. Although Erdemir asserts that Çolakoğlu's exclusion from the order qualifies as the type of "extraordinary circumstance" that the Commission should consider to be a legitimate basis for reconsideration of a past determination, it provides no support to show why that is the case. *See* Erdemir's Resp. at 7. The Court need not consider this undeveloped argument. *See Home Prods. Int'l, Inc. v. United States*, 837 F. Supp. 2d 1294, 1301 (Ct. Int'l Trade 2012) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("{I}ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.")). In any event, the Commission has reasonably defined an "extraordinary circumstance" to be limited to situations involving fraud or other facts that strike at the heart of the integrity of the proceeding. Expanding the definition of "extraordinary circumstance" to include the factual circumstances presented in this case would result in *ultra vires* agency action. Indeed, the Commission is precluded from instituting a reconsideration proceeding and disturbing the finality of its final determination in the original investigation based on a court-ordered modification to Çolakoğlu's dumping margin resulting in the company's exclusion from the order. *See* Mot. to Dismiss at 24–26.

The authoritative legislative history in the Statement of Administrative Action accompanying the Uruguay Round Agreements Act ("SAA") clearly and unambiguously precludes the Commission from reconsidering its final determination under the factual

circumstances presented here. *See* SAA, H.R. Rep. No. 103-316, at 850–51 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4184.[3] Despite this legislative history, Erdemir inexplicably concludes based on an illogical and absurd reading of the SAA that "Congress intended that the Commission reconsider its original injury determination when Commerce on appeal from the investigation recalculates margins to *de minimis* or zero." Erdemir's Resp. at 18. Erdemir accuses Defendant-Intervenors of misrepresenting the legislative history, but it is Erdemir that asks the Court to adopt a gross misreading of the SAA that ignores the clear limits that Congress placed on the Commission's reconsideration authority.

Erdemir glosses over the SAA language that unequivocally states that the purpose of adding 19 U.S.C. § 1677(35)(C) was to "preclude{} challenges to a Commission determination on the basis that Commerce later modifies the original dumping margin" because, "{a}bsent this provision, Commission determinations could be subject to repeated requests for reconsideration or judicial remands" and "{t}he finality of injury determinations would be seriously compromised if the Commission were required to amend or revisit its determination each time the administrative authority modified its dumping margin." SAA, H.R. Rep. No. 103-316, at 851 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4184. Congress has spoken and established that the Commission is not authorized to institute a reconsideration proceeding and disturb the finality of its original injury determination on the basis of modifications to the dumping margins. As Congress made clear, the interest in finality for injury determinations is paramount in situations like that presented here.

---

[3] By statute, the SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

Erdemir appears to acknowledge that Congress expressed a "general rule" against reconsideration of injury determinations when Commerce makes a change to the original dumping margins. *See* Erdemir's Resp. at 18. Nevertheless, Erdemir relies on the SAA language that permits the Commission to "conduct a changed circumstances review of its determination pursuant to Section 751(b) on the basis of recalculations by Commerce of the dumping margin in the original investigation, if the party seeking such review establishes that it is warranted." SAA, H.R. Rep. No. 103-316, at 851 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4184. Even though this language explicitly refers to the Commission's statutory authority to conduct a changed circumstances review pursuant to 19 U.S.C. § 1675(b), Erdemir somehow concludes that the SAA "approves the Commission's reconsideration of its determination 'on the basis of recalculations by Commerce of the dumping margin in the original investigation.'" Erdemir's Resp. at 20. The SAA language regarding the Commission's authority to conduct a changed circumstances review on the basis of recalculated dumping margins cannot possibly be construed as authorization for the Commission to conduct a reconsideration proceeding. *See Murphy v. Smith*, 138 S. Ct. 784, 787–88 (2018) ("{R}espect for Congress's prerogatives as policymaker means carefully attending to the words it chose rather than replacing them with others of our own.").

While Erdemir is correct that the Commission, like other agencies, has inherent reconsideration authority, "an agency obviously lacks power to reconsider where a statute forbids the exercise of power." *Tokyo Kikai Seisakusho Ltd. v. United States*, 529 F.3d 1352, 1361 (Fed. Cir. 2008). The Commission lacked the authority to grant Erdemir's request to reconsider its original injury determination based on Çolakoğlu's revised zero percent dumping margin and exclusion from the antidumping duty order. Erdemir's blatant misreading of the SAA

21

ignores the clear and unambiguous limit that Congress placed on the Commission's reconsideration authority.

