Slip Op. 24-81

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş.,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES INTERNATIONAL TRADE COMMISSION,** | Before: Timothy M. Reif, Judge |
| Defendant, | Court No. 22-00349 |
| and | |
| **CLEVELAND-CLIFFS INC., NUCOR CORPORATION, STEEL DYNAMICS, INC. and SSAB ENTERPRISES, LLC,** | |
| Defendant-Intervenors. | |

## <u>OPINION</u>

[Granting defendant-intervenor's motion to dismiss.]

Dated:  July 22, 2024

<u>David L. Simon</u>, Law Offices of David L. Simon, PLLC, of Washington, D.C., argued for plaintiff Ereğli Demir ve Çelik Fabrikaları T.A.Ş.  With him on the brief was <u>Mark B. Lehnardt</u>.

<u>Frank H. Morgan</u>, Attorney-Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, D.C., argued for defendant U.S. International Trade Commission.  With him on the brief were <u>Andrea C. Casson</u>, Assistant General Counsel for Litigation, and <u>Michael K. Haldenstein</u>, Attorney-Advisor.

<u>Jeffrey D. Gerrish</u>, Schagrin Associates, of Washington, D.C., argued for defendant-intervenors.  With him on the brief were <u>Roger B. Schagrin</u> and <u>Saad Y. Chalchal</u>, Schagrin Associates, of Washington, D.C., for defendant-intervenors Steel Dynamics, Inc. and SSAB Enterprises, LLC, <u>Alan H. Price</u>, <u>Christopher B. Weld</u>, and <u>Theodore P. Brackemyre</u>, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor Nucor

Corporation, and <u>Stephen P. Vaughn</u>, <u>Neal Reynolds</u>, and <u>Barbara Medrado</u>, King & Spalding LLP, of Washington, D.C., for defendant-intervenor Cleveland-Cliffs Inc.

      Reif, Judge:  Before the court is defendant-intervenors' motion to dismiss plaintiff's complaint.  Def.-Intervenors' Mot. to Dismiss ("Def.-Intervenors Br."), ECF No. 53.  Plaintiff Ereğli Demir ve Çelik Fabrikaları T.A.Ş. ("plaintiff" or "Erdemir") invokes this Court's subject matter jurisdiction under 28 U.S.C. § 1581(i)(1)(B) and (D), alleging that plaintiff has been "adversely affected or aggrieved" by the decision of the U.S. International Trade Commission (the "Commission") to deny plaintiff's request for a reconsideration proceeding.[1]  Am. Compl. ¶ 3, ECF No. 14.  Plaintiff states that the Commission's decision relates to "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," and the "administration and enforcement" of those duties.  *Id.* (citing U.S.C. § 1581(i)(1)(B) and (D)).  *Id.* Defendant-intervenors respond that (1) this court lacks subject matter jurisdiction over plaintiff's claims under § 1581(i) and (2) even if the court did have jurisdiction, plaintiff has failed to state a claim upon which relief can be granted.  Def.-Intervenors Br. at 3-4.

      The court concludes that it lacks subject matter jurisdiction over the instant action.  An adequate remedy was available to plaintiff to challenge the final determination of the Commission.  Plaintiff did not avail itself of that remedy.  Now,

---

[1] The Commission filed a statement in support of defendant-intervenors' motion to dismiss, in which the Commission agreed with the position of defendant-intervenors that this case should be dismissed.  Statement in Support of Def.-Intervenors' Mot. to Dismiss, ECF No. 54.  According to the Commission at oral argument, defendant-intervenors "had said everything that needed to be said and the Commission as an institution wanted to support that view but not separately file a motion."  Oral Arg. Tr. at 34:6-9, ECF No. 71.  The court considers it unusual — to say the least — that a government agency against which an action has been filed has declined to file its own motion to dismiss.

plaintiff would have the court act to expand the scope of the court's residual jurisdiction to fashion a remedy that the law does not provide.  The court declines, as it must, to do so.

## BACKGROUND

**I.    The final determination of the Department of Commerce of sales at less than fair value and the Commission's final affirmative determination of material injury**

In August and September 2015, the United States Department of Commerce ("Commerce") initiated and the Commission instituted investigations in response to petitions filed on behalf of the domestic industry requesting the imposition of antidumping and countervailing duties on imports of hot-rolled steel flat products from various countries (including Turkey).  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 80 Fed. Reg. 50,028 (ITC Aug. 18, 2015); *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Initiation of Less-Than-Fair-Value Investigations*, 80 Fed. Reg. 54,261 (Dep't of Commerce Sept. 9, 2015); *Certain Hot-Rolled Steel Flat Products from Brazil, the Republic of Korea, and Turkey: Initiation of Countervailing Duty Investigations*, 80 Fed. Reg. 54,267 (Dep't of Commerce Sept. 9, 2015).

On October 1, 2015, the Commission made an affirmative preliminary determination that there was a reasonable indication that an industry in the United States was materially injured due to imports of hot-rolled steel flat products from the

subject countries.  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, USITC Pub. No. 4570, Inv. Nos. 701-TA-545-547 and 731-TA-1291-1297 (Oct. 2015), at 3.

The Commission preliminarily determined also that the volume of imports of hot-rolled steel from Turkey was above the three percent threshold for exclusion from the investigation on grounds of negligibility.[2]  *Id.* at 13.

On August 12, 2016, Commerce published its affirmative final countervailing duty determination for Turkey.  *Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products from the Republic of Turkey: Final Affirmative Determination*, 81 Fed. Reg. 53,433 (Dep't of Commerce Aug. 12, 2016).

Commerce found that Çolakoğlu Dis Ticaret A.Ş. ("Colakoglu") — another Turkish producer of hot-rolled steel — received a de minimis level of countervailable subsidies. *Id.* at 53,434.  However, Commerce made an affirmative determination because it calculated a 6.01 percent net countervailable subsidy rate for Erdemir.  *Id.*  All remaining Turkish producers and exporters were assigned Erdemir's 6.01 percent CVD rate.  *Id.* Also on August 12, 2016, Commerce published its affirmative final determination of sales at less than fair value for Turkey.  *Certain Hot-Rolled Steel Flat Products from the Republic of Turkey: Final Determination of Sales at Less Than Fair Value* ("*Final Determination of Sales at Less Than Fair Value*"), 81 Fed. Reg. 53,428 (Dep't of

---

[2] 19 U.S.C. § 1677(24)(A)(i) defines "negligible imports" as "imports from a country of merchandise corresponding to a domestic like product identified by the Commission" that "account for less than 3 percent of the volume of all such merchandise imported into the United States in the most recent 12-month period for which data are available that precedes" the filing of a petition under § 1673a(b) or the initiation of an investigation under § 1673a(a).

Commerce Aug. 12, 2016).  Commerce determined that Colakoglu was selling hot-rolled steel in the United States for less than fair value and calculated a weighted-average dumping margin of 7.15 percent.  *Id.* at 53,429.