The court decisions Erdemir cites are unavailing because they either recognize that an agency's reconsideration authority is subject to limitations, involve a situation in which "extraordinary circumstances" were present, or discuss an agency's reconsideration authority when the determination was not final and conclusive on all parties because it was subject to an ongoing appeal. *See* Erdemir's Resp. at 21–22; *see also Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.*, 839 F.3d 1382, 1385 (Fed. Cir. 2016) ("{A}dministrative agencies possess inherent authority to reconsider their decisions, *subject to certain limitations*, regardless of whether they possess statutory authority to do so." (emphasis added)); *Borlem S.A.- Empreedimentos Industriais v. United States*, 913 F.2d 933, 938 (Fed. Cir. 1990) (prior to the SAA, holding that the Commission had authority to reconsider its threat of material injury determination *when directed to do so by court order on judicial remand*); *Elkem Metals Co. v. United States*, 193 F. Supp. 2d 1314, 1319–21 (Ct. Int'l Trade 2002) (holding that the Commission had the authority to reconsider its injury determination *based on evidence of a fraudulent price-fixing conspiracy that affected domestic prices*);[4] *Consolidated Fibers, Inc. v. United States*, 574 F. Supp. 2d 1371, 1381 (Ct. Int'l Trade 2008) ("Amended margins found by Commerce on remand may warrant a remand to the Commission *in a related appeal* if the

---

[4] Defendant-Intervenors note that *Elkem Metals Co.* was an appeal of the Commission's decision to reconsider its material injury determination in the antidumping and countervailing duty investigations of ferrosilicon from Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela. *See Ferrosilicon from Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela*, Inv. Nos. 303-TA-23, 731-TA-566–570 and 731-TA-641 and Inv. Nos. 751-TA-21–27 (Reconsideration), USITC Pub. 3218 (Aug. 1999). Defendant-Intervenors referenced this reconsideration proceeding in their motion to dismiss to explain that criminal convictions for price fixing that distorted domestic ferrosilicon prices constituted the type of "extraordinary circumstance" that strikes at the heart of the integrity of the administrative process. *See* Def.-Intervenors' Mot. to Dismiss at 24 n.4.

amended margins 'may be determinative' and have been finalized ...." (emphasis added)). The SAA directly speaks to the specific factual circumstances presented here and precludes reconsideration of the Commission's final injury determination on the basis of Çolakoğlu's revised zero percent dumping margin and exclusion from the order. The express intent of Congress in the SAA language would be rendered a nullity if this action were to proceed and risk disturbing the finality of the Commission's injury determination in the original investigation.

## <u>CONCLUSION</u>

For the reasons set forth in Defendant-Intervenors' motion to dismiss and this reply brief, the Court should dismiss this action for lack of subject matter jurisdiction under 28 U.S.C. § 1581(i) or, alternatively, for failure to state a claim upon which relief can be granted.


Respectfully submitted,


<table>
<tr><td><i>/s/ Jeffrey D. Gerrish</i></td><td><i>/s/ Alan H. Price</i></td><td><i>/s/ Stephen P. Vaughn</i></td></tr>
<tr><td>Roger B. Schagrin, Esq.<br>Jeffrey D. Gerrish, Esq.<br>Saad Y. Chalchal, Esq.*</td><td>Alan H. Price, Esq.<br>Christopher B. Weld, Esq.<br>Theodore P. Brackemyre, Esq.</td><td>Stephen P. Vaughn, Esq.<br>Neal Reynolds, Esq.<br>Barbara Medrado, Esq.</td></tr>
<tr><td><b>SCHAGRIN ASSOCIATES</b><br>900 7th Street, NW, Suite 500<br>Washington, DC 20001<br>(202) 223-1700</td><td><b>WILEY REIN LLP</b><br>2050 M Street, NW<br>Washington, DC 20036<br>(202) 719-7000</td><td><b>KING & SPALDING LLP</b><br>1700 Pennsylvania Ave., NW<br>Washington, DC 20006<br>(202) 737-0500</td></tr>
<tr><td><i>Counsel to Steel Dynamics, Inc.<br>and SSAB Enterprises, LLC</i></td><td><i>Counsel to Nucor Corporation</i></td><td><i>Counsel to Cleveland-Cliffs Inc.</i></td></tr>
</table>


Dated:  November 3, 2023

---

* Only admitted in New York and New Jersey. Practice limited to matters before federal courts and agencies.

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing reply brief contains 6,913 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth in this Court's Chamber's Procedures. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the reply brief.

Dated: November 3, 2023

Jeffrey D. Gerrish