On September 29, 2016, the Commission published its affirmative final determinations that an industry in the United States was materially injured due to imports of hot-rolled steel flat products from the subject countries.[3]  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66,996 (ITC Sept. 29, 2016).  As to Turkey, the Commission explained that "imports from Turkey that are subject to the antidumping duty investigation are different from those subject to the countervailing duty investigation" because Colakoglu's final net countervailable subsidy rate was de minimis.  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom* ("*Final Determination of Material Injury*"), USITC Pub. 4638, Inv. Nos. 701-TA-545–547 and 731-TA-1291–1297 (Sept. 2016), at 13.

Colakoglu's imports were excluded from the Commission's injury analysis in the CVD investigation because "Colakoglu received a de minimis subsidy margin."  *Id.*  As a result of the exclusion of Colakoglu's imports, the volume of imports from Turkey subject

---

[3] When evaluating whether the domestic industry is materially injured by reason of imports sold at less than fair value, the Commission is required to consider "the volume of imports of the subject merchandise," "the effect of imports of that merchandise on prices in the United States for domestic like products," and "the impact of imports of such merchandise on domestic producers of domestic like products."  19 U.S.C. § 1677(7)(B)(i)(I)-(III).  Under § 1677(7)(C)(iii)(V), in examining the impact on the affected domestic industry, "the Commission shall evaluate all relevant economic factors . . . including, but not limited to . . . the magnitude of the margin of dumping."

to the CVD investigation fell below the negligibility threshold.[4]  *Id.*  Because subsidized

imports from Turkey were negligible, the Commission "terminate[d] the countervailing

duty investigation on hot-rolled steel from Turkey."  *Id.* at 14; *see also* 19 U.S.C. §

1677(24)(A)(i).[5]

However, because Commerce determined that Colakoglu's imports were sold at

less than fair value, *Final Determination of Sales at Less Than Fair Value*, 81 Fed. Reg.

at 53,429, Colakoglu's imports were included in the Commission's negligibility analysis

for purposes of its antidumping duty determination.  *See Final Determination of Material

Injury*, USITC Pub. 4638 at 13.  The Commission determined that the volume of imports

subject to the AD investigation exceeded the negligibility threshold.  *Id.*

As a result, the Commission's final determination of material injury applied only to

dumped imports from Turkey — not to subsidized imports from Turkey.  *Id.* at 3.  The

Commission analyzed subject imports on a cumulated basis, meaning that the

Commission cumulated dumped imports from Turkey with subject imports from

Australia, Brazil, Japan, Korea, the Netherlands and the United Kingdom found by

Commerce to be dumped or subsidized.  *Id.* at 17-21.  The Commission determined that

an industry in the United States was materially injured by reason of the cumulated

subject imports.  *Id.* at 21, 39-47, 52.

October 3, 2016, Commerce published the final AD order on imports of hot-rolled

steel flat products from Turkey.  *Certain Hot-Rolled Steel Flat Products from Australia,*

---

[4] Plaintiff states in its complaint that Colakoglu is the "largest shipper" of hot-rolled steel
from Turkey.  Am. Compl. at 1.

[5] 19 U.S.C. § 1673d(b)(1) requires that "[i]f the Commission determines that imports of
the subject merchandise are negligible, the investigation shall be terminated."

*Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the*

*United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia,*

*the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81

Fed. Reg. 67,962 (Dep't of Commerce Oct. 3, 2016).

Commerce calculated revised dumping margins of 6.77 percent for Colakoglu,

4.15 percent for Erdemir and 6.41 percent for all other producers or exporters.  *Id.* at

67,965.

## II.    Colakoglu and Erdemir challenged Commerce's final determination

Colakoglu and Erdemir appealed Commerce's final determination of sales at less

than fair value.  On April 13, 2020, this Court entered judgment sustaining Commerce's

third remand redetermination.  *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*,

44 CIT __, 435 F. Supp. 3d 1378 (2020)*; see also Ereğli Demir ve Çelik Fabrikaları*

*T.A.Ş. v. United States*, 43 CIT __, 415 F. Supp. 3d 1216 (2019); *Ereğli Demir ve Çelik*

*Fabrikaları T.A.Ş. v. United States*, 42 CIT __, 357 F. Supp. 3d 1325 (2018); *Ereğli*

*Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 42 CIT __, 308 F. Supp. 3d 1297

(2018).[6]

On May 15, 2020, Commerce published an amended final determination with

recalculated weighted-average dumping margins.  *Certain Hot-Rolled Steel Flat*

*Products from Turkey: Notice of Court Decision Not in Harmony With the Amended*

*Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final*

---

[6] Nucor Corporation, one of the six domestic producers that filed petitions in the hot-rolled steel investigations, appealed the Commission's negligibility determination in the CVD investigation.  *Nucor Corp. v. United States*, 42 CIT __, __, 296 F. Supp. 3d 1276, 1294 (2018).  On February 28, 2018, this Court affirmed the Commission's negligibility determination.  *Id.*

*Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping*

*Duty Order in Part; and Discontinuation of the 2017-18 and 2018-19 Antidumping Duty*

*Administrative Reviews, in Part*, 85 Fed. Reg. 29,399 (Dep't of Commerce May 15,

2020).  Those margins were zero percent for Colakoglu, 2.73 percent for Erdemir and

2.73 percent for all other producers or exporters.  *Id.* at 29,400.

Commerce partially revoked the AD order to exclude merchandise produced and

exported by Colakoglu because Colakoglu's dumping margin was reduced to zero.[7]  *Id.*

at 29,400 ("Commerce is hereby excluding merchandise produced and exported by

[Colakoglu] from the Order.").

Therefore, Colakoglu was successful in its appeal of Commerce's final

determination of sales at less than fair value.  However, none of the Turkish

respondents challenged the Commission's final material injury determination concerning

dumped imports from Turkey.

**III.    Plaintiff requested that the Commission institute reconsideration
         proceedings or a changed circumstances review**

After Commerce excluded Colakoglu from the AD order on hot-rolled steel from

Turkey — and with appeals of the USCIT judgment still pending before the U.S. Court of

Appeals for the Federal Circuit ("Federal Circuit") — Erdemir in letters filed in May and

---

[7] Both the United States and domestic producers appealed the judgment of the USCIT.
On December 18, 2020, the United States voluntarily dismissed its appeal.  *Ereğli
Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, No. 20-1999, Mandate Order (Fed.
Cir. Dec. 18, 2020).  Then, on June 4, 2021, domestic producers voluntarily dismissed
their appeal.  *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 20-2003,
Mandate Order (Fed. Cir. June 4, 2021), docketed in Ct. No. 16-00218, ECF No. 161
(Ct. Int'l Trade June 4, 2021).

July 2020 requested reconsideration of the Commission's original material injury

determination.[8]  Am. Compl. ¶¶ 21-23; Def.-Intervenors Br. at 9-10.

On September 1, 2021, Commerce initiated and the Commission instituted the

first sunset review of the AD and CVD orders on hot-rolled steel flat products from

multiple countries.  *Initiation of Five-Year (Sunset) Reviews*, 86 Fed. Reg. 48,983 (Dep't

of Commerce Sept. 1, 2021); *Hot-Rolled Steel Flat Products from Australia, Brazil,*

*Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of*

*Five-Year Reviews*, 86 Fed. Reg. 49,057 (ITC Sept. 1, 2021); *see also* 19 U.S.C. §

1675(c).

Then, on September 10, 2021, after the United States and domestic producers

had voluntarily dismissed their appeals of the judgment of the USCIT in the challenges

to the Commerce determination, Erdemir requested that the Commission institute a

changed circumstances review to revisit its affirmative final determination of material

injury in the original investigation.  Am. Compl. ¶ 26; *Hot-Rolled Steel Flat Products from*

*Turkey; Request for Comments Regarding the Institution of a Section 751(b) Review*

*Concerning the Commission's Affirmative Determination* ("*Request for Comments*"), 86

Fed. Reg. 68,512, 68,513 (ITC Dec. 2, 2021).  Erdemir argued that "Commerce's

recalculation of Colakoglu's antidumping duty margin to zero percent and its exclusion

from the antidumping duty order as a result of judicial review constitute significantly

---

[8] The court does not quote directly from these letters as it would have preferred
because the Commission did not include the documents in the administrative record
filed by the Commission.  *See* Index of the Administrative Record and Documents
Furnished Pursuant to USCIT Rule 73.2(b) at 3-4, ECF No. 35 (stating that the parties
"have stipulated that at this time the Commission will file fewer documents" than
required to be filed by the Rules).

changed circumstances from those in existence at the time of the original investigation because the facts underlying the Commission's negligibility determination completely changed." *Request for Comments*, 86 Fed. Reg. at 68,513.

## IV.    The Commission conducted a full sunset review and denied plaintiff's request for reconsideration or a changed circumstances review

On December 6, 2021, the Commission determined to conduct full sunset reviews of the hot-rolled steel orders.[9] *Notice of Commission Determination To Conduct Full Five-Year Reviews; Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom* ("*Notice of Full Five-Year Reviews*"), 87 Fed. Reg. 3,123 (ITC Jan. 20, 2022). In those reviews, plaintiff maintained that the Commission should conduct a changed circumstances review or reconsideration proceeding so that the Commission could correct its negligibility analysis in light of the exclusion of Colakoglu from Commerce's AD order. *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom* ("*Sunset Review Determination*"), USITC Pub. No. 5380, Inv. Nos. 701-

---

[9] 19 U.S.C. § 1675(c)(5) requires the Commission to complete a full sunset review "within 360 days after the date on which a review is initiated," unless there is no response to the notice of initiation, or the response to the notice of initiation is inadequate. *See* 19 U.S.C. § 1675(c)(3)(A)-(B). On September 1, 2021, the Commission published notice of the institution of the sunset reviews. *Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year Reviews*, 86 Fed. Reg. 49,057, 49,058 (ITC Sept. 1, 2021) ("The Commission will assess the adequacy of interested party responses to this notice of institution to determine whether to conduct a full review or an expedited review."). Then, on December 6, 2021, "the Commission determined that it should proceed to full reviews in the subject five-year reviews" because "the domestic interested party group response and the respondent interested party group responses from Australia, Brazil, Japan, the Netherlands, Turkey, and the United Kingdom to its notice of institution . . . were adequate." *Notice of Full Five-Year Reviews*, 87 Fed. Reg. at 3,124.

TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review) (Nov. 2022), at 26 n.132.  Plaintiff argued also that the Commission should reverse its original negligibility determination involving dumped imports from Turkey in the sunset reviews. *Id.*

Then, on November 29, 2022, the Commission "declined to institute a [changed circumstances review] . . . or grant reconsideration" as requested by plaintiff in light of the exclusion of Colakoglu from the AD order.  *Hot-Rolled Steel Flat Products from Turkey; Denial of Request to Institute a Section 751(b) Review; Denial of Request to Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products from Turkey* ("*Denial of Request for CCR and Reconsideration*"), 87 Fed. Reg. 73,331 (ITC Nov. 29, 2022).  The Commission determined that a changed circumstances review "would be duplicative of the full five-year review" and "does not provide an opportunity for the Commission to reconsider and amend its original injury determination."  *Id.* at 73,332.  As a result, the Commission denied Erdemir's request.  *Id.*

In that decision, the Commission noted that Erdemir's comments of January 2022 requesting a changed circumstances review included also an alternative request that the Commission institute a reconsideration proceeding.  *Id.*  The Commission declined plaintiff's request for reconsideration of its negligibility analysis and the finding of non-negligibility with respect to the original AD investigation of hot-rolled steel flat products from Turkey.  *Id.* at 73,332-73,333.

The Commission explained that its reconsideration authority is reserved for "extraordinary circumstances," such as when reconsideration is necessary to protect the integrity of its proceedings from fraud.  *Id.* at 73,332.  In the instant proceedings, the Commission determined that there was "no evidence of fraud or other facts that suggest extraordinary circumstances" and therefore concluded that "the recalculation of the dumping margin by Commerce with respect to hot-rolled steel flat products" did not warrant reconsideration.  *Id.*  To support that conclusion, the Commission relied on legislative history "in which Congress specifically contemplated subsequent changes to the antidumping duty margins and instructed that such changes would not be a basis to reconsider the Commission's impact analysis."[10]  *Id.*

According to the Commission, Erdemir was required to challenge the Commission's affirmative material injury determination in the original investigation, which was the sole "path for Erdemir to avail itself to preserve its rights to obtain a reexamination of the Commission's original determination in light of the subsequent successful appeal of Commerce's final original determination that resulted in a de minimis dumping margin for Colakoglu and exclusion of imports from Colakoglu from

---

[10] Commissioners Kearns and Karpel did not join the Commission's decision on this point.  *See Denial of Request for CCR and Reconsideration Proceeding*, 87 Fed. Reg. at 73,332 n.1.  In the view of Commissioners Kearns and Karpel, "it is not clear that 19 U.S.C. [§] 1677(7)(C)(iii)(v) and [§] 1677(35)(C) and the related SAA language address the circumstances here" because those provisions and the accompanying language in the SAA pertain to "the 'magnitude of margins of dumping' that the Commission is to consider in its *impact* analysis."  *Id.* (emphasis supplied).  Here, the Commissioners added, plaintiff had requested that the Commission "reconsider its *negligibility* analysis for purposes of 19 U.S.C. [§] 1673d(b)(1) and 19 U.S.C. [§] 1677(24)."  *Id.* (emphasis supplied).

the scope of Commerce's final affirmative antidumping duty determination."  *Id.* at

73,333.

       The Commission explained that "[t]he potential impact on Erdemir at the time that

Erdemir and Colakoglu appealed Commerce's final antidumping duty determination was

known to Erdemir at that time, and[,] in fact, Erdemir joined Colakoglu in appealing

Commerce's original determination."  *Id.*  The Commission determined, as a result, that

"[t]he interests of finality of the agency's decision are paramount under the

circumstances presented."  *Id.*  The Commission therefore denied Erdemir's request for

reconsideration.  *Id.*

       On November 25, 2022, the Commission completed its first sunset review and

determined that revocation of the AD order on hot-rolled steel flat products from Turkey

would be likely to lead to continuation or recurrence of material injury.  *See Hot-Rolled*

*Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the*

*United Kingdom*, 87 Fed. Reg. 74,167 (ITC Dec. 2, 2022).  The Commission analyzed

subject hot-rolled steel imports from Turkey on a cumulated basis[11] with subject imports

from Australia, Japan, the Netherlands, South Korea, Russia and the United Kingdom

and determined that revocation of the AD order on hot-rolled steel flat products from

Turkey would be likely to lead to continuation or recurrence of material injury.[12]  *Sunset*

*Review Determination*, USITC Pub. No. 5,380 at 48, 67; *see also* 19 U.S.C. §

1675a(a)(7).  Thereafter, Commerce published a notice of continuation of the AD order.

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of*

*Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Continuation*

*of Antidumping Duty Orders (Australia, Japan, Korea, the Netherlands, Turkey, and the*

*United Kingdom) and Countervailing Duty Order (Korea) and Revocation of*

*Antidumping and Countervailing Duty Orders (Brazil)*, 87 Fed. Reg. 78,642 (Dep't of

Commerce Dec. 22, 2022).

---

[11] 19 U.S.C. § 1677(7)(G)(i) requires that the Commission "cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which . . . (I) petitions were filed under section 1671a(b) or 1673a(b) of this title on the same day, (II) investigations were initiated under section 1671a(a) or 1673a(a) of this title on the same day, or (III) petitions were filed under section 1671a(b) or 1673a(b) of this title and investigations were initiated under section 1671a(a) or 1673a(a) of this title on the same day," so long as such imports compete with each other and with domestic like products in the United States market.  However, the statute also prohibits the Commission from cumulatively assessing the volume and effect of imports under clause (i) "from any country with respect to which the investigation has been terminated."  19 U.S.C. § 1677(7)(G)(ii)(II).  This exception — that imports that are the subject of terminated investigations may not be cumulated — "implements the requirements of the [URAA] that negligible or de minimis imports not be cumulated."  *Statement of Administrative Action Accompanying the Uruguay Round Agreements Act*, H.R. Rep. No. 103-316, vol. 1 (1994), at 849, *reprinted in* 1994 U.S.C.C.A.N. 4040 ("SAA").

[12] In its sunset reviews, the Commission indicated that it would address outside of the sunset reviews plaintiff's request for a changed circumstances review or reconsideration proceeding.  *Sunset Review Determination*, USITC Pub. No. 5380 at 48 n.298.

Plaintiff then brought multiple actions to challenge different decisions made by the Commission during the course of the proceedings before the agency.  In the instant action, plaintiff contends that it was "adversely affected or aggrieved by the Commission's decision not to conduct a reconsideration proceeding within the meaning of the APA."  Am. Compl. ¶ 5 (citing 5 U.S.C. § 702; 28 U.S.C. § 2631(i)).

On June 13, 2024, the court held oral argument.  *See* Oral Arg. Tr., ECF No. 71.

## JURISDICTION AND STANDARD OF REVIEW

Whether a court has subject matter jurisdiction to hear an action is a "threshold" inquiry.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Plaintiff files its action under 28 U.S.C. § 1581(i)(1)(B) and (D), which provide:

[T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for —

> (A) . . .
> (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue; [or]
> (C) . . .
> (D) administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)-(h) of this section.

Section 1581(i) is the Court's "residual" jurisdictional provision, *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1371 (Fed. Cir. 2002) (citing *Conoco, Inc. v. United States Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1584 n.4 (Fed. Cir. 1994)), which allows the Court to "take jurisdiction over designated causes of action founded on other provisions of law."  *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992) (citation omitted).

However, the "scope" of § 1581(i) is "strictly limited," *id.*, and jurisdiction under this provision "may not be invoked when jurisdiction under another [sub]section of § 1581 is or could have been available, unless the relief provided under that other subsection would be manifestly inadequate." *Consol. Bearings Co. v. United States*, 25 CIT 546, 549, 166 F. Supp. 2d 580, 583 (2001) (alterations in original) (internal quotation marks omitted) (quoting *Ad Hoc Comm. of Fla. Producers of Gray Portland Cement v. United States*, 22 CIT 902, 906, 25 F. Supp. 2d 352, 357 (1998)); *see also* 28 U.S.C. § 1581(i)(2)(A) (providing that "[§ 1581(i)] shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable by . . . the Court of International Trade under [§ 1581(c)].").

With respect to defendant-intervenors' USCIT Rule 12(b)(6) motion for failure to state a claim, "any factual allegations in the complaint are assumed to be true and all inferences are drawn in favor of the plaintiff." *Env't One Corp. v. United States*, 47 CIT __, __, 627 F. Supp. 3d 1349, 1355 (2023) (quoting *Amoco Oil Co. v. United States*, 234 F.3d 1374, 1376 (Fed. Cir. 2000)); USCIT Rule 12(b)(6).

"A court may properly dismiss a claim pursuant to [USCIT] Rule 12(b)(6) only if Plaintiff['s] allegations of fact are not 'enough to raise a right to relief above the speculative level.'" *VoestAlpine USA Corp. v. United States*, 46 CIT __, __, 578 F. Supp. 3d 1263, 1276 (2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). To survive a motion to dismiss, plaintiff's complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"[A]n agency's denial of a petition for reconsideration is committed to agency discretion and not subject to judicial review unless the request is based on 'new evidence or changed circumstances,' in which case the court evaluates whether 'the refusal to reopen was arbitrary, capricious, [or] an abuse of discretion.'" *Consol. Fibers, Inc. v. United States*, 30 CIT 1820, 1825, 465 F. Supp. 2d 1338, 1343 (2006) (citation omitted) (alteration in original).

## DISCUSSION

### I.   Whether jurisdiction under § 1581(c) could have been available

#### A.   Legal framework

"An inquiry into § 1581(i) jurisdiction is . . . a two-step process." *ARP Materials, Inc. v. United States*, 47 F.4th 1370, 1377 (Fed. Cir. 2022).  First, the court considers whether jurisdiction under a subsection other than § 1581(i) was available.  *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019) (citing *Ford Motor Co. v. United States*, 688 F.3d 1319, 1323 (Fed. Cir. 2012)).  Second, "if jurisdiction was available under a different subsection of § 1581," the court then examines "whether the remedy provided under that subsection is 'manifestly inadequate.'" *Id.* (citing 28 U.S.C. § 1581(i)).  In determining whether jurisdiction under another subsection is or could have been available, the court must discern the "'true nature' of the action."  *Norsk Hydro Can., Inc. v. United States,* 472 F.3d 1347, 1355 (Fed. Cir. 2006).

28 U.S.C. § 1581(c) grants the court jurisdiction to review antidumping and countervailing duty determinations issued under 19 U.S.C. §§ 1516a and 1517. Moreover, 19 U.S.C. § 1516a(a)(2)(B)(i) lists "[f]inal affirmative determinations by . . . the

Commission" of material injury in antidumping duty investigations as one of the reviewable determinations under 28 U.S.C. § 1581(c).  *See also* 19 U.S.C. § 1673d(b)(1).

### B.    Analysis

#### 1.    The true nature of plaintiff's action

The court examines first whether jurisdiction could have been available under another subsection of § 1581.

Defendant-intervenors argue that jurisdiction is unavailable under § 1581(i) because the true nature of plaintiff's action is a challenge to the Commission's negligibility analysis, which, according to defendant-intervenors, plaintiff was required to challenge within 30 days of the Commission's determination under § 1581(c).  Def.-Intervenors Br. at 19, 23.

Plaintiff asserts in response that the true nature of its action is in fact a challenge to the Commission's denial of plaintiff's request to institute reconsideration proceedings. Pl. Br. at 9.  According to plaintiff, it "could not have raised . . . a claim appealing the final injury determination."  *Id.* at 10.  Plaintiff argues on this basis that jurisdiction is proper under § 1581(i) because a challenge to the Commission's decision not to initiate reconsideration proceedings is not listed as an appealable decision under any other subsection of § 1581.  *Id.*

The court concludes that the true nature of the instant action is a challenge to the Commission's negligibility analysis in the original investigation because the source of the alleged harm to plaintiff is the Commission's finding of non-negligibility in that investigation.

The court looks to the "true nature of the action" to determine whether jurisdiction is or could have been available under another subsection of § 1581.  *Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1360 (Fed. Cir. 2016).  "The true nature of a particular action will depend upon the attendant facts asserted in the pleadings."  *Id.* (citing *Norsk Hydro*, 472 F.3d at 1355).  Therefore, "'[d]etermining the true nature of an action under § 1581' requires that [the court] 'discern the particular agency action that is the source of the alleged harm so that [the court] may identify which subsection of § 1581 provides the appropriate vehicle for judicial review.'"  *ARP Materials,* 47 F.4th at 1378 (citing *Hutchison*, 827 F.3d at 1360).

Here, plaintiff's complaint demonstrates that the source of the alleged harm to plaintiff lies in the Commission's negligibility analysis.  For example, the complaint alleges that the harm suffered by plaintiff is redressable if the Commission "correct[ed] errors in the AD negligibility determination in the original investigation."  Am. Compl. ¶ 38.  The complaint alleges further: "[B]ut for Commerce's initial unlawful decisions, the volume of subject imports considered by the Commission would have been below the negligibility threshold for the AD injury investigation, just as they had been for the CVD investigation: there would be no AD order on hot-rolled steel flat products from Turkey." *Id*. ¶ 19.  In the only count of the amended complaint, plaintiff alleges also that the Commission "has the authority to reconsider and correct errors in the AD negligibility determination *in the original investigation*."  *Id.* ¶ 38 (emphasis supplied).

Therefore, the source of plaintiff's harm is not the Commission's decision not to reconsider its negligibility analysis, but the Commission's initial finding of non-negligibility in the original investigation.  The court notes that plaintiff asserts in its

complaint that plaintiff is challenging the Commission's denial of plaintiff's request for a

reconsideration proceeding.  *Id*. ¶ 1.  However, "mere recitation of a basis for jurisdiction

[is not] controlling."  *ARP Materials*, 47 F.4th at 1378 (quoting *Harford Fire Ins. v. United

States*, 544 F.3d 1289, 1293 (Fed. Cir. 2008)).  Moreover, the Federal Circuit has

instructed that "a party may not expand a court's jurisdiction by creative pleading."

*Norsk Hydro*, 472 F.3d at 1378.  Section 1581(i) "[was not] meant to supersede more

specific jurisdictional provisions."  *Koyo Seiko Co. v. United States*, 13 CIT 461, 463,

715 F. Supp. 1097, 1099 (1989).  This Court's comments on this point in *San Vicente

Camalu SPR De Ri v. United States*, 29 CIT 436, 444, 336 F. Supp. 2d 1373, 1380 n.19

(2005), are instructive:

> [Plaintiff] cannot invoke (i) jurisdiction . . . simply by requesting that the
> agencies retract or reconsider their determinations.  Section 1581(i) was
> never intended to create new causes of action.  H.R. Rep. No. 96-1235, at
> 47 (1980).  Nor was it intended to supersede more specific jurisdictional
> provisions. . . .  [Plaintiff] cannot make an "end run" around § 1581(c) and
> secure (i) jurisdiction simply by using the procedural mechanism of a
> request to reopen.

(internal citation omitted).

Because the agency action that is the source of the alleged harm is the

Commission's inclusion of Colakoglu in the Commission's computation of total imports

from Turkey, which resulted in a finding of non-negligibility, the "true nature" of plaintiff's

action is a challenge to the Commission's affirmative final determination of material

injury in the original investigation.

### 2.    Whether jurisdiction is or could have been available under § 1581(c)

The court considers next whether jurisdiction could have been available under §

1581(c).

Plaintiff argues that jurisdiction under § 1581(c) could not have been available because "[plaintiff] could not have raised such a claim in the final injury determination." Pl. Br. at 10.  According to plaintiff, any challenge to the Commission's final determination would have been speculative, as it would have depended by necessity on the success of plaintiff's then pending challenge to the final dumping margin of Commerce.  *Id.* at 13.  Plaintiff argues that, as a result, plaintiff would not have had standing to challenge the Commission's determination.  *Id.*

Defendant-intervenors respond that plaintiff, as an interested party in the original investigation, had the opportunity to commence an action under § 1581(c) "to seek judicial review of the Commission's final material injury determination and any factual findings or legal conclusions upon which that determination was based."  Def.-Intervenors Br. at 18 (citing 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i)).  Defendant-intervenors assert also that plaintiff's challenge to the Commission's determination, had plaintiff filed such a challenge, "could have been stayed pending the outcome of Erdemir [sic] and Colakoglu's appeal of Commerce's final dumping margins."  *Id.*  According to defendant-intervenors, previous cases in which interested parties brought concurrent actions under § 1581(c) to determinations of both Commerce and the Commission establish that plaintiff in the instant action could have challenged also the final material injury determination of the Commission.  *Id.* at 20.

The court concludes that jurisdiction could have been available under § 1581(c) because plaintiff could have challenged the Commission's final material injury determination.

28 U.S.C. § 1581(c) grants the court jurisdiction to review antidumping and countervailing duty determinations issued under 19 U.S.C. §§ 1516a and 1517. Moreover, 19 U.S.C. § 1516a(a)(2)(B)(i) lists "[f]inal affirmative determinations by . . . the Commission" of material injury in AD investigations as one of the reviewable determinations under 28 U.S.C. § 1581(c). *See also* 19 U.S.C. § 1673d(b)(1).

Here, plaintiff could have challenged the Commission's final determination of material injury in the original investigation by filing an appeal within 30 days of the date of publication of the AD order. *See* 19 U.S.C. § 1516a(a)(2)(A)(i)(II); *PAO TMK v. United States*, 47 CIT __, Slip Op. 23-150, 2023 WL 6939242 (CIT Oct. 12, 2023) (exercising jurisdiction under § 1581(c) in a plaintiff's challenge to the Commission's finding of non-negligibility). The court concludes, as a result, that jurisdiction could have been available under § 1581(c).

Plaintiff maintains that its request for reconsideration was made "in light of" Colakoglu's exclusion from the AD order. Pl. Resp. Br. at 7-11. According to plaintiff, because Colakoglu's exclusion from the AD order was not known at the time of the original investigation, jurisdiction under § 1581(c) was not available. *Id.* Plaintiff asserts further that "a challenge to the negligibility decision in the original investigation never existed . . . because it would have to rely upon a speculative result of a separate appeal of a separate administrative action with a separate administrative record." *Id.* at 11.

That Colakoglu's entries were excluded from the AD order pursuant to a recalculation by Commerce upon judicial remand did not render unavailable jurisdiction under § 1581(c) to challenge the Commission's final determination of material injury. Plaintiff acknowledges that, as a plaintiff in the litigation that resulted in Colakoglu's

exclusion from the AD order, plaintiff was aware that had Colakoglu's imports been

excluded, "the volume of subject imports considered by the Commission would have

been below the negligibility threshold for the AD injury investigation, as they had been

for the CVD injury investigation."  Am. Compl. ¶ 19; Pl. Resp. Br. at 11-12.  That the

Commission's decision to include Colakoglu's imports in the Commission's cumulated

import volume became erroneous only after Commerce's retroactive exclusion of

Colakoglu's imports from Commerce's AD order — as opposed to an exclusion ab initio

under a negligibility analysis — does not negate the fact that plaintiff had available to it

a remedy under § 1581(c) that would have preserved plaintiff's rights.  *See* 28 U.S.C. §

1581(c).

       In fact, plaintiff's contention that any challenge to the Commission's final

affirmative determination of material injury would have been "[]frivolous" or "purely

speculative," Pl. Resp. Br. at 11, is contradicted by multiple decisions of this Court.  For

example, in *Diamond Sawblades Mfrs' Coalition v. United States*, 39 CIT __, __, Slip

Op. 15-92, 2015 WL 4978726, at *9 (CIT Aug. 20, 2015), this Court held expressly and

specifically that "the lawfulness of an agency determination may hinge upon the

outcome of separate litigation."  Similarly, in *Encon Indus., Inc. v. United States*, 18 CIT

867, 869 (1994), the Court's decision rebuts directly plaintiff's arguments that it did not

have a nonspeculative claim to challenge the Commission's final affirmative

determination of material injury:

> Encon argues that it could not have brought its claim during the original
> litigation.  Encon alleges that its claim arose only after publication of the
> amended order resulting in the exclusion of one company from the
> antidumping order and consequently elimination of its volume of imports
> from the volumes previously relied upon by the ITC.  Encon argues that
> before that time "there were no facts or evidence in existence that could

have supported this claim."  This of course ignores the fact that parties can and do challenge ITC's actions on the basis of errors in the information furnished to it by Commerce.  It may be that in such cases the ITC litigation must be stayed in order for the plaintiff to have the maximum chance of success, but such stays have been granted.

*Id.* (internal citations omitted); *cf. ARP Materials*, 47 F.4th at 1378-79 (concluding that the fact that "Customs' classification decisions became erroneous after USTR granted retroactive exclusions" was irrelevant because "[t]he obligation to protest a Customs classification error does not turn on whether it was erroneous ab initio or became erroneous because of retractive administrative action.  It instead turns on whether Customs' classifications of the importers' entries were protestable 'decisions' under 19 U.S.C. § 1514 . . . .").

In addition, that jurisdiction "could have been available" to plaintiff under § 1581(c) is demonstrated plainly by previous instances in which interested parties asserted jurisdiction under § 1581(c) in similar circumstances.  For example, in the 2014 AD investigation of oil country tubular goods, Commerce issued a negative final dumping determination for Saudi Arabia, *Amended Final Determination and Termination of the Investigation of Sales at Less Than Fair Value: Certain Oil Country Tubular Goods from Saudi Arabia*, 79 Fed. Reg. 49,051, 49,052 (Dep't of Commerce Aug. 19, 2014), which resulted in the Commission terminating its investigation of Saudi Arabia.  *See Certain Oil Country Tubular Goods from Saudi Arabia: Termination of Investigation*, 79 Fed. Reg. 51,192 (ITC Aug. 27, 2014).  Commerce's negative final determination resulted also in a finding that imports from the Philippines and Thailand were negligible.  *Certain Oil Country Tubular Goods from India, Korea, the Philippines, Taiwan, Thailand, Turkey, Ukraine, and Vietnam*, 79 Fed. Reg. 53,080 (ITC Sept. 5, 2014); *Certain Oil*

*Country Tubular Goods from India, Korea, the Philippines, Saudi Arabia, Taiwan,*

*Thailand, Turkey, Ukraine, & Vietnam*, USITC Pub. No. 4489, Inv. No. 701-TA-499

(Sept. 2014), at 5.  There, domestic producers brought concurrent actions under §

1581(c) to challenge both (1) the determination by Commerce that imports from Saudi

Arabia were not sold at less than fair value and (2) the subsequent finding of negligibility

by the Commission.  Domestic producers then moved for a stay in the action against the

Commission pending resolution of the action against Commerce.  *Boomerang Tube LLC*

*v. United States*, Court No. 14-00196, ECF No. 6 (stating in plaintiff's complaint that

plaintiffs were challenging Commerce's amended final negative determination in the AD

investigation of oil country tubular goods from Saudi Arabia); *United States Steel Corp.*

*v. United States*, Consol. Ct. No. 14-00232, ECF Nos. 2 (stating in their complaint that

plaintiffs were challenging the Commission's termination of the AD investigation), 25

(consent motion for stay) and 26 (order granting consent motion for stay pending "final

resolution of the appeal in *Boomerang Tube LLC v. United States*, Consol. Court No. 14-

196"); *United States Steel. Corp. v. United States*, Consol. Ct. No. 14-00237, ECF Nos.

35 (consent motion for stay) and 36 (order granting consent motion for stay pending

"final resolution of *Boomerang Tube LLC v. United States*").[13]  Other similarly situated

litigants have also availed themselves of the statutorily prescribed remedy under §

---

[13] Ultimately, domestic producers were not successful in their challenge to Commerce's
final determination.  *Boomerang Tube LLC v. United States*, 39 CIT__, 125 F. Supp. 3d
1357 (2015), *vacated and remanded*, 856 F.3d 908 (Fed. Cir. 2017).  Because, as here,
success in domestic producers' challenge to the Commission's final negative
determination of material injury depended on success in domestic producers' challenge
to Commerce's final determination, domestic producers voluntarily dismissed their
appeal of the Commission's determination.  *United States Steel Corp. v. United* States,
Consol. Ct. No. 14-00232, ECF Nos. 36-37.

1581(c) by requesting — and receiving — a stay of the Commission challenge, even where other interested parties opposed the stay.  *See, e.g.*, *ArcelorMittal USA LLC v. United States*, Consol. Ct. No. 16-00214, ECF No. 43 (requesting reconsideration of court's denial of plaintiff's stay motion because "[t]he Commission's negative injury determinations as to [subject imports] were based entirely on negligibility findings that resulted directly from Commerce's calculation of a de minimis . . . dumping margin" (citations omitted)), ECF No. 52 (motion of defendant-intervenors in opposition to reconsideration and stay), ECF No. 54 (granting plaintiff's motion for reconsideration and staying challenge to the Commission's injury determination).

The path pursued by other litigants in plaintiff's position establishes that plaintiff in the instant case could have asserted jurisdiction under § 1581(c) to challenge the Commission's final affirmative determination of material injury.  A party "may not simply 'elect to proceed under [§] 1581(i), without having first availed himself of the remedy provided by [§] 1581(c).'"  *Wanxiang Am. Corp. v. United States*, 12 F.4th 1369, 1374 (Fed. Cir. 2021) (quoting *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193 (Fed. Cir. 2018) (citation omitted)).  "[T]he § 1581(i) standard . . . asks only whether another route under § 1581 existed that was not manifestly inadequate."  *Id.*  Here, decisions of this Court and the litigation strategy of interested parties in previous investigations demonstrate that jurisdiction could have been available under § 1581(c).

In sum, the court concludes that jurisdiction could have been available under § 1581(c).

## II.   Whether jurisdiction under § 1581(c) would have been manifestly inadequate

### A.   Legal framework

If jurisdiction could have been available under another subsection of § 1581, the party that seeks to invoke the Court's jurisdiction "bears the burden of demonstrating manifest inadequacy."  *Intercontinental Chems., LLC v. United States*, 44 CIT __, __, 483 F. Supp. 3d 1232, 1241 (2020) (citing *Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987)); *Erwin Hymer Grp. N. Am.*, 930 F.3d at 1375.

"[T]o be manifestly inadequate, the protest must be an exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain."  *ARP Materials*, 47 F.4th at 1379 (alterations in original) (quoting *Sunpreme*, 892 F.3d at 1193-94).

### B.   Analysis

The court considers next whether the remedy available to plaintiff under § 1581(c) would have been manifestly inadequate.

Defendant-intervenors contend that plaintiff cannot establish that relief under § 1581(c) would have been manifestly inadequate, citing the case of oil country tubular goods.  Def.-Intervenors Br. at 20-21.  In response to plaintiff's contention that any challenge under § 1581(c) to the Commission's final determination would have failed as "purely speculative," defendant-intervenors note that, as plaintiff concedes, "the termination of the Commission's countervailing duty investigation on negligibility grounds made it clear how a decision favorable to the Turkish respondents in the parallel appeal of Commerce's final dumping margins . . . would have affected the Commission's antidumping duty investigation."  Def.-Intervenors Reply Br. at 11.

Defendant-intervenors argue also that the fact that a stay would have been required for any challenge to the Commission's final affirmative determination to be successful does not, in itself, render such a challenge manifestly inadequate.  *Id.* at 12.

Plaintiff argues that relief under § 1581(c) — even had it been available — would have been manifestly inadequate because, according to plaintiff, any challenge under § 1581(c) to the Commission's final determination would have failed.  Pl. Br. at 14. Plaintiff asserts that such a challenge — filed by necessity prior to Colakoglu's exclusion from the AD order — would have been based on "purely speculative" grounds.  *Id.* at 11. Plaintiff adds that, even if a challenge under § 1581(c) would not have been dismissed as speculative, the court would not have granted a stay pending the resolution of the parallel case challenging Commerce's final determination.  *Id.* at 14-17.

The court concludes that plaintiff has failed to establish that relief under § 1581(c) would have been manifestly inadequate.  "[T]o be manifestly inadequate," the remedy (in this case) under § 1581(c) "must be an 'exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain.'"  *Sunpreme,* 892 F.3d at 1193-94 (quoting *Hartford Fire Ins. Co v. United States*, 544 F.3d 1289, 1294 (Fed. Cir. 2008) (emphasis omitted)).

To start, whether to stay a case lies "'within the sound discretion of the trial court.'"  *RHI Refractories Liaoning Co. v. United States*, 35 CIT 407, 410, 774 F. Supp. 2d 1280, 1284 (2011) (quoting *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997)).  Given that the decision to stay a case is within the court's "sound discretion," *id.*, plaintiff's definitive assertion that a stay "would not have been

granted" — and that therefore relief under § 1581(c) was manifestly inadequate, Pl. Br. at 14 — is unsupported.

In addition, plaintiff's attempt to establish that relief under § 1581(c) would have been manifestly inadequate is further undermined by cases in which parties in plaintiff's position sought and received a stay pending the result of a challenge to Commerce's final determination. "Persuasive of the adequacy of the § 1581(c) remedy is that another [party] . . . used it." *Miller & Co,* 824 F.2d at 963. Domestic producers in oil country tubular goods followed the path prescribed by statute by filing concurrent actions under § 1581(c) to challenge the determinations of both Commerce and the Commission. *Boomerang Tube LLC v. United States*, Court No. 14-00196, ECF No. 6 (stating in plaintiff's complaint that plaintiffs were challenging Commerce's amended final negative determination in the AD investigation of oil tubular goods from Saudi Arabia); *United States Steel Corp. v. United States*, Consol. Ct. No. 14-00232, ECF Nos. 2 (stating in their complaint that plaintiffs were challenging the Commission's termination of the AD investigation). There, domestic producers filed a consent motion to stay the challenge to the Commission determination pending the result of domestic producers' challenge to the Commerce determination. *United States Steel Corp. v. United States*, Consol. Ct. No. 14-00232, ECF Nos. 25 (consent motion to stay) and 26 (order granting consent motion to stay pending "final resolution of the appeal in *Boomerang Tube LLC v. United States*, Consol. Ct. No. 14-196"); *see also ArcelorMittal USA LLC v. United States*, Consol. Ct. No. 16-00214, ECF No. 54 (granting contested motion to stay pending result of challenge to Commerce determination). "[T]he use of 'the § 1581(c) remedy' by other litigants in plaintiff's position is persuasive of its

adequacy." *Royal United Corp. v. United States*, 34 CIT 756, 766, 714 F. Supp. 2d

1307, 1317 (2010) (quoting *Miller & Co.*, 824 F.2d at 964).  As a consequence, plaintiff

cannot demonstrate that relief under § 1581(c) would have been manifestly inadequate.

   Plaintiff maintains that *United States Steel Corp.* is inapposite because the

motion to stay in that case was filed with the consent of all parties.  Pl. Br. at 15-16

(citing *United States Steel Corp. v. United States*, Consol. Ct. No. 14-00232, ECF No.

25 (consent motion to stay)).  In the instant case, plaintiff envisions that defendant-

intervenors would have opposed any stay, and that the court would have been required

to deny any motion to stay after weighing parties' competing interests.  *Id.* at 14.

Plaintiff maintains also that relief under § 1581(c) would have been manifestly

inadequate because "contested motions for stay been [sic] rejected by the Court of

International Trade."  *Id.* at 16-17 (citing *LG Elecs., Inc. v. U.S. Int'l Trade Comm'n* (*LG

Elecs. II*), 38 CIT 103 (2014)); *see also LG Elecs., Inc. v. U.S. Int'l Trade Comm'n* (*LG

Elecs. I*), 37 CIT 1589, 1589-90 (2013).

   However, that domestic producers *may* have opposed a stay, or that the court

*may* have denied any request for a stay, does not render relief under § 1581(c)

manifestly inadequate.  "[A] remedy is not inadequate simply because a party believes

such remedy is unavailable."  *Rimco Inc. v. United States*, 98 F.4th 1046, 1054 (Fed.

Cir. 2024) (citing *Hartford Fire*, 544 F.3d at 1294).  For relief under § 1581(c) to be

manifestly inadequate, plaintiff is required to show that relief under § 1581(c) would

have been "an exercise in futility, or 'incapable of producing any result; failing utterly of

the desire end through intrinsic defect; useless, ineffectual, vain.'"  *Id.*  The mere

possibility that the court may have denied a stay in a challenge to the Commission's

final material injury determination does not render relief under § 1581(c) manifestly

inadequate.  *Cf. Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1328 (Fed.

Cir. 2006) ("Plaintiff cannot take it upon itself to determine whether it would be futile to

protest or not." (quoting *Inner Secrets/Secretly Yours v. United States*, 18 CIT 1028,

1036, 869 F. Supp. 959, 966 (1994))).

      And, in any event, this Court has granted contested motions to stay in

circumstances similar to those in the instant case.  *See DuPont Teijin Films v. United

States*, 39 CIT __, Slip Op. 15-95, 2015 WL 5024950 (CIT Aug. 26, 2015); *ArcelorMittal

USA LLC v. United States*, Consol. Ct. No. 16-00214, ECF No. 54.

      In *Teijin Films*, Commerce issued a scope ruling that concluded that defendant-

intervenors' product was outside the scope of the AD order.  39 CIT at __, 2015 WL

5024950, at *1.  Domestic producers of the subject merchandise appealed Commerce's

determination to this Court.  *Id.*  Then, the Commission instituted the first sunset review

of the subject merchandise.  *Id.* at *2.  In their response to the Commission's notice of

institution of the sunset review, defendant-intervenors directed the Commission's

attention to Commerce's scope ruling concluding that defendant-intervenors' product

was not within the scope of the AD order.  *Id.*  In its material injury analysis, the

Commission noted that "imports from Brazil would focus on out-of-scope merchandise"

and concluded that "revocation of the antidumping duty order on subject imports from

Brazil would not likely lead to a significant adverse impact on the domestic industry."  *Id.*

      Domestic producers challenged the Commission's determination and moved to

stay those proceedings pending the outcome of parallel litigation contesting

Commerce's scope ruling.  *Id.* at *3.  Defendant-intervenors opposed the stay, largely

for the same reasons that plaintiff surmises that defendant-intervenors would have opposed any stay in the instant case: "the complexity of trade cases renders them 'not conducive to quick judicial review,' [which] counsels against granting a stay." *Id.* at *4. However, the Court granted the stay because "the validity of the Scope Ruling is central to [plaintiff's] claims." *Id.* at *5. Specifically, the Court reasoned that "the ITC's reliance on the Scope Ruling, which underpinned its decision not to cumulate Brazilian subject imports, ultimately led to a negative injury determination." *Id.* The Court concluded, therefore, that granting the stay "pending the conclusion" of the parallel case "would best conserve the resources of the court and parties, as well as preclude the issuance of conflicting judgments." *Id.* (citations omitted). In light of this Court's decision in *Teijin Films*, plaintiff cannot establish that this Court uniformly denies contested motions to stay challenges to a Commission determination pending the outcome of a separate appeal of a Commerce decision, such that any challenge under § 1581(c) would have been "an exercise in futility, useless or incapable of producing the result it seeks," *Sunpreme*, 892 F.3d at 1194.

Finally, *LG Electronics*, the case on which plaintiff relies, is inapposite. In *LG Electronics*, plaintiffs challenged both (1) Commerce's antidumping and countervailing duty determinations and (2) the Commission's final determinations of material injury. *LG Elecs. I*, 37 CIT at 1589-90. Plaintiffs sought a stay of proceedings challenging the Commission's determination pending final resolution of the Commerce cases. *Id.* The Court denied plaintiffs' motion to stay because plaintiffs "fail[ed] to show a clear non-speculative nexus between the possible outcome in the related Commerce Department Cases and [the case before the court]." *Id.* at 1593. The Court observed that, for

plaintiff to succeed, it "would need to be successful in its appeal so that the court would remand and instruct Commerce to recalculate the margins." *Id.* at 1592. The Court observed also that the *effect* of plaintiffs' successful appeal in the Commerce cases on the Commission's *impact* analysis was also speculative. *Id.* at 1592-93 (internal citations omitted) (emphasis supplied) (citing *GPX Int'l. Tire Corp. v. United States*, 37 CIT 19, 30, 893 F. Supp. 2d 1296, 1310 n.15 (2013) (noting "that the dumping margin is only one of several factors that the ITC considers in evaluating injury, and the ITC has not developed standard methodology for weighing the impact of the Commerce-calculated dumping margin, making this argument largely speculative")); *see also LG Elecs. II*, 38 CIT at 104 ("[A]s explained in this court's prior order, Plaintiffs' claim is still speculative.").

The instant action stands in sharp contrast. Plaintiff's action concerns the impact of the successful appeal of Commerce's determination on the Commission's *negligibility* analysis. Am. Compl. ¶ 38. Plaintiff acknowledges that the negligibility analysis in the CVD investigation — which excluded Colakoglu's imports and therefore found imports from Turkey negligible — rendered the impact of a successful appeal of Commerce's AD determination on a challenge under § 1581(c) to the Commission's determination indisputable: the volume of dumped merchandise from Turkey would also have been negligible. Am. Compl. at 1-2. That is, in the instant case it would have been clear to the reviewing court that a successful challenge to Commerce's determination would result in imports of the subject merchandise from Turkey falling below the negligibility threshold. As a result, the basis for the Court's denial of plaintiffs' request to stay in *LG Electronics* is inapposite to the instant case.

Accordingly, plaintiff has failed to establish that relief under § 1581(c) would have been manifestly inadequate.

As noted, an adequate remedy was available to Ereğli Demir ve Çelik Fabrikaları T.A.Ş. to challenge the final determination of the Commission.  Plaintiff did not avail itself of that remedy.  Now, plaintiff would have the court act to expand the scope of the court's residual jurisdiction to fashion a remedy that the law does not provide.  The court declines, as it must, to do so.

## CONCLUSION

For the reasons discussed above, the court grants defendant-intervenors' motion to dismiss for lack of subject matter jurisdiction.  Judgment will enter accordingly.


/s/      Timothy M. Reif
 Timothy M. Reif, Judge

Dated: _____July 22, 2024_____
         New York, New